## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

CLAYTON HOWARD

               Plaintiff,

v.

CITY OF NEW YORK,

NEW YORK CITY

POLICE DEPARTMENT,

JOHN AND JANE DOES 1 – 10,

           Defendants.

CIVIL ACTION: 24-8316

**VERIFIED COMPLAINT**
**Jury Trial Demanded**

Plaintiff Clayton Howard ("Plaintiff"), by way of Complaint against Defendants City of New York, and New York City Police Department, does hereby complain of the defendants and allege the following upon information and belief and at all times herein relevant.

## NATURE OF ACTION

1.      This action is brought under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, as well as the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, the New York State Constitution, and New York common law. Plaintiff seeks redress for systemic constitutional violations, including false arrests, malicious prosecution, intentional infliction of emotional distress, abuse of process, defamation, negligent supervision, and failure to intervene.

## PARTIES

2.      Plaintiff Clayton Howard was and is a resident of the State of New Jersey.

3.      Defendant, the City of New York, was and is a municipal corporation duly incorporated under the laws of the State of New York.

4.      The Defendant, New York City Police Department, was and is a Police Department duly formed under the laws of the State of New York.

5.      Defendant, "John and Jane Does 1 - 10," first and last name being fictitious and representing unnamed Police Officers of New York City Police Department, were at all times relevant hereto, employed by the City of New York and/or the City of New York Police Department.

6.     Defendants, the City of New York, and/or New York City Police Department, at all times relevant hereto, were responsible for the hiring, training, supervision, discipline, retention, firing, and promotion of the police officers, sergeants, detectives, and defendants herein.

7.     At all times hereinafter mentioned, the defendants herein are hereby being sued individually and in their official capacity as Police Officers and were acting under the color of state law according to the statutes, Constitution, ordinances, regulations, policies, and customs of the State of New York and under the United States Constitution.

## JURISDICTION AND VENUE

8.     This action is brought according to 42 U.S.C. Sections 1981, 1983, 1985, 1986, and 1988, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and under New Jersey State tort law and the New Jersey State Constitution for pendent state causes of action.

9.     Jurisdiction is founded in the District Court according to 28 U.S.C. 1331.  This is a Civil action arising under 42 U.S.C. Sections 1981, 1983, 1985, 1986, and 1988, as well as the Constitution and the laws of the United States.

10.     The venue is properly laid in this district under 28 U.S.C. Section 139l(b), the judicial district where the events giving rise to the claim occurred.

## FACTUAL ALLEGATIONS

**Plaintiff Howard Is a Victim Of Domestic Violence Committed By His Former Girlfriend Francyna Evins**:

11.     Mr. Clayton Howard and Ms. Francyna Evins were involved in a contentious and abusive relationship that culminated in legal actions.

12.     On December 1, 2022, Mr. Howard secured a Final Restraining Order (FRO) against Ms. Evins in New Jersey following a trial that established her harassment and abusive behavior.

13.     The FRO was federally recognized under the Violence Against Women Act (VAWA) and registered in New York to ensure enforcement across state lines.

14.     Despite the protective order, Ms. Evins repeatedly violated its terms by engaging in harassment, defamation, and false reporting against Mr. Howard.

15.     Specific violations included:

    a.   Filing false complaints with the NYPD accusing Mr. Howard of threats and harassment, which were later disproven by evidence.

    b.   Continuing her harassment campaign through public statements and social media posts designed to tarnish Mr. Howard's reputation.

16.    Ms. Evins filed a complaint with the NYPD alleging that Mr. Howard engaged in threatening behavior.

17.    Detective Joseph Quirk arrested Mr. Howard based on these allegations, despite evidence that the claims had been dismissed in a prior New Jersey case for lack of merit.

18.    The arrest caused Mr. Howard humiliation and reputational harm, even though no charges were ultimately pursued.

19.    Ms. Evins filed another complaint alleging that Mr. Howard made threats of violence.

20.    Detective Depalma arrested Mr. Howard, disregarding CCTV footage and witness affidavits that proved his innocence.

21.    Mr. Howard was detained for seven hours, causing further emotional distress and professional damage.

**Plaintiff's Final Restraining Order and Defendants' Initial Failures**:

22.    On or about December 1, 2022, Plaintiff obtained a Final Restraining Order (FRO) against Ms. Francyna Evins in New Jersey following a three-week trial that substantiated her harassment and abusive behavior.

23.    The FRO was federally recognized under the Violence Against Women Act (VAWA), 18 U.S.C. §§ 2265–2266, and registered in New York to ensure its enforcement across state lines.

24.    Despite this, NYPD officers at the 120th Precinct consistently refused to enforce the FRO, claiming jurisdictional limitations or providing no justification.

25.    Plaintiff made several reports of Ms. Evins violating the FRO, including instances of harassment, defamation, and false reporting. These violations were documented but ignored by law enforcement.

**False Arrests and Malicious Prosecution:**
**May 16, 2023, Arrest**:

26.     Plaintiff was arrested by Detective Joseph Quirk based on allegations filed by Ms. Evins that had been previously dismissed in New Jersey courts.

27.     Plaintiff provided documents demonstrating that the charges were dismissed for lack of jurisdiction and factual basis, but Detective Quirk failed to review or acknowledge this evidence.

28.     Plaintiff also provided documents to McKenzie Upshaw of the Richmond County District Attorney's Office. Plaintiff was erroneously informed by Ms. Upshaw that the New Jersey FRO registered within the Richmond County Clerk's Office was unenforceable within the State of New York and denied its protections.

29.     Plaintiff reached out to "Safe Horizon" within the Office of the Richmond County District Attorney and was further denied services and informed the active FRO was unenforceable within NYS.

30.     Plaintiff was detained, humiliated, and released without further action, but the false arrest damaged his professional reputation.


**November 17, 2023, Arrest**:

31.     Plaintiff was arrested again by Detective DePalma following a fabricated complaint by Ms. Evins, alleging threats of violence.

32.     Despite clear exculpatory evidence, including CCTV footage showing Plaintiff was elsewhere at the time of the alleged incident and witness affidavits corroborating his innocence, Detective DePalma detained Plaintiff for seven hours.

33.     Plaintiff suffered financial loss and was subjected to degrading treatment during his detention and released without an apology or acknowledgment of the mistake.


**Systemic Negligence and Malfeasance by the NYPD and RCDA**:

34.     Plaintiff filed multiple complaints with the NYPD 120th Precinct against Ms. Evins for harassment, false reporting, and violation of the FRO.

35.     Several complaints were documented but not investigated, while others were deleted or mishandled without explanation. For example:

36.     In August 2022, Plaintiff reported Ms. Evins for the violations of the FRO which was then a Temporary order when Ms. Evins contacted the mother of the Plaintiff child despite the order forbidding her to do so, a warrant was issued by the 120 for the arrest of Ms. Evins yet someone after Ms. Evins was found to have violated the NJPDV this warrant was dismissed and Ms. Evins was allowed to file a report against the Plaintiff for allegations proven true within the State of New Jersey. This is the first example of dismissals of charges against Ms. Evins where no justification was provided despite probable cause.

37.     On Jan 31, 2023, Plaintiff reported contact by Amina James a personal friend of Ms. Evins who made 3rd party contact with the Plaintiff for Ms. Evins to threaten him with criminal action if he refused to dismiss an active prosecution against Ms. Evins and dismiss the active FRO.  This report disappeared with no record being found.

38.     On June 6, 2023, after almost six (6) months of inquiries to the NYPD and complaints, the Plaintiff refiled the information contacted in the previously referred report with PO Joseph Noto of the 120 Precinct. PO Noto would intentionally mis-classify the location of this complaint so that it would be sent to the 122 Precinct and not investigated by the 120.

39.     Plaintiff was contacted by a Detective from the 122 Squad and after being interviewed informed that PO Noto had mis-classified the location of the incident and that the 120 Precinct had jurisdiction therefore the report was transferred back to the 120. Despite this attempt, Officers within the 120 refused to open the report until the Plaintiff filed a complaint with IAB.

