Clayton Howard
24 Orchard Street
Carteret, New Jersey 07008
(929)781-7791
itsclaytonhoward@gmail.com

September 25, 2025

TO: MURIEL GOODE-TRUFANT
    Corporation Counsel of the City of New York
    Jonathan Hutchinson
    Attorney for Defendant the City of New York
    100 Church Street, Rm. 3-173A
    New York, New York 10007
    (212) 356-2410
    jhutchin@law.nyc.gov

RE: Settlement Demand - Active Federal Litigation
Case: Howard v. City of New York, et al.
Court: United States District Court, Eastern District of New York
Case No.: 24-8316
Judge: The Honorable Lara Eskenski
Date Filed: 12/4/2024

## I. INTRODUCTION AND SETTLEMENT DEMAND

This letter constitutes a formal settlement demand in the above-captioned federal civil rights action currently pending before the United States District Court for the Eastern District of New York. As you are aware, Plaintiff Clayton Howard has filed a comprehensive amended civil rights complaint alleging violations of 42 U.S.C. § 1983, 1985, 1986, 1988, and municipal liability under Monell v. Department of Social Services against the City of New York and individual defendants.

**SETTLEMENT DEMAND: $800,000**

This demand is made in good faith to resolve this litigation without the substantial costs, time, and uncertainty of continued discovery, motion practice, and trial. This offer remains open until November 13, 2025.

## II. PROCEDURAL POSTURE
### A. Current Status of Litigation

Complaint Filed: 12/4/2024

Service Completed: 1/8/2025

Answer Due/Filed: 5/23/2025

Discovery Status: ACTIVE

Pending Motions: MOTION TO AMEND (Pursuant to Scheduling Order 10/3/2025)

Scheduled Conferences: NONE

B. Parties and Representation
   i. Plaintiff: Clayton Howard, represented by Self
   ii. Defendants:
      1. City of New York
      2. Michael Levy
      3. Joseph Quirk
      4. Matthew DePalma
      5. Thomas Caruso
      6. Johnathan Baez
      7. Quania Rios
      8. McKenzie Upshaw
      9. Courtney Chase
      10. Gabriella Giovianazzo
      11. Darren Albanese -
      12. Cara Cahill
      13. Samantha Oconnell
      14. Joseph Noto
      15. Marvin Valdez
      16. Michael Mullroy

III. CLAIMS ASSERTED IN THE COMPLAINT
   C. Federal Civil Rights Claims (42 U.S.C. § 1983)

<u>Count I - Fourth Amendment Violations (Against Individual Defendants)</u>
<u>False Arrest/Malicious Prosecution</u>

Claims against individual defendants for arrests without probable cause on May 16, 2023, and November 17, 2023, based on fabricated evidence and previously dismissed allegations, violating constitutional protections against unreasonable seizures.

Supporting Case Law:
   a. *Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) (probable cause as complete defense to false arrest);*
   b. *Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003) (malicious prosecution requirements);*

c. *Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) (suppression of evidence strengthens malicious prosecution claims).*
   d. *Broughton v. State of New York, 37 N.Y.2d 451 (1975): False arrest requires showing a lack of legal justification for confinement.*

Count II - Fourteenth Amendment Violations (Against Individual Defendants)
[Due Process / Equal Protection violations]
Due Process of Plaintiff as a Criminal Defendant

Claims for discriminatory enforcement against Plaintiff as an African American (*racial animus*) male domestic violence victim, suppression of exculpatory evidence, and denial of procedural safeguards, demonstrating systematic bias in law enforcement and prosecutorial practices.

*Supporting Case Law:*

   a. *Hayden v. County of Nassau, 180 F.3d 42 (2d Cir. 1999) (equal protection claims for disparate treatment);*
   b. *Zinermon v. Burch, 494 U.S. 113 (1990) (due process violations from suppression of evidence);*
   c. *County of Sacramento v. Lewis, 523 U.S. 833 (1998) (protection against arbitrary government conduct).*
   d. *Yick Wo v. Hopkins, 118 U.S. 356 (1886): Demonstrates how discriminatory application of neutral laws violates the Equal Protection Clause.*

Count III – Monell Municipal Liability (42 U.S.C. § 1983)

Claims against the City of New York for policies, customs, and failures to train that caused constitutional violations, including systematic refusal to enforce protective orders and inadequate supervision of officers and prosecutors.