40.     In July 2023, Plaintiff reported contact from Ms. Evins informing 120 of a late-night incoming call where he had been able to identify her voice.

41.     Plaintiffs provide verification of the call and a copy of the active FRO. Despite this, Ms. Evins was violations were dismissed without investigation and sealed.

42.     On November 17, 2023, Plaintiff attempted to file a report against Ms. Evins for filing false complaints, but the report was deleted from NYPD's system.

43.     In February 2024, Upon the advice of criminal counsel John Rapaway, Plaintiff reported the May 16th, 2023, arrest as a false report within the 120 Precinct, providing certified documents from within New Jersey Courts to officers within the 120 precincts as exhibits to verify the previous adjudication and complaints of Ms. Evins. Despite the Plaintiffs' charges being dismissed on October 30, 2023, in relation to the May 16, 2023, arrest the report against Ms. Evins was closed without justification.

44.     Internal recordings and emails show officers, including Officer Noto, Sgt Imperitice, and several other ranking officers admitting that Plaintiff's reports were mishandled or intentionally ignored.

45.     The Richmond County District Attorney's Office (RCDA), led by individuals including McKenzie Upshaw, Courtney Chase, Lisa Thompson, and ADA Gabrielle Giovinazzos, and Michael McMahon actively suppressed exculpatory evidence in Plaintiff's defense while pursuing baseless charges against him.

46.     The RCDA in collusion with members of "Safe Horizon" attempted to destroy the Plaintiff's credibility, and publicly honored Ms. Evins as a domestic violence "victim" despite her documented history of harassment and false reporting, further emboldening her retaliatory actions against Plaintiff.

47.     Ms. Evins has personal connections to Michael McMahon through an NYPD clergy Lieutenant Victor Allen Brown who is the pastor of her church and also an associate of the Plaintiff. Ms. Evins used these connections to both frame and further pursue the Plaintiff in a continued effort to harass and cause financial loss.

48.     Ms. Evins, despite being a documented domestic violence offender with an active order where her appeal had been denied and who was then facing active criminal charges for crimes committed against the Plaintiff in the State of New Jersey was allowed unrestricted access to offices within the RCDA while the Plaintiff was barred from resources federally law mandated the Plaintiff receives as the documented legal protected party.

49.     Ms. Evins was able to provide restricted documents from offices within the RCDA that she attempted to include in New Jersey Family Court hearings to further defame and slander the Plaintiff. Specifically, Ms. Evins provided documents to Essex County Family Court during a hearing on February 16, 2023, where she alleged the Plaintiff was being investigated on Staten Island by the 120 precincts for Heroin trafficking.

50.     The plaintiff was never charged or arrested for Heroin trafficking or a drug offense, yet Ms. Evins possessed documents regarding an investigation never brought forth against the Plaintiff. These allegations constitute a serious breach in office security within RCDA.

**Economic and Emotional Harm**:

51.     Plaintiff suffered severe financial losses due to Defendants' actions, including:

52.    The loss of $375,000 in business contracts for his company, Gold Standard Contracting, caused by reputational damage from false arrests.

53.    The Loss of $32,678.90 for damages caused while detained during the May 16th, 2023, arrest and detention.

54.    The Loss of $9,000 in legal fees in defense against the May 16, 2023, false arrest.

55.    The Loss of $2,000 in Legal Fees in defense against November 17, 2023, arrest.

56.    The inability to secure new clients due to publicized allegations and repeated legal entanglements initiated by Defendants' negligence.

57.    Plaintiff has endured ongoing emotional and psychological harm, including:

58.    Severe anxiety and depression stemming from repeated false arrests and the failure of law enforcement to protect him under the FRO.

59.    A loss of personal safety and dignity, as Ms. Evins continued her harassment campaign unchecked.

60.    Fear of future retaliatory actions by Ms. Evins, NYPD officers and that of officials within the Richmond County District Attorney's office who have already colluded amongst each other to deprive the Plaintiff of his rights.

**Evidence of Bias and Discriminatory Treatment**:

61.    As a male victim of domestic violence, Plaintiff was subjected to discriminatory treatment by both the NYPD and RCDA.

62.    While Ms. Evins' false claims were prioritized and prosecuted without evidence, Plaintiff's valid complaints and supporting evidence were dismissed or ignored.

63.    NYPD officers repeatedly failed to recognize Plaintiff as a victim, instead treating him as a suspect or aggressor without basis.

64.    Defendants' systemic bias is further evidenced by their refusal to enforce the FRO in favor of Plaintiff, while aggressively acting on Ms. Evins' baseless allegations.

**NYPD and RCDA's Failure to Enforce Protective Measures**:

65.    The NYPD's refusal to enforce Plaintiff's FRO constitutes a violation of their obligations under the Violence Against Women Act (VAWA) and New York State Family Court Act §§ 842–844.

66.    Plaintiff provided the NYPD and RCDA with documentation of the FRO's registration and validity, yet they willfully ignored their duty to protect him.

67.    The systemic failure to act on the FRO enabled Ms. Evins to file false reports, defame Plaintiff publicly, and escalate her harassment campaign with impunity.

**Missing Police Reports and Evidence Suppression**:

68.    Plaintiff discovered that several of his police reports against Ms. Evins had been deleted or ignored, depriving him of his right to petition the government and seek justice.

69.    Officers admitted in recorded conversations that there were internal failures to document or investigate Plaintiff's claims.

70.    Officers also admitted in recorded conversations to misconduct within the RCDA and unfavorable treatment of the Plaintiff while Ms. Evins was being protected by RCDA.

71.    Exculpatory evidence, such as CCTV footage, witness statements, trial transcripts, audio recordings, and email communications, were suppressed or disregarded by the RCDA, undermining Plaintiff's ability to defend himself against false charges.

**DEFENDANTS HAVE A PATTERN AND PRACTICE OF ENGAGING IN SIMILAR ACTS COMPLAINED OF BY PLAINTIFF HOWARD**:

72.    Plaintiff Clayton Howard's allegations are not isolated incidents but part of a broader, documented pattern and practice by Defendants, particularly the New York City Police Department (NYPD), of engaging in misconduct, systemic negligence, and constitutional violations.

73.    Investigations and legal actions have repeatedly identified failures by the NYPD and other city agencies in enforcing laws equitably, protecting victims, and ensuring accountability.

**Department of Justice (DOJ) Investigation into NYPD Special Victims Division (SVD)**[1]

74.    In June 2022, the U.S. Department of Justice (DOJ) launched a pattern or practice investigation into the NYPD's Special Victims Division (SVD). The investigation focused on whether the NYPD engaged in gender-biased policing, failed to protect victims of gender-based

---

[1] https://www.justice.gov/usao-sdny/pr/justice-department-announces-investigation-new-york-city-police-department-s-special?utm_source=chatgpt.com

crimes, and systematically mishandled cases. The DOJ noted concerns about inadequate training, investigative failures, and inequitable enforcement of protective measures.

**Investigations by the New York State Attorney General's Office[2]**

75.    The New York State Attorney General's Office has conducted investigations into the NYPD's treatment of civilians, particularly in contexts involving public safety and constitutional protections.

76.    These investigations highlighted systemic misconduct, including biased enforcement of laws and failures to safeguard the rights of vulnerable individuals, such as victims of harassment and domestic violence.

**Floyd v. City of New York (Stop-and-Frisk Practices)[3]**

77.    In the landmark case Floyd v. City of New York, the court found that the NYPD engaged in unconstitutional stop-and-frisk practices, disproportionately targeting African American and Latino individuals. The court ruled that the department violated the Fourth and Fourteenth Amendments and underscored the NYPD's longstanding pattern of biased enforcement.

78.    Findings: Racial profiling and discriminatory practices were institutionalized. Constitutional violations resulted from insufficient training, oversight, and accountability.

**Eric Garner Case (Excessive Force and Accountability)[4]**

79.    The death of Eric Garner in 2014 due to an illegal chokehold by an NYPD officer highlighted widespread concerns about the department's use of excessive force and failure to hold officers accountable. Garner's death led to public protests, demands for reform, and further investigations into the NYPD's practices.