Supporting Case Law*:*

   a. *Monell v. Department of Social Services, 436 U.S. 658 (1978) (municipal liability for policies and customs);*
   b. *Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992) (failure to train liability);*
   c. *Floyd v. City of New York, 959 F. Supp. 2d 540 (S.D.N.Y. 2013) (municipal liability for widespread unconstitutional practices).*
   d. *In Corvetti v. Town of Lake Pleasant, 227 A.D.2d 821, the court held that a municipality could not be sued under 42 USCS § 1983 on a respondeat superior theory but could be held liable if a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law. The court emphasized that discriminatory practices must be shown to be part of an established policy or custom to hold the municipality liable*

e. *Olech v. Village of Willowbrook, 528 U.S. 562 (2000): Disparate treatment without rational basis constitutes a violation of the Equal Protection Clause.*
   f. *Federal DOJ Investigation (2022): The Department of Justice (DOJ) launched an investigation into the NYPD's Special Victims Division (SVD) for systemic failures in handling gender-based crimes, citing inadequate training and biased enforcement.*
   g. *Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995): The City's failure to discipline officers who ignored Plaintiff's complaints reflects a tacit approval of constitutional violations, supporting municipal liability under Monell.*

Count IV - New York State Human Rights Law Violations (NYS Executive Law § 296)

Claims for discrimination based on gender and domestic violence victim status, including denial of equal access to public services and systematic exclusion from federally mandated domestic violence resources.

Supporting Case Law:

   a. *Lum v. Consolidated Edison Co. of N.Y., 209 A.D.3d 434 (1st Dep't 2022) (retaliation claims under NYSHRL);*
   b. *Herskowitz v. State of New York, 222 A.D.3d 587 (protected activity and causal connection requirements).*

Count VI - Abuse of Process (New York Common Law § 79-p)

Claims for discrimination based on gender and domestic violence victim status, including denial of equal access to public services and systematic exclusion from federally mandated domestic violence resources.

Supporting Case Law:

   a. *Lum v. Consolidated Edison Co. of N.Y., 209 A.D.3d 434 (1st Dep't 2022) (retaliation claims under NYSHRL);*
   b. *Herskowitz v. State of New York, 222 A.D.3d 587 (protected activity and causal connection requirements).*

Count V: Failure to Intervene (42 U.S.C. § 1986)

Claims against all defendants for failing to prevent constitutional violations when they had knowledge and opportunity to intervene during false arrests, evidence suppression, and systematic non-enforcement of protective orders.

Supporting Case Law:

   a. *Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) (duty to intervene when observing constitutional violations);*

b. *O'Neill v. Krzeminski, 839 F.2d 9 (2d Cir. 1988) (liability for failure to intervene in constitutional violations).*

## COUNT VI: Intentional Infliction of Emotional Distress (New York Common Law)

Claims for extreme and outrageous conduct including repeated false arrests, public humiliation, and enabling of a harassment campaign, causing severe emotional distress.

Supporting Case Law:

a. *Howell v. New York Post Co., 81 N.Y.2d 115 (1993) (standard for extreme and outrageous conduct);*
b. *Bender v. City of New York, 78 F.3d 787 (2d Cir. 1996) (IIED claims against law enforcement);*
c. *Murphy v. American Home Products Corp., 58 N.Y.2d 293 (1983) (intentional infliction of emotional distress elements).*

## COUNT VII: Violations of N.Y. Civil Rights Law § 79-p

Claims for interference with legal remedies through refusal to enforce protective orders, deletion of complaints, and suppression of evidence, obstructing Plaintiff's access to justice.

Supporting Case Law:

a. *Hurrell-Harring v. State of New York, 15 N.Y.3d 8 (2010) (systematic failures to ensure access to legal remedies);*
b. *Brown v. State of New York, 89 N.Y.2d 172 (1996) (governmental obstruction of legal processes violates civil rights).*

## COUNT VIII: Abuse of Process (New York Common Law)

Claims for using legal processes for improper purposes, including arrests to retaliate against protective order victory and deletion of complaints to shield the offender from accountability.