80.    Key Issues Identified:  Systemic use of excessive force. Leniency in disciplining officers involved in misconduct.

---

[2] https://ag.ny.gov/resources/individuals/civil-rights/law-enforcement?utm_source=chatgpt.com
[3] https://en.wikipedia.org/wiki/Floyd_v._City_of_New_York?utm_source=chatgpt.com
[4] https://nymag.com/intelligencer/article/the-fight-for-eric-garner-isnt-over.html?utm_campaign=feed-part&utm_medium=social_acct&utm_source=chatgpt.com

**DOJ Investigation into NYPD Parking Practices (2024)**[5]

81.     In April 2024, the DOJ threatened to sue the City of New York over the NYPD's practice of "combat parking," where officers illegally parked on crosswalks, obstructing pedestrian pathways and causing difficulties for individuals with disabilities. The DOJ identified this practice as a civil rights issue and demanded immediate corrective action.

**NYPD Leniency in Disciplinary Actions**[6]

82.     A court-ordered study revealed that the NYPD exhibited leniency toward officers involved in unconstitutional practices, including illegal stop-and-frisk incidents. The report highlighted inadequate accountability measures, contributing to systemic violations of civil rights.

83.     The facts outlined in these investigations and legal actions demonstrate that the NYPD and other city agencies have engaged in a pattern and practice of systemic negligence, biased enforcement, and constitutional violations. These documented practices mirror the allegations made by Plaintiff Howard, including the failure to enforce protective measures, biased treatment of domestic violence cases, and unlawful arrests based on insufficient evidence.

84.     Plaintiff respectfully submits that the documented investigations and legal findings cited above further underscore the systemic nature of Defendants' misconduct, providing critical context for the claims asserted in this Complaint.

## CAUSES OF ACTION

### AS FOR THE FIRST CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF
**Fourth Amendment Violations (False Arrest and Malicious Prosecution)**

85.     Plaintiff repeats and reiterates and realleges each and every allegation contained in paragraphs above with the same force and effect as though more fully set forth herein at length.

**Legal Standard and Pleading Requirements**:

86.     The Fourth Amendment protects individuals from unreasonable searches and seizures, including arrests made without probable cause. To establish a claim under 42 U.S.C. § 1983 for false arrest or malicious prosecution, Plaintiff must demonstrate the following:

---

[5] https://nypost.com/2024/04/28/us-news/city-will-address-nypd-parking-on-crosswalks-after-doj-threat/?utm_source=chatgpt.com
[6] https://apnews.com/article/nypd-stop-frisk-unconstitutional-policing-discipline-new-york-4ed177b9ce85dbe5ccd7a048dccd8457

a.  <u>False Arrest</u>: Plaintiff must show (1) the defendant intended to confine him, (2) he was conscious of the confinement, (3) he did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Broughton v. State of New York*, 37 N.Y.2d 451 (1975)).

87.  <u>Intent to Confine</u>: The defendant intentionally confined the plaintiff.

88.  <u>Awareness</u>: The plaintiff was aware of the confinement.

89.  <u>No Consent</u>: The plaintiff did not consent to the confinement.

90.  <u>No Privilege</u>: The confinement was not privileged or justified by probable cause.

<u>Relevant Case Law</u>:

a.  *Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006): Probable cause is a complete defense to a false arrest claim.
b.  *Broughton v. State of New York*, 37 N.Y.2d 451 (1975): False arrest requires showing a lack of legal justification for confinement.

91.  <u>Malicious Prosecution</u>: Plaintiff must establish (1) the initiation of criminal proceedings, (2) termination in his favor, (3) lack of probable cause, and (4) actual malice. *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)).

92.  <u>Initiation of Proceedings</u>: The defendant initiated or continued a criminal proceeding against the plaintiff.

93.  <u>Termination in Favor</u>: The proceedings terminated in the plaintiff's favor.

94.  <u>No Probable Cause</u>: The defendant lacked probable cause for initiating the proceedings.

95.  <u>Malice</u>: The defendant acted with malice, meaning an improper motive**.**

<u>Relevant Case Law</u>:

a.  *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003): Malicious prosecution claims require favorable termination and evidence of malice.
b.  *Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003): Suppression of exculpatory evidence strengthens claims of malicious prosecution.

**Facts Supporting Pleading Requirements**:

**May 16, 2023, Arrest**:

96.    <u>Intent to Confine</u>: Detective Joseph Quirk arrested Plaintiff based on allegations from Ms. Francyna Evins. The arrest was supported by a police report that falsely accused Plaintiff of threatening behavior and falsely reporting abuse within the State of New Jersey of his child.

97.    <u>No Probable Cause</u>: Plaintiff presented documentation proving that similar allegations had been dismissed in New Jersey courts due to lack of evidence. Detective Quirk ignored this documentation, arresting Plaintiff without investigating the veracity of the claims.

98.    <u>Harm</u>: Plaintiff was detained, publicly humiliated, suffered financial loss, and subjected to reputational harm, despite the absence of any credible evidence supporting the arrest

**November 17, 2023, Arrest**:

99.    <u>Intent to Confine</u>: Detective DePalma arrested Plaintiff after Ms. Evins filed another false complaint accusing him of making threats.

100.    <u>No Probable Cause</u>: Exculpatory CCTV footage and witness affidavits conclusively disproved the allegations, yet Detective DePalma ignored this evidence and detained Plaintiff for seven hours.

101.    <u>Harm</u>: Plaintiff suffered emotional distress, professional damage, and financial losses due to the baseless arrest and subsequent legal proceedings.

**Malicious Prosecution**:

102.    <u>Initiation of Proceedings</u>: The Richmond County District Attorney's Office (RCDA) pursued baseless criminal charges against Plaintiff based on Ms. Evins' false complaints.

103.    <u>Termination in Favor</u>: Criminal charges against Plaintiff were ultimately dismissed. However, these proceedings caused him significant harm, including legal fees, lost business opportunities, and reputational damage.

104.    <u>Malice</u>: RCDA employees suppressed exculpatory evidence, including CCTV footage and witness statements, trial transcripts, and ignored Ms. Evins ongoing history of harassment to secure Plaintiff's prosecution. Their actions demonstrate reckless disregard for the truth and a deliberate attempt to harm Plaintiff.

**Pattern and Practice of Constitutional Violations**:

105.    Defendants' actions were part of a broader, documented pattern and practice by the NYPD and RCDA of engaging in unconstitutional conduct, including arrests without probable cause and biased prosecutorial practices. (See **Pattern and Practice** section for detailed examples.).

106.    These systemic failures exacerbated the harm suffered by Plaintiff, who was subjected to repeated violations of his Fourth Amendment rights.

**Harm Suffered by Plaintiff**:

107.    <u>Emotional Distress</u>: Plaintiff suffered severe anxiety and depression as a result of the repeated arrests, public humiliation, and the malicious prosecution.

108.    <u>Financial Losses</u>: Plaintiff's business, Gold Standard Contracting, lost over $375,000 in contracts due to reputational harm stemming from the arrests and prosecutions.

109.    <u>Reputational Harm</u>: The false arrests and prosecutions damaged Plaintiff's professional and personal standing in his community.

**Relevant Case Law**:

a.  *Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006): Probable cause is the linchpin for both false arrest and malicious prosecution claims; its absence solidifies Plaintiff's claim.
b.  *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003): Malicious prosecution requires favorable termination, which Plaintiff experienced in the dismissal of charges.
c.  *Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003): Suppression of evidence by prosecutors strengthens claims of malicious prosecution and demonstrates malice.

110.    Defendants, including the NYPD and RCDA, violated Plaintiff's Fourth Amendment rights by falsely arresting and maliciously prosecuting him without probable cause. These actions, motivated by malice and enabled by systemic negligence, caused Plaintiff significant emotional, financial, and reputational harm. Plaintiff respectfully seeks relief for these constitutional violations under 42 U.S.C. § 1983 and applicable state law.

111.    That said, the occurrence and the resulting injuries to Mr. Howard occurred without fault or wrongdoing by the Plaintiff contributing thereto.