Supporting Case Law:

a. *Curiano v. Suozzi, 63 N.Y.2d 113 (1984) (abuse of process with ulterior purpose);*
b. *Place v. Ciccotelli, 121 A.D.3d 1378 (3d Dep't 2014) (harm from abuse of process and circumstantial evidence of ulterior motives).*

## COUNT IX: Conspiracy to Deprive Civil Rights (42 U.S.C. § 1985)

Claims for coordinated effort among NYPD and RCDA defendants to systematically deprive Plaintiff of constitutional rights through fabricated prosecutions and discriminatory enforcement practices.

Supporting Case Law:

a. *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (§ 1985 framework);
b. *Haddle v. Garrison*, 525 U.S. 121 (1998) (state officials conspiracy without class-based animus)Plaintiff discovery demonstrates Detectives, Officers, and Advocates were aware of the Plaintiff's protected status but failed to intervene, and maliciously prosecuted the Plaintiff;
c. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (conspiracy may be inferred from circumstantial evidence). Plaintiff's discovery establishes a clear pattern of knowledge amongst all Defendants regarding the actions of Defendant Evins. Pattern evidence supports continued victims' rights violations, due process failures, and violations of the Plaintiff's rights regarding equal protection
d. *Fisher v. Shamburg*, 624 F.2d 156 (1980) outlined the four elements required to state a claim under § 1985(3): (1) a conspiracy, (2) intent to deprive a person or class of persons of equal protection or privileges, (3) an act in furtherance of the conspiracy, and (4) resulting injury or deprivation of federally protected rights.
e. *Sines v. Kessler*, 324 F. Supp. 3d 765, Plaintiff claims satisfy the element of racially biased animus required. Officers, Detectives, and Prosecutors of Staten Island targeted the Plaintiff as an African American male over five (5) years, denying due process and equal protection as a victim or criminal defendant.
f. *Cervini v. Cisneros*, 593 F. Supp. 3d 530, the court noted that certain portions of § 1985(3) do not require racial animus, but claims involving equal protection violations do. The Plaintiff's FRO was unilaterally ignored by all agencies operating within Richmond County, seeking to deny the Plaintiff's protective rights totally.

DAMAGES SOUGHT IN THE COMPLAINT

As pleaded in the Complaint, Plaintiff seeks:

A. Compensatory Damages
1. Economic Damages:
a. Medical expenses (past and future): $57,800
b. Lost wages and earning capacity: $ 694,990
c. Other economic losses: $26,000 criminal defense fees

Subtotal Economic: $778,790

2. Non-Economic Damages:
a. Pain and suffering: $210,000
b. Mental anguish and emotional distress: $525,000
c. Loss of enjoyment of life: $205,000
d. Constitutional injury and dignitary harm: $430,000

Subtotal Non-Economic: $1,370,000

B. Punitive Damages (Against Individual Defendants)
a. Based on deliberate indifference and egregious misconduct: $400,000
C. Attorney's Fees and Costs
a. Pursuant to 42 U.S.C. § 1988: $26,000

**TOTAL DAMAGES SOUGHT: $800,000 (Settlement discount 50.5%)**

IV. LITIGATION STRENGTHS AND RISKS
   D. Plaintiff's Strong Position
   a. Well-Pleaded Claims: Complaint survives motion to dismiss standard
   b. Clear Constitutional Violations: Established precedent supports claims
   c. Strong Factual Record: [Evidence supporting claims - witness testimony, video, documents(Police reports, IAB complaints, emails)-Supporting Pattern Evidence]
   d. Municipal Liability: Multiple viable Monell theories pleaded
   e. Discovery Potential: Likely to uncover additional supporting evidence
   E. Defendants' Litigation Risks