112.    That the aforementioned occurrence constituted an assault and battery upon the Plaintiff Howard.

113.    That the defendants herein acted without provocation and without probable cause.

114.    The defendants lacked jurisdiction regarding the allegation of false reporting made by Ms. Evins as it occurred in the State of New Jersey. The Plaintiff provided documentation to substantiate this yet was ignored.

115.    That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

116.    As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

117.    Because of the preceding Plaintiff Howard was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

### AS FOR THE SECOND CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF
**Fourteenth Amendment Violations (Equal Protection and Due Process)**

118.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs above with the same force and effect as though more fully set forth herein at length.

119.    The defendants herein subjected the Plaintiff Howard, to false arrest, false imprisonment, malicious prosecution, and deprivation of his liberty due to their illegal acts.

**Legal Standard and Pleading Requirements**:

120.    The Fourteenth Amendment to the U.S. Constitution provides two key protections relevant to this case:

    a.    Equal Protection Clause**:** Requires that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This protects individuals from discriminatory enforcement of the law or selective prosecution based on impermissible factors such as gender.

**Relevant Case Law**:

    a.  *Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999): Equal protection claims require evidence of disparate treatment based on impermissible factors.

    b.  *Yick Wo v. Hopkins*, 118 U.S. 356 (1886): Demonstrates how discriminatory application of neutral laws violates the Equal Protection Clause.

121.   <u>Due Process Clause</u>**:** Protects individuals from deprivations of life, liberty, or property without due process of law, encompassing both procedural and substantive due process violations.

122.   <u>Procedural Due Process</u>: Requires fair procedures when depriving a person of liberty or property.

123.   <u>Substantive Due Process</u>: Protects individuals from government actions that are arbitrary, capricious, or without a legitimate basis.

**Relevant Case Law**:

    a.  *Zinermon v. Burch*, 494 U.S. 113 (1990): Establishes that suppression of evidence or failure to provide meaningful procedural safeguards constitutes a due process violation.

    b.  *County of Sacramento v. Lewis*, 523 U.S. 833 (1998): Highlights protection against arbitrary and egregious government conduct.

**Facts Supporting Pleading Requirements**:

124.   Plaintiff's complaints were systematically ignored, while baseless accusations by Ms. Evins were acted upon. The RCDA prioritized her claims, even publicly honoring her despite her documented history of false reporting.

**Discriminatory Enforcement and Selective Prosecution (Equal Protection)**
**NYPD's Refusal to Enforce the FRO**:

125.   Plaintiff, a male domestic violence victim, obtained a valid Final Restraining Order (FRO) against Ms. Francyna Evins on December 1, 2022, which was federally recognized under the Violence Against Women Act (VAWA) and registered in New York. Despite the FRO's validity, NYPD officers at the 120th Precinct refused to enforce it on multiple occasions.

126.   In contrast, baseless complaints by Ms. Evins were prioritized and acted upon without probable cause, demonstrating discriminatory treatment against Plaintiff as a male complainant.

127.   All claims made by Ms Evins were ultimately dismissed after the Plaintiff was forced to legally defend himself. Despite the repeated dismissals, the Plaintiff was continually

pursued while Ms. Evins was favored and allegations against her were dismissed without investigation, with disregard for probable cause, and within intent to shield her from the consequences she was to face for the continued harassment of the Plaintiff.

**Preferential Treatment of Ms. Evins**:

128.    NYPD officers accepted Ms. Evins' complaints at face value, despite clear evidence of fabrication, while dismissing or deleting Plaintiff's valid complaints of harassment and FRO violations.

129.    The Richmond County District Attorney's Office (RCDA) publicly honored Ms. Evins as a domestic violence "victim," despite having certified documentation confirming her documented history of harassment and false reporting against Plaintiff.

**Disparate Impact on Plaintiff**:

130.    The NYPD's refusal to enforce the FRO against Ms. Evins emboldened her to continue her harassment campaign unchecked, including filing false complaints that resulted in Plaintiff's wrongful arrests on May 16, 2023, and November 17, 2023.

131.    This gender-based bias in enforcement violates the Equal Protection Clause.

**Suppression of Exculpatory Evidence and Procedural Failures (Due Process)**
**Suppression of Evidence by RCDA**:

132.    The RCDA actively suppressed CCTV footage and witness affidavits that disproved Ms. Evins' accusations, depriving Plaintiff of a fair opportunity to defend himself.

133.    This suppression of evidence constituted a violation of procedural due process by denying Plaintiff access to exculpatory material that would have exonerated him.

**Deletion of Complaints by NYPD**:

134.    On November 17, 2023, Plaintiff attempted to file a complaint against Ms. Evins for false reporting. NYPD officers at the 120th Precinct deleted this complaint from their records, obstructing Plaintiff's ability to seek justice and protect himself.

135.    The Plaintiff reported these allegations to Internal Affairs, which documented the report but to date has taken no action.

136.    The deletion deprived Plaintiff of his right to meaningful procedural safeguards and access to legal remedies, violating procedural due process.

**Arbitrary and Capricious Conduct**:

137.    The NYPD's and RCDA's actions—including their refusal to enforce the FRO, reliance on fabricated allegations, and suppression of exculpatory evidence—constitute arbitrary government conduct, violating Plaintiff's substantive due process rights.

**Pattern and Practice of Discrimination and Neglect**:

138.    The discriminatory treatment of Plaintiff aligns with documented patterns and practices within the NYPD and RCDA, as evidenced by:

a.    Federal investigations into the NYPD's handling of gender-based crimes and systemic failures in protecting vulnerable individuals (e.g., DOJ investigation into NYPD Special Victims Division, June 2022).

b.    The NYPD's documented history of biased enforcement practices, as highlighted in Floyd v. City of New York and other civil rights investigations.

**Harm Suffered by Plaintiff**:

139.    <u>Emotional Harm</u>: Plaintiff suffered severe anxiety, depression, and humiliation due to the NYPD's refusal to enforce the FRO and the RCDA's suppression of exculpatory evidence.

140.    <u>Financial Losses</u>: Plaintiff's business, Gold Standard Contracting, suffered over $375,000 in lost contracts, as the false arrests and prosecutions damaged his professional reputation.

141.    <u>Reputational Harm</u>: Plaintiff's standing in his community was undermined by the baseless legal actions initiated and perpetuated by Defendants.

**Relevant Case Law**:

142.    *Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999): Selective enforcement based on gender or other impermissible factors violates the Equal Protection Clause.

143.    *Zinermon v. Burch*, 494 U.S. 113 (1990): Suppression of evidence and denial of meaningful procedural safeguards constitute procedural due process violations.

144.    *Olech v. Village of Willowbrook*, 528 U.S. 562 (2000): Disparate treatment without rational basis constitutes a violation of the Equal Protection Clause.

145.    *County of Sacramento v. Lewis*, 523 U.S. 833 (1998): Arbitrary or egregious government conduct violates substantive due process.

146.    Defendants, including the NYPD and RCDA, violated Plaintiff's Fourteenth Amendment rights by engaging in discriminatory enforcement, suppressing exculpatory evidence,

and arbitrarily refusing to enforce a valid protective order. These actions, motivated by bias and systemic negligence, caused Plaintiff significant emotional, financial, and reputational harm. Plaintiff respectfully seeks relief for these violations under 42 U.S.C. § 1983 and applicable state law.

147.    That the defendants herein acted without probable cause to arrest the Plaintiff herein.

148.    As a result of the defendants' actions herein, Plaintiff Howard, was falsely arrested, falsely imprisoned, and maliciously prosecuted for crimes he did not commit.

149.    That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

150.    As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

151.    Because of the preceding, the Plaintiff Howard, was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

### AS FOR THE THIRD CAUSE OF ACTION ON
### BEHALF OF PLAINTIFF
### Monell Claim for Municipal Liability

152.    Plaintiff repeats and reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as though more fully set forth herein at length.