Significant Verdict Exposure: Similar cases have resulted in substantial awards

   a. Attorney's Fees: Prevailing plaintiff entitled to fees under § 1988
   b. Discovery Burden: Extensive document production and depositions required
   c. Public Scrutiny: High-profile nature of civil rights litigation
   d. Qualified Immunity Limitations: Direct disregard of Detectives to NYPD procedure regarding DV complaints. Fraud by Officer Quirk based on probable cause fabrication. U audio evidence the RCDA was aware of the Plaintiff's protected status: ongoing domestic violence and civil rights violations.
   e. Pattern Evidence: Discovery may reveal additional constitutional violations
   F. Anticipated Defense Challenges
   1. While Defendants may assert qualified immunity/statute of limitations/probable cause, these defenses face significant challenges:
      i. Det. Quirk's use of the 123rd Precinct, 3/18/2022 complaint filed by Francyna Evins from location 15 Tulip Cir, which is within the jurisdiction of the 123rd Precinct, and was previously investigated and declined to be charged by Det. Koval.
      ii. Extensive Domestic Violence reports history between the Plaintiff and Ms. Evins to include documents supporting awareness that Francyna Evins faced criminal burglary allegations in NJ, and the Plaintiff was the named victim.
      iii. IAB investigation confirms the Plaintiff attempted to report valid misconduct of the named defendant Francyna Evins supported by discovery.
      iv. The remaining allegations of May 16, 2023, complaint of Det Quirk and supporting documentation explaining why:
         i. Allegations that were not charged within the 123rd precinct were used within the 120th Precinct to create the May 16, 2023, complaint,

ii. What probable cause supported the transfer of complaints outside the jurisdiction of occurrence for use within that of the 120th Precinct?
iii. Why he disregarded the domestic violence restraining order issued against Ms. Evins in favor of detaining the Plaintiff, with no support of the alleged phone call, and despite the allegations of falsely reporting abuse occurring within the State of New Jersey, where they had been recently dismissed after trial.
v. Supervisory Approvals and what substantiated the approval by Supervisors for the transfer of misdemeanor complaints into the 120th Precinct to be used to detain the Plaintiff when they occurred elsewhere with jurisdiction.
vi. Detective DePalm's direct knowledge two (2) weeks prior to the Plaintiff 11/17/2023 detention that the previous charges of Ms. Evins had been dismissed and instantly sealed.
vii. Detective DePalma's direct disregard for ADA Gabrielle Giovinazzio's directive not to detain the Plaintiff 11/16/2023
viii. McKenzie Upshaw falsely informing the Plaintiff that his protective order, registered within Richmond County, Staten Island, and enforceable federally pursuant to the VAWA was invalid in Staten Island because it was from New Jersey.
ix. Gabrielle Giovinazzio disregarding exculpatory evidence supporting the Plaintiff as the victim of Francyna Evins.
x. Courtney Chase providing an explanation why, despite knowledge of the Plaintiff's victim status, which predated that of Ms. Evins, no advocate intervened on the Plaintiff's behalf as a trial-ordered victim.
xi. Darren Albanese, Gabrielle Giovinazzio, and RCDA employees conspired to deprive the Plaintiff of all due process and domestic violence services.
xii. Defendants RCDA failure to explain numerous declines to prosecute substantiated violations of Francyna Evins, while arresting the Plaintiff for unsupported baseless allegations.
xiii. Defendants RDCA, numerous victims' rights violations of the Plaintiff to include:
    i. The malicious prosecution initiated by Gwendolyn Carr
    ii. Why Mrs. Carr was not charged when the contact and payments between her and the Plaintiff were exposed,
    iii. The Gang Assault of the Plaintiff 6/13/2020
    iv. Why was no investigation was conducted after the Plaintiff named the additional attackers?
    v. The assault with a dangerous instrument of Jerimah Depass,
    vi. Why were those charges dismissed despite direct prior contact from Plaintiff counsel

xiv. Continued violations by the defendants of the Plaintiff's due process and equal protection by direct refusal to acknowledge and enforce the protective order against Francyna Evins.

V. DISCOVERY AND CASE DEVELOPMENT

G. Current Discovery Status

Interrogatives served upon Plaintiff and Defendant City of New York. Additional Defendants revealed through Defendant discovery and named within 1st Amended Complaint to be served and respond.

H. Anticipated Discovery

The following discovery is expected to strengthen Plaintiff's case:

1. Personnel files and disciplinary records of individual defendants
2. Training materials and policy manuals
3. Similar incident reports and complaints
4. Text messages between Defendants and Plaintiff
5. Body camera and surveillance footage
6. Certified copies of the original TPO of Francyna Evins filed in Essex County, New Jersey 6/13/2022, and the amended TPO filed 10/6/2022
7. the Dismissal order of both TPO and amended TPO.
8. Final Restraining Order AFV-07-3579-22, granted 12/1/2022 Howard v Evins.
9. Domestic Incident Reports filed within 120th and 123rd precincts.
10. Audio recordings of Police Officers, Detectives, Sgts and Lt's.
11. Certified Court transcripts of exculpatory evidence sent to defendants prior to both the May 16, 2023, arrest and the November 17, 2023, arrest.
12. Certified dismissal orders of false reporting allegations of Francyna Evins prior to the May 16, 2023, arrest.
13. Criminal Complaint Jerimah Depass: June 13, 2020, and July 8, 2021.
14. Medical records Clayton Howard 6/13/2020, assault, and July 8, 2021. Assault.
15. Police Complaint of Gwendolyn Carr.
16. Supporting exculpatory evidence establishing 3 months' communication between Gwen Carr and the Plaintiff that includes confirmation of payment received.
17. Cash app receipts of payments to Ms. Carr.
18. Expert witness testimony on constitutional violations and damages
19. Municipal policymaker depositions
20. Evidence supporting the personal relationships between Francyna Evins, Michael McMahon(DA), and Lt Victor Allen Brown (NYPD)

I. Timeline Considerations

a. Discovery Deadline: March 4, 2026

    b. Expert Witness Deadline: NOT SET
    c. Dispositive Motion Deadline: March 25, 2026
    d. Trial Date: NOT SET

## I. SETTLEMENT PROPOSAL

To resolve this litigation, Plaintiff proposes the following settlement terms:

A. Financial Terms

    a. Settlement Amount: $800,000
    b. Payment Schedule: One Payment within thirty (30) to sixty (60) days
    c. Attorney's Fees: $26,800

B. Additional Terms

    i. Dismissal with prejudice of all claims against all defendants
    ii. General release of related claims
    iii. Provisions to enforce the plaintiff's final restraining order and reinstate all rights as the protected party
    iv. An investigation by NYPD Staten Island into the stalking, harassment and continued FRO violations of Francyna Evins.
    v. Discipline for named defendants responsible for fraud and negligence regarding the rights of the plaintiff

C. Implementation

    a. Settlement agreement execution within 30 - 60 days
    b. Joint stipulation of dismissal filed with the Court
    c. Immediate assistance with NYC domestic violence resources

## II. ALTERNATIVE DISPUTE RESOLUTION

Plaintiff remains open to alternative dispute resolution methods, including:

    a. Court-sponsored mediation
    b. Private mediation with an agreed-upon mediator
    c. Settlement conference before the assigned Magistrate Judge
    d. [Other ADR options]

## III. CONCLUSION AND NEXT STEPS

This settlement demand represents a reasonable resolution that avoids the substantial risks and costs of continued litigation for all parties. The strength of Plaintiff's claims, combined with the significant exposure faced by Defendants, makes this a prudent opportunity to resolve the matter.

Given the current procedural posture and upcoming deadlines, we request your response by November 13, 2025. If this matter cannot be resolved, we will continue to prosecute this action vigorously through discovery, motion practice, and trial. We also reserve the right to increase this demand, which will include damages for the property lost through the malicious prosecution initiated by Gwendolyn Carr and prosecuted by the Defendants for over two (2) years. The additional settlement demand may also include losses incurred due to the injuries the Plaintiff sustained during the June 13, 2020, assault, which forced the Plaintiff to abandon agreed-upon Residential framing contracts he had recently begun with the reopening of construction as "Phase 2" of the Pandemic reopening of New York and New Jersey began. The inclusion is dependent upon the Plaintiff's ability to obtain Banking records, which have been requested. Therefore, the Plaintiff reserves the right to include those losses should a settlement not be reached.

We believe resolution at this stage serves the interests of all parties and look forward to your response. Please direct all settlement communications to the undersigned.

Respectfully submitted,

*Clayton Howard*
_____
Clayton Howard
Plaintiff
24 Orchard Street
Carteret, New Jersey
(929)781-7791
itsclaytonhoward@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Settlement Demand Letter was served upon all counsel of record via email on September 29, 2025.

Jonathan Hutchinson, Senior Counsel

Corporation Counsel of the City of New York

Email: jhutchin@law.nyc.gov

*Clayton Howard*
_____
Clayton Howard
Plaintiff
Pro Se

ATTACHMENTS:

- Supporting Document Index

- Damage Calculation Worksheet

- Opportunity Cost Analysis

- Supplemental Damages Analysis