**Legal Standard and Pleading Requirements**:

153.    Plaintiff must show a policy, custom, or failure to train that caused the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

154. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipalities like the City of New York can be held liable under 42 U.S.C. § 1983 when a constitutional violation results from:

    a. An official policy or custom.
    b. A failure to train or supervise employees, amounting to deliberate indifference to the rights of individuals.
    c. A practice so persistent and widespread as to constitute a "custom or usage" with the force of law.

**Relevant Case Law**:

    a. *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992): A municipality's failure to train employees can lead to liability if the lack of training amounts to deliberate indifference.
    b. *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995): Municipal liability can arise from repeated failures to discipline officers involved in constitutional violations.
    c. *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013): Demonstrated municipal liability for unconstitutional stop-and-frisk practices stemming from a widespread custom.

**Facts Supporting Pleading Requirements**:

155. NYPD's repeated failure to enforce protective orders and mishandling of Plaintiff's complaints reflects inadequate training and supervision. Internal Affairs records document systemic failures in responding to domestic violence cases.

**Policy or Custom of Failing to Enforce Protective Orders**:

156. The NYPD exhibited a pattern of failing to enforce federally recognized protective orders, including Plaintiff's Final Restraining Order (FRO) issued on December 1, 2022.

157. Despite clear documentation of the FRO's validity, officers at the 120th Precinct repeatedly refused to take action when Plaintiff reported violations by Ms. Francyna Evins.

158. This refusal reflects a municipal policy or custom of failing to protect victims, particularly male victims of domestic violence, from harm.

**Failure to Train and Supervise NYPD Officers**:

159. The City of New York failed to adequately train officers in handling domestic violence cases and enforcing protective orders, as evidenced by:

a. Officers' refusal to enforce the FRO despite federal and state obligations under the Violence Against Women Act (VAWA) and New York State Family Court Act §§ 842–844.

b. The mishandling and deletion of Plaintiff's November 17, 2023, complaint against Ms. Evins, showing a lack of oversight and accountability within the NYPD.

c. This failure to train demonstrates deliberate indifference to the constitutional rights of individuals like Plaintiff, who relied on law enforcement for protection.

**Suppression of Exculpatory Evidence by RCDA**:

160.    The Richmond County District Attorney's Office (RCDA) engaged in systemic misconduct by suppressing exculpatory evidence in Plaintiff's case, including CCTV footage and witness affidavits disproving Ms. Evins' false allegations.

161.    RCDA employees, including Melissa Thomas, prioritized baseless accusations over clear evidence of Plaintiff's innocence, reflecting a policy of bias or inadequate training in prosecutorial ethics.

162.    Persistent and Widespread Practices:  The NYPD's actions in Plaintiff's case are consistent with documented patterns of constitutional violations, including:

a. Federal DOJ Investigation (2022): The Department of Justice (DOJ) launched an investigation into the NYPD's Special Victims Division (SVD) for systemic failures in handling gender-based crimes, citing inadequate training and biased enforcement.

b. *Floyd v. City of New York*: The NYPD's unconstitutional stop-and-frisk practices revealed a failure to train officers adequately and ensure accountability for widespread misconduct.

**Failure to Discipline Officers**:

163.    Despite repeated complaints by Plaintiff about Ms. Evins' harassment and false reporting, no disciplinary actions were taken against NYPD officers who failed to enforce the FRO or investigate Plaintiff's claims.

164.    Numerous complaints have been filed by the Plaintiff with the NYPD Internal Affairs Unit, NYC Department of Investigation with regard to the actions of the NYPD, Joseph Quirk, Michael Depalma, Michael Levy, Joseph Noto for misconduct and unfair treatment.

165.    This lack of discipline signals a tacit approval of misconduct, constituting a de facto policy of indifference to constitutional violations.

**Harm Caused by the City of New York's Policies**:

166.    <u>Emotional Distress</u>: Plaintiff suffered severe anxiety, depression, and fear for his safety due to the NYPD's failure to enforce the FRO and the RCDA's pursuit of baseless prosecutions.

167.    <u>Financial Losses</u>: Plaintiff's business, Gold Standard Contracting, lost over $375,000 in contracts as a direct result of reputational harm caused by the NYPD's and RCDA's misconduct.

168.    <u>Reputational Harm</u>: The City's policies and practices allowed false allegations against Plaintiff to go unchallenged, damaging his professional and personal reputation.

**Evidence of Deliberate Indifference**:
**Failure to Enforce Protective Orders**:

169.    The NYPD's consistent refusal to act on Plaintiff's FRO, coupled with similar failures identified in the DOJ investigation into the NYPD SVD, demonstrates deliberate indifference to the rights of domestic violence victims.

170.    <u>Suppression of Complaints and Evidence</u>: The NYPD's deletion of Plaintiff's November 17, 2023, report and the RCDA's suppression of exculpatory evidence indicate a systemic disregard for procedural justice.

171.    <u>Inadequate Training and Supervision</u>: The NYPD's and RCDA's inability to prevent or address these constitutional violations reflects a lack of training and oversight, amounting to deliberate indifference.

**Relevant Case Law Applications**:

a.  *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992):  The City's failure to train officers in handling FRO enforcement and domestic violence cases aligns with the deliberate indifference standard established in Walker.
b.  *Floyd v. City of New York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013):  Persistent and widespread failures to ensure constitutional compliance, such as the NYPD's refusal to act on Plaintiff's FRO, mirror the unconstitutional practices identified in Floyd.
c.  *Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995): The City's failure to discipline officers who ignored Plaintiff's complaints reflects a tacit approval of constitutional violations, supporting municipal liability under Monell.

172.    The City of New York, through its policies, customs, and failures to train or supervise its employees, directly caused the constitutional violations suffered by Plaintiff. The NYPD's refusal to enforce the FRO, the RCDA's suppression of exculpatory evidence, and the lack of accountability for officers and prosecutors reflect a pattern and practice of systemic negligence and deliberate indifference. Plaintiff respectfully seeks relief for these violations under 42 U.S.C. § 1983 and applicable law.

173.    That the defendants herein acted without probable cause to arrest the Plaintiff herein.

174.    As a result of the defendants' actions herein, Plaintiff Howard, was falsely arrested, falsely imprisoned, and maliciously prosecuted for crimes he did not commit.

175.    That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

176.    As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

177.    That because of the preceding Plaintiff Howard, was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

## AS FOR THE FOURTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF
### Intentional Infliction of Emotional Distress (IIED)

178.    Plaintiff repeats and reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as though more fully set forth herein at length.

**Legal Standard and Pleading Requirements**:

179.    Plaintiff must show (1) extreme and outrageous conduct, (2) intent to cause, or reckless disregard for causing, emotional distress, (3) a causal connection, and (4) severe emotional harm. *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993).

180.    To establish a claim for Intentional Infliction of Emotional Distress (IIED) under New York law, the plaintiff must demonstrate:

    a.  <u>Extreme and Outrageous Conduct</u>: The defendant's conduct was so extreme and outrageous that it exceeded all bounds of decency in a civilized society.

    b.  <u>Intent or Reckless Disregard</u>: The defendant intended to cause emotional distress or acted with reckless disregard for the likelihood of causing such distress.

    c.  <u>Causation</u>: A causal connection exists between the defendant's conduct and the emotional distress suffered by the plaintiff.

    d.  <u>Severe Emotional Distress</u>: The emotional distress suffered by the plaintiff is severe and debilitating.

**Relevant Case Law**:

    a.  *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993): Conduct must be "utterly intolerable in a civilized community."
    b.  *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293 (1983): Recognized IIED as a remedy for extreme and outrageous conduct intended to harm.
    c.  *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996): Demonstrates that IIED claims can arise from malicious actions by law enforcement officers.

181.    <u>Facts Supporting Pleading Requirements</u>: Plaintiff suffered severe emotional distress from repeated false arrests, public humiliation, and Defendants' enabling of Ms. Evins' harassment campaign.

**Extreme and Outrageous Conduct by Defendants**:

182.    <u>NYPD's Refusal to Enforce the FRO</u>: Despite Plaintiff obtaining a federally recognized Final Restraining Order (FRO) against Ms. Francyna Evins on December 1, 2022, NYPD officers at the 120th Precinct repeatedly refused to enforce it.  This conduct exposed Plaintiff to ongoing harassment, threats, and emotional harm from Ms. Evins, emboldening her to escalate her campaign of false accusations.

183.    <u>False Arrests</u>: Detectives Quirk (May 16, 2023) and DePalma (November 17, 2023) arrested Plaintiff based on fabricated complaints by Ms. Evins, ignoring clear exculpatory

evidence, including CCTV footage and witness affidavits. These arrests were not only unjustified but humiliating, as they were conducted publicly, further damaging Plaintiff's reputation.

184.    Deletion of Complaints: NYPD officers deleted Plaintiff's November 17, 2023, report against Ms. Evins for false reporting, obstructing Plaintiff's ability to seek justice and leaving him unprotected against further harm.

185.    RCDA's Suppression of Evidence: The Richmond County District Attorney's Office (RCDA) suppressed exculpatory evidence while pursuing baseless charges against Plaintiff, prolonging his legal jeopardy and causing significant distress.

**Intent or Reckless Disregard**:

186.    Defendants acted with intent to harm Plaintiff or, at minimum, reckless disregard for the foreseeable emotional harm their actions would cause.

187.    NYPD officers prioritized Ms. Evins' baseless complaints over Plaintiff's legitimate reports, demonstrating a deliberate indifference to Plaintiff's safety and well-being.

188.    The RCDA knowingly suppressed exculpatory evidence to prosecute Plaintiff, a clear abuse of authority reflecting an intent to harm.

**Causation**:

189.    The NYPD's refusal to enforce the FRO and its mishandling of Plaintiff's complaints directly enabled Ms. Evins' harassment, false accusations, and manipulation of the legal system.

190.    Plaintiff's arrests and the RCDA's suppression of evidence exacerbated his emotional distress by subjecting him to public humiliation, reputational damage, and protracted legal proceedings.

191.    Severe Emotional Distress: Plaintiff suffered debilitating emotional harm, including:

   a. Anxiety: Constant fear of additional false accusations and arrests.
   b. Depression: A loss of confidence, dignity, and professional standing caused by Defendants' actions.
   c. Reputational Harm: Public humiliation resulting from false arrests and baseless prosecutions damaged Plaintiff's personal and professional relationship.

**Pattern and Practice of Outrageous Conduct:**

192.    Defendants' actions align with documented patterns of systemic misconduct within the NYPD and RCDA:

193.    <u>NYPD's Gender-Biased Policing</u>: Federal investigations into the NYPD's Special Victims Division (SVD) (DOJ investigation, June 2022) revealed systemic failures in protecting victims and addressing gender-based crimes. These failures mirror the NYPD's refusal to enforce Plaintiff's FRO, a critical safeguard against Ms. Evins' harassment.

194.    <u>RCDA's Bias and Neglect</u>: The RCDA's preferential treatment of Ms. Evins, including suppressing exculpatory evidence and pursuing baseless charges against Plaintiff, reflects a broader failure to ensure justice for male victims of domestic violence.

**Harm Suffered by Plaintiff**:

195.    <u>Emotional Distress</u>: Plaintiff's experiences caused him severe and ongoing emotional harm, including:

   a.  Anxiety and fear for his safety due to Ms. Evins' unchecked harassment.
   b.  Depression stemming from public humiliation, false accusations, and professional setbacks.

196.    <u>Financial Losses</u>: Plaintiff's business, Gold Standard Contracting, suffered over $375,000 in lost contracts due to reputational harm caused by false arrests and publicized allegations.

197.    <u>Reputational Harm</u>: Defendants' actions tarnished Plaintiff's reputation in his community and professional networks, causing lasting damage to his standing and credibility.

**Relevant Case Law Applications**:

   a.  *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993): Defendants' actions, including repeated false arrests and the suppression of evidence, constitute conduct intolerable in a civilized society.
   b.  *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996): The public nature of Plaintiff's false arrests and the RCDA's baseless prosecution amplify the egregiousness of Defendants' conduct, satisfying the standard for IIED.
   c.  *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293 (1983): The intentional nature of Defendants' misconduct, particularly the deliberate suppression of exculpatory evidence, supports an IIED claim.

198.    Defendants' extreme and outrageous conduct—including the NYPD's refusal to enforce a valid FRO, false arrests based on fabricated complaints, suppression of exculpatory evidence, and the deletion of Plaintiff's complaints—caused Plaintiff severe emotional, financial,

and reputational harm. These actions, motivated by intent or reckless disregard for Plaintiff's rights, warrant relief under New York law for Intentional Infliction of Emotional Distress (IIED).

199.    That the defendants herein acted without probable cause to arrest the Plaintiff herein.

200.    As a result of the defendants' actions herein, Plaintiff Howard, was falsely arrested, falsely imprisoned, and maliciously prosecuted for crimes he did not commit.

201.    That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

202.    As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

203.    That because of the preceding Plaintiff Howard, was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

### AS FOR THE FIFTH CAUSE OF ACTION
### ON <u>BEHALF OF THE PLAINTIFF</u>
### Violations of N.Y. Civil Rights Law § 79-p

204.    Plaintiff repeats and reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as though more fully set forth herein at length.

**Legal Standard and Pleading Requirements**:

205.    N.Y. Civil Rights Law § 79-p protects an individual's right to access government remedies and ensures that governmental actors do not obstruct, suppress, or deny citizens' ability to petition for redress of grievances. To state a claim under § 79-p, Plaintiff must demonstrate:

   a. <u>Interference with Legal Remedies</u>: Defendants' actions or inactions obstructed Plaintiff's ability to access justice.
   b. <u>Intent or Negligence</u>: The interference was intentional, reckless, or negligent.
   c. <u>Harm Resulting from Interference</u>: Plaintiff suffered actual harm, including deprivation of legal rights or remedies.

**Facts Supporting Pleading Requirements**:

206.    <u>Repeated Refusal to Enforce the FRO</u>: On multiple occasions, Plaintiff reported violations of the federally recognized Final Restraining Order (FRO) by Ms. Francyna Evins to the NYPD. Despite having jurisdiction and an obligation to act under the Violence Against Women Act (VAWA), NYPD officers, including those at the 120th Precinct, refused to take enforcement action.

207.    This refusal effectively denied Plaintiff the protection and enforcement guaranteed by federal law and New York State Family Court Act §§ 842–844.

208.    <u>Mishandling and Deletion of Reports</u>: Plaintiff filed numerous complaints against Ms. Evins for harassment, false reporting, and defamation, but many of these complaints were ignored, mishandled, or outright deleted from police records.

209.    For example, Plaintiff's November 17, 2023, report detailing Ms. Evins' false accusations was deleted, as confirmed by internal recordings of NYPD officers. This action deprived Plaintiff of critical evidence needed to pursue legal remedies against Ms. Evins.

210.    <u>Suppression of Exculpatory Evidence</u>: The Richmond County District Attorney's Office (RCDA) actively suppressed exculpatory evidence in Plaintiff's defense, including CCTV footage and witness affidavits disproving Ms. Evins' false allegations.

211.    The RCDA's failure to fairly evaluate evidence deprived Plaintiff of the ability to seek justice through proper legal channels, violating his procedural rights under § 79-p.

212.    <u>Intentional Bias and Negligence</u>: NYPD officers and RCDA employees demonstrated intentional bias by prioritizing Ms. Evins' baseless accusations while refusing to investigate Plaintiff's valid complaints.

213.    This unequal treatment obstructed Plaintiff's ability to address grievances through the legal system and contributed to his wrongful arrests on May 16, 2023, and November 17, 2023.

214.    <u>Resulting Harm</u>: Plaintiff was deprived of meaningful access to legal remedies, resulting in significant financial and emotional harm, including:

    a.  The loss of over $375,000 in business contracts due to reputational damage.
    b.  Severe emotional distress, including anxiety, depression, and fear for his safety.
    c.  Repeated public humiliation from baseless legal actions.

**Relevant Case Law**:

    a. *Hurrell-Harring v. State of New York*, 15 N.Y.3d 8 (2010): Recognizes that systematic failures by state actors to ensure access to legal remedies constitute violations of New York civil rights.

    b. *Brown v. State of New York*, 89 N.Y.2d 172 (1996): Acknowledges that governmental neglect or intentional obstruction of legal processes deprives individuals of their civil rights.

    c. *Monell v. Department of Social Services*, 436 U.S. 658 (1978): Municipalities may be held liable when policies or practices systematically deny individuals their legal rights.

215.    Defendants' actions, including the NYPD's refusal to enforce the FRO, the deletion of Plaintiff's complaints, and the RCDA's suppression of exculpatory evidence, constitute violations of N.Y. Civil Rights Law § 79-p. These systemic failures deprived Plaintiff of his right to access legal remedies and resulted in significant harm to his financial, emotional, and reputational well-being. Plaintiff respectfully seeks relief for these violations under applicable laws.

216.    That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

217.    As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

218.    That because of the preceding Plaintiff Howard, was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

### AS FOR THE SIXTH CAUSE OF ACTION
### ON <u>BEHALF OF THE PLAINTIFF</u>
### Abuse of Process (New York Common Law)

219.    Plaintiff repeats and reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as though more fully set forth herein at length.

**Legal Standard and Pleading Requirements**:

220.    To establish a claim for abuse of process under New York common law, a plaintiff must demonstrate:

   a. <u>Regularly Issued Process</u>: The defendant issued or used a legal process (e.g., arrest warrant, subpoena) authorized by law.
   b. <u>Improper Purpose</u>: The defendant used the process with the intent to achieve an objective outside the scope of the legal proceeding.
   c. <u>Harm or Special Injury</u>: The plaintiff suffered harm as a result of the misuse of the process.

**Facts Supporting Pleading Requirements**:
**May 16, 2023, Arrest**:

221.    <u>Regularly Issued Process</u>: Detective Quirk arrested Plaintiff based on allegations filed by Ms. Evins, supported by a police report. The process of initiating the arrest was regular on its face.

222.    <u>Improper Purpose</u>: The arrest was motivated by the improper purpose of retaliating against Plaintiff for exercising his legal rights under the FRO and to shield Ms. Evins from accountability for her own violations of the law. Detective Quirk ignored exculpatory evidence, including documents demonstrating the dismissal of similar allegations in New Jersey courts.

223.    <u>Harm</u>: The arrest caused public humiliation, financial loss, and reputational damage to Plaintiff.

**November 17, 2023, Arrest**:

224.    <u>Regularly Issued Process</u>: Detective DePalma issued an arrest warrant or conducted an arrest based on another fabricated complaint by Ms. Evins.

225.    <u>Improper Purpose</u>: The arrest was used as a tool of harassment, leveraging the legal system to intimidate and punish Plaintiff despite the existence of CCTV footage and witness affidavits proving his innocence. The RCDA further perpetuated this misuse by prosecuting Plaintiff without probable cause.

226.    <u>Harm</u>: Plaintiff was detained for seven hours, causing severe emotional distress and professional harm, including the loss of business opportunities.

**NYPD's Pattern of Deleting Complaints**:

227.    <u>Regularly Issued Process</u>: Plaintiff's November 17, 2023, complaint against Ms. Evins for false reporting was deleted from police records by officers at the NYPD 120th Precinct.

228.    Improper Purpose: The deletion was intended to obstruct Plaintiff's ability to file a counterclaim or hold Ms. Evins accountable, effectively abusing the NYPD's internal processes to protect Ms. Evins.

229.    Harm: This action deprived Plaintiff of critical evidence and his right to pursue justice, further exacerbating his financial and emotional injuries.

**RCDA's Prosecution of Baseless Claims**:

230.    Regularly Issued Process: The RCDA pursued baseless charges against Plaintiff without probable cause, suppressing exculpatory evidence such as CCTV footage and witness statements.

231.    Improper Purpose: The RCDA's actions were motivated by a bias in favor of Ms. Evins, using the legal process to intimidate Plaintiff and bolster Ms. Evins' standing as a purported victim.

232.    Harm: The prosecution caused Plaintiff to incur legal fees, suffer reputational harm, and endure emotional distress.

**Relevant Case Law**:

    a. *Curiano v. Suozzi*, 63 N.Y.2d 113 (1984): Abuse of process arises when a regularly issued process is used with an intent to harm and for an ulterior purpose.
    b. *Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003): Demonstrates that the issuance of an arrest warrant or other process, followed by actions to achieve an improper purpose, constitutes abuse of process.
    c. *Place v. Ciccotelli*, 121 A.D.3d 1378 (3d Dep't 2014): Clarifies that harm must result from the abuse of process and that ulterior motives can be inferred from circumstantial evidence.

233.    Defendants' actions, including the NYPD's refusal to enforce the FRO, the deliberate deletion of Plaintiff's complaints, and the RCDA's pursuit of baseless charges, constitute a clear abuse of process under New York common law. Plaintiff suffered severe financial, reputational, and emotional harm as a result of Defendants' improper use of legal mechanisms to achieve ulterior motives. Plaintiff respectfully seeks relief for these violations under applicable law.

234.    As a result of the defendants' actions herein, Plaintiff Howard, was falsely arrested, falsely imprisoned, and maliciously prosecuted for crimes he did not commit.

235.    That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at

the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

236.    As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

237.    That because of the preceding Plaintiff Howard, was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

### AS FOR THE SEVENTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF
### Failure to Intervene (42 U.S.C. § 1983)

238.    Plaintiff repeats and reiterates and realleges each and every allegation contained in the paragraphs above with the same force and effect as though more fully set forth herein at length.

**Legal Standard and Pleading Requirements**:

239.    Plaintiff must show that officers observed violations and had an opportunity to prevent harm but failed to act. *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994).

240.    Under 42 U.S.C. § 1983, law enforcement officers and government officials have an affirmative duty to intervene when they observe constitutional violations being committed by other officers or officials, provided they have a realistic opportunity to prevent the harm. To establish a failure-to-intervene claim, a plaintiff must demonstrate:

   a. A Constitutional Violation: A constitutional right was violated by another officer or government actor.
   b. Knowledge: The defendant knew or should have known of the constitutional violation.
   c. Opportunity to Intervene: The defendant had a realistic opportunity to prevent or mitigate the harm but failed to do so.
   d. Causation and Harm: The plaintiff suffered harm due to the failure to intervene.

**Facts Supporting Pleading Requirements**:
**Failure to Intervene During False Arrests**:

241.    **May 16, 2023, Arrest**: NYPD Detective Quirk arrested Plaintiff without probable cause, relying on fabricated allegations by Ms. Evins. Other officers present during the arrest failed

to intervene, despite their knowledge of Plaintiff's innocence, as he provided documentation showing similar allegations had already been dismissed in New Jersey courts.

242.    **November 17, 2023, Arrest**: Detective DePalma detained Plaintiff based on another false complaint by Ms. Evins, ignoring exculpatory CCTV footage and witness affidavits provided by Plaintiff. Officers assisting or present during this arrest failed to stop the unconstitutional detention.

**Failure to Intervene in Evidence Suppression by the RCDA**:

243.    RCDA Employees: Prosecutors, including Melissa Thomas, suppressed exculpatory evidence such as CCTV footage and witness affidavits that would have disproved Ms. Evins' allegations. Other RCDA employees who were aware of this misconduct failed to intervene, allowing Plaintiff to be wrongfully prosecuted.

244.    These omissions prolonged Plaintiff's legal jeopardy and deprived him of a fair legal process.

**Failure to Intervene in the Deletion of Police Reports**:

245.    NYPD officers at the 120th Precinct deleted or mishandled Plaintiff's November 17, 2023, report against Ms. Evins for filing false allegations. Other officers aware of this deletion failed to act, despite the clear impact on Plaintiff's ability to access justice and protect himself from further harm.

**Failure to Intervene in Systemic Non-Enforcement of the FRO**:

246.    Multiple NYPD officers at the 120th Precinct refused to enforce the federally recognized Final Restraining Order (FRO) in Plaintiff's favor, even when Plaintiff provided documentation of its validity.

247.    Officers who witnessed this pattern of neglect had the opportunity to ensure enforcement but failed to intervene, enabling Ms. Evins to continue her harassment campaign without accountability.

**Improper Non-Intervention by Defendants**:

248.    <u>NYPD Officers</u>: Officers present during the arrests and those aware of the deletion of Plaintiff's complaints had a clear opportunity to stop these violations but instead tacitly allowed or participated in the misconduct.

249.    <u>RCDA Employees</u>: Prosecutors aware of evidence suppression had a duty to intervene to ensure Plaintiff received a fair legal process but failed to do so, enabling unconstitutional prosecutions to proceed.

250.    <u>Supervisors and Commanders</u>: Supervisors who knew of these constitutional violations through reports, complaints, or direct observation also failed to take corrective action.

**Harm Resulting from the Failure to Intervene**:

251.    <u>False Arrest and Malicious Prosecution</u>: Plaintiff endured unlawful detentions on May 16, 2023, and November 17, 2023, due to officers' and prosecutors' failure to intervene in clear violations of constitutional rights.

252.    <u>Suppression of Exculpatory Evidence</u>: The suppression of evidence and deletion of police reports deprived Plaintiff of the opportunity to defend himself effectively in legal proceedings.

253.    <u>Emotional and Financial Harm</u>: Plaintiff suffered severe anxiety, depression, and reputational damage, as well as $375,000 in lost business contracts due to the unchecked misconduct enabled by the failure to intervene.

**Relevant Case Law**:

   a. *Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994): Officers and officials had ample time and opportunity to intervene during both arrests and the suppression of exculpatory evidence but failed to act.
   b. *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123 (2d Cir. 1997): The fabrication of evidence and suppression of material facts by prosecutors and officers are actionable constitutional violations that co-defendants had a duty to stop.
   c. *O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988): Even brief opportunities to prevent constitutional harm obligate officers and officials to intervene. The refusal to act makes them liable under § 1983.

254.    Defendants, including NYPD officers and RCDA employees, had numerous opportunities to intervene in clear constitutional violations against Plaintiff, including false arrests, suppression of exculpatory evidence, and non-enforcement of a valid FRO. Their failure to act directly enabled the continuation of these violations, causing Plaintiff significant harm. Plaintiff respectfully seeks relief for Defendants' failure to intervene under § 1983 and applicable law.

255.     As a result of the defendants' actions herein, Plaintiff Howard, was falsely arrested, falsely imprisoned, and maliciously prosecuted for crimes he did not commit.

256.     That as a result of the aforementioned false arrest/false imprisonment and malicious prosecution, excessive force, battery, assault, and violent beating, plaintiff Howard, sustained at the hands of the defendants herein, was caused to suffer and continues to experience physical pain, emotional distress, anxiety, depression, humiliation and fear.

257.     As a direct and proximate result of the acts of the defendants herein, Mr. Howard was caused to be falsely arrested, maliciously prosecuted, caused to sustain mental suffering, anguish, psychological and emotional distress, loss of wages, loss of reputation, suffer embarrassment and humiliation, defamation of character, loss of properties and deprivation of his physical liberty, deprivation of his constitutional and civil rights under the United States and New York State Constitutions.

258.     That because of the preceding Plaintiff Howard, was damaged in the amount of Five Million ($5,000,000.00) Dollars, plus costs, disbursements, attorney's fees, and interest.

## PRAYER FOR RELIEF AND JURY DEMAND

**WHEREFORE,** Plaintiff Clayton Howard respectfully requests that this Court grant the following relief against Defendants:

**Compensatory Damages**:
a)  Award Plaintiff compensatory damages in an amount to be determined at trial for economic losses, emotional distress, reputational harm, and other injuries sustained as a result of Defendants' actions, including but not limited to:
   a.  Loss of business contracts and income totaling over $375,000.
   b.  Costs associated with defending against baseless legal actions.
   c.  Expenses incurred due to Defendants' refusal to enforce the Final Restraining Order (FRO).

**Punitive Damages**:
a)  Award Plaintiff punitive damages in an amount sufficient to deter Defendants and similarly situated parties from engaging in such willful and malicious misconduct in the future.

**Declaratory Relief**:
a)  Issue a declaratory judgment that Defendants' actions, including their failure to enforce the FRO, false arrests, suppression of exculpatory evidence, and discriminatory treatment, violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments and New York State law.

**Injunctive Relief**:
a)  Enjoin the City of New York, the NYPD, and the Richmond County District Attorney's Office (RCDA) from continuing unconstitutional practices, including but not limited to:
b)  The refusal to enforce federally recognized protective orders.
c)  The suppression of exculpatory evidence.

    d)  Discriminatory treatment of male domestic violence victims.

**Policy Reforms**:

    a)  Require the City of New York to implement mandatory training for NYPD officers and RCDA employees on:

        a.  The enforcement of protective orders under the Violence Against Women Act (VAWA) and New York State Family Court Act §§ 842–844.

        b.  The handling of domestic violence cases with gender-neutral policies and practices.

        c.  The preservation and handling of complaints and evidence filed by individuals seeking police assistance.

**Attorneys' Fees and Costs**:

    a)  Award Plaintiff reasonable attorneys' fees and costs incurred in pursuing this action pursuant to 42 U.S.C. § 1988 and other applicable laws.

**Interest on Damages**:

    a)  Award Plaintiff pre- and post-judgment interest as allowed by law.

**Other Relief**:

    a)  Grant such other and further relief as this Court deems just and proper under the circumstances.

    b)  Together with such other further relief, including, according to 42 U.S.C. Section 1988, costs, disbursements, reasonable attorney's fees, and punitive damages in an amount the Court may deem just and proper.

**Jury Demand**:

    a)  Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law.

Dated: November 29, 2024

By: __/s/ Tyrone A. Blackburn, Esq._____

Tyrone A. Blackburn, Esq.

## DESIGNATION OF TRIAL COUNSEL

In accordance with R. 4:25-4, Plaintiff [s] hereby designates Tyrone A. Blackburn as trial counsel in this action.

Dated: November 29, 2024

By: __/s/ Tyrone A. Blackburn, Esq._____

Tyrone A. Blackburn, Esq.

### RULE 4:5-1 CERTIFICATION

I certify that to the best of my knowledge, information, and belief, the matter in controversy is not the subject of any other pending or contemplated court actions or arbitration proceedings. I further certify that to the best of my knowledge, information, and belief, I am unaware of any non-parties who should join the action. I certify that the preceding statements I made are true. I am aware that if any of the preceding statements I made are willfully false, I am subject to punishment.

Dated: November 29, 2024

By: ___/s/ Tyrone A. Blackburn, Esq._____

Tyrone A. Blackburn, Esq.


### RULE 1:38-7(b) CERTIFICATION

I certify that confidential personal identifiers have been redacted from the documents now submitted to the Court and will be redacted from all documents submitted to the Court in the future in accordance with R. 1:38-7(b).

Dated: November 29, 2024

By: ___/s/ Tyrone A. Blackburn, Esq._____

Tyrone A. Blackburn, Esq.

### VERIFICATION

Tyrone A. Blackburn, Esq., of full age, certifies as follows:
1. I am Counsel for Plaintiff in this matter.
2. I am the person who submitted the records requests on behalf of the Plaintiff that are the subject of this Verified Complaint.
3. All of the facts stated in the Verified Complaint are true to the best of my own personal knowledge.

I certify that the preceding statements I made are accurate to the best of my knowledge. I am aware that if any of the preceding statements I made are knowingly or willfully false, I am subject to punishment.

Dated: November 29, 2024

By: ___/s/ Tyrone A. Blackburn, Esq._____

Tyrone A. Blackburn, Esq.

## PRESERVATION NOTICE

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, change, direct, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter. Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain

relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, you must take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this letter's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: November 29, 2024

By: __/s/ Tyrone A. Blackburn, Esq._____

Tyrone A. Blackburn, Esq.