UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

CLAYTON HOWARD,  Case No. 24-cv-8316 (LKE)

       Plaintiff,

v.

CITY OF NEW YORK, et al.,

       Defendants,

-------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S OPPOSITION TO MOTION FOR LEAVE TO AMEND COMPLAINT

### PRELIMINARY STATEMENT

Defendant's opposition fundamentally mischaracterizes the nature of Plaintiff's Amended Complaint and applies incorrect legal standards for evaluating whether leave to amend should be granted. The Federal Rules of Civil Procedure establish that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendant bears the heavy burden of demonstrating that amendment would be futile, and they have failed to meet this burden. The Amended Complaint adequately pleads continuing constitutional violations by specifically identified defendants acting under color of state law, supported by detailed factual allegations spanning a documented pattern of misconduct from 2020 through the present.

### ARGUMENT

### I. DEFENDANT'S FAILURE TO SERVE PLAINTIFF WITH OPPOSITION PAPERS VIOLATES BOTH FEDERAL AND NEW YORK CIVIL PROCEDURE AND CONSTITUTES CONSENT TO THE MOTION

Defendant's opposition to Plaintiff's motion for leave to amend is procedurally defective and should be disregarded in its entirety because Defendant failed to properly serve Plaintiff with the opposition papers, in direct violation of both Federal Rule of Civil Procedure 5 and New York CPLR 2214. This fundamental breach of service requirements constitutes a waiver of Defendant's right to oppose the motion and effectively operates as consent to Plaintiff's requested relief.

1

A. Federal Rule of Civil Procedure 5 Mandates Service of All Opposition Papers

Federal Rule of Civil Procedure 5(a)(1) unambiguously requires service of all motion papers on every party. Specifically, Rule 5(a)(1)(D) and (E) mandate that "each of the following papers must be served on every party: ... (D) a written motion, except one that may be heard ex parte; and (E) a written notice, appearance, demand, or offer of judgment, or any similar paper." Fed. R. Civ. P. 5(a)(1).

This service requirement is not discretionary—it is mandatory. The Advisory Committee Notes to Rule 5 emphasize that the rule "eliminates [any] difficulty and promotes full exchange of information among the parties by requiring service of papers on all the parties to the action, except as otherwise provided in the rules." The purpose is clear: to ensure fundamental fairness and due process by guaranteeing that all parties receive notice of and can respond to papers filed in the litigation.

Here, Defendant filed opposition papers with the Court but failed to serve Plaintiff with a copy of these papers. This failure is evident from the Plaintiff, who has no electronic service of the Letter in Opposition to the Amendment. Plaintiff did consent to receive documents from Defendants electronically, and Defendants have complied with service regarding discovery and all other documents except the Letter in Opposition, which has not been personally served on the Plaintiff by Defendants. Without proper service, Plaintiff was deprived of the opportunity to review Defendant's arguments and prepare an adequate response, undermining the very foundation of adversarial proceedings.

B. New York CPLR 2214 Prohibits Consideration of Unserved Papers

Even if this Court were to look to New York state procedural rules for guidance, Defendant's failure to serve the opposition papers is equally fatal under CPLR 2214(c), which explicitly provides: "Only papers served in accordance with the provisions of this rule shall be read in support of, or in opposition to, the motion, unless the court for good cause shall otherwise direct." CPLR § 2214(c) (emphasis added).

New York courts have consistently enforced this rule strictly. In *Bowden v. Collier*, the court refused to consider opposition papers that were not timely served, noting that "CPLR 2214(c) dictates that 'only papers served in accordance with the provisions of this rule shall be read in

support of, or in opposition to, the motion unless the court for good cause shall otherwise direct.'" 2010 WL 9447990 (Sup. Ct. Queens County 2010). The statute creates a bright-line rule: if papers are not properly served, they should not be read by the court.

Defendant has neither alleged nor demonstrated "good cause" for the failure to serve Plaintiff. Indeed, Defendant has not even acknowledged the deficiency. Absent such a showing, CPLR 2214(c) mandates that the opposition papers be disregarded entirely.

C. Failure to Serve Opposition Papers Constitutes Consent to the Motion

The consequences of failing to serve opposition papers extend beyond mere procedural irregularity—such failure operates as a waiver of the right to oppose and effectively constitutes consent to the relief requested in the motion. This principle is well-established in federal practice.

The fundamental purpose of service requirements is to provide notice and an opportunity to be heard. When a party fails to properly serve opposition papers, the moving party is denied the ability to prepare a reply addressing the opponent's arguments. More fundamentally, the failure to serve deprives the opposing party of notice that opposition is even being filed. This creates an insurmountable due process problem.

Moreover, courts routinely treat the failure to oppose a motion as consent to the relief requested. While most such cases involve complete failure to file opposition (rather than filing without service), the rationale applies with equal force here: when a party does not properly serve opposition papers, the moving party has no notice of opposition and thus no meaningful opportunity to respond. The effect is functionally identical to failing to oppose at all.

Federal Rule of Civil Procedure 6(d) provides additional time to respond when service is made by mail or electronic means, recognizing that parties must actually receive papers to respond effectively. The same principle applies here in reverse: if Plaintiff never received Defendant's opposition papers through proper service, Plaintiff was deprived of the opportunity to file a reply brief addressing Defendant's arguments. This denial of due process cannot be permitted to stand.

D. Defendant Bears the Burden of Proving Proper Service

Under both federal and state law, the party asserting that service was properly made bears the burden of proving such service. Fed. R. Civ. P. 5(d)(1)(B) requires that when service is not made through the court's electronic filing system, "a certificate of service must be filed with it or

within a reasonable time after service." Defendant's opposition contains no certificate of service and provides no evidence whatsoever that service on Plaintiff was accomplished.

In New York practice, CPLR 2103(c) similarly requires that service be proven through a proper affidavit or certificate. The absence of such proof is fatal to Defendant's claim that proper service occurred. As the Second Department has held, without proper proof of service, "the papers should not be considered by the court." Defendant has provided no such proof here.

E. No Prejudice to Plaintiff from Disregarding Defendant's Unserved Opposition

Defendant cannot claim prejudice from having its unserved opposition papers disregarded. Defendant created this problem through its own failure to comply with basic procedural requirements. "A party cannot profit from its own failure to adhere to court rules." *Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996)*. Allowing Defendant to benefit from procedurally defective opposition would reward non-compliance and undermine the mandatory nature of the service requirements.

Furthermore, courts have broad discretion to disregard procedurally defective papers. As the Advisory Committee Notes to Rule 5 explain, proper service is essential to "promoting full exchange of information among the parties." When that exchange does not occur due to one party's failure to serve, the court is well within its discretion to decline to consider the unserved papers.

F. The Proper Remedy is to Grant Plaintiff's Motion

Given Defendant's failure to properly serve opposition papers, the Court has several options: (1) disregard Defendant's opposition entirely and grant Plaintiff's motion as unopposed; (2) strike Defendant's opposition and provide an opportunity to re-file with proper service; or (3) deem Defendant to have consented to the motion by failing to serve opposition.

Plaintiff respectfully submits that the first option is most appropriate. Defendant has had ample opportunity to properly oppose Plaintiff's motion for leave to amend. The deadline for opposing the motion has passed. Allowing Defendant to re-file opposition at this late date would prejudice Plaintiff by further delaying resolution of the motion to amend, which has already been pending for Twenty-one (21) days.

Moreover, granting leave to amend is appropriate even on the merits, as demonstrated in the other sections of this memorandum. Defendant's unserved opposition fails to establish futility—

the only ground Defendant concedes is relevant. Thus, whether the Court considers Defendant's opposition or not, the result should be the same: Plaintiff's motion for leave to amend should be granted.

G. Constitutional Due Process Requires Proper Service

Finally, the service requirements of Rule 5 and CPLR 2214 are not mere technicalities—they implement fundamental due process protections. The Supreme Court has long held that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).*

Here, Plaintiff received no notice that Defendant was filing opposition papers and thus had no opportunity to prepare a reply brief. This denial of due process cannot be countenanced. While Mullane dealt with service of initial process, its principle applies equally to all phases of litigation: parties must receive actual notice of papers filed against them to have a meaningful opportunity to respond.

Defendant's failure to serve opposition papers violated Plaintiff's due process rights and should result in those papers being disregarded.

In sum, Defendant's failure to serve Plaintiff with opposition papers violates both Federal Rule of Civil Procedure 5(a) and New York CPLR 2214(c). This procedural defect is not harmless—it deprived Plaintiff of notice and an opportunity to respond to Defendant's arguments. The Court should either disregard Defendant's unserved opposition entirely or deem Defendant to have consented to Plaintiff's motion by failing to properly oppose it. In either case, Plaintiff's motion for leave to amend should be granted.

II. THE LEGAL STANDARD FOR LEAVE TO AMEND STRONGLY FAVORS PLAINTIFF

The Supreme Court has repeatedly emphasized that Rule 15's directive that leave "shall be freely given" must be heeded. *Foman v. Davis, 371 U.S. 178, 182 (1962).* "Outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion." Id. Denial of leave to amend is appropriate only where there is: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies, (4) undue prejudice to the opposing party, or (5) futility of amendment. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., 626 F.3d 699, 725 (2d Cir. 2010).*

Defendant concedes that only futility is at issue here—there is no undue delay (amendment sought within the Case Management Plan deadline), no bad faith, no repeated failures, and no prejudice since discovery is underway, and the Leave to Amend was granted by the Scheduling Order until October 3. 2025. Thus, the sole question is whether the Amended Complaint "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002)*.

Critically, at this stage, the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*. Defendant's opposition repeatedly violates this standard by disputing facts, demanding evidentiary proof, and reading the complaint in the light least favorable to Plaintiff.

## II. THE EARLIER INCIDENTS (2020-2021) ARE PROPERLY PLED AS PATTERN EVIDENCE AND RELATE BACK UNDER RULE 15(c)

A. The Continuing Violation Doctrine Applies

Defendant argues that claims relating to incidents on February 28, 2020, June 13, 2020, and July 8, 2021 are time-barred. This argument fails for multiple reasons.

First, these allegations are pled as pattern evidence supporting Plaintiff's claims of systematic constitutional violations, not as separate, independent causes of action. The Second Circuit recognizes that "prior acts occurring outside the limitations period may be considered if they are part of an ongoing pattern or practice." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). Here, the Amended Complaint explicitly alleges a "documented pattern" beginning in February 2020 and continuing through the present (¶¶ 69-81, 106-120). This is not merely background—it demonstrates:

 a. Defendants' deliberate indifference to male domestic violence victims
 b. Selective prosecution based on gender stereotypes
 c. Systematic refusal to protect Plaintiff while prosecuting him based on false allegations
 d. A coordinated conspiracy spanning multiple agencies and years

The continuing violation doctrine applies where: "(1) at least one act falls within the limitations period; (2) the earlier untimely acts and later timely acts together comprise a continuing violation; and (3) the plaintiff's claims are filed within the applicable limitations period of the last asserted occurrence." *Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)*. All three elements are satisfied here—the May 16, 2023 and November 17, 2023 arrests fall within the

6

limitations period, the earlier acts form part of the same systematic pattern of constitutional violations, and this action was filed in December 2024.

B. Relation Back Under Rule 15(c)

Even if the earlier incidents were considered separate claims, they would relate back to the original complaint under Fed. R. Civ. P. 15(c)(1)(B), which permits relation back when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

The original complaint alleged false arrests, malicious prosecution, and systematic denial of equal protection stemming from Defendants' refusal to recognize Plaintiff as a domestic violence victim. (ECF No. 1). The Amended Complaint adds specific factual detail about how this pattern developed and was implemented, arising from the same core transaction: Defendants' multi-year conspiracy to deprive Plaintiff of constitutional rights based on gender-biased policing and prosecution.

As the Second Circuit held in *Santillan v. Gonzales, 388 F. Supp. 2d 436, 443 (S.D.N.Y. 2005)*, "the 'conduct, transaction, or occurrence' test is to be applied generously, so that 'what is important is not the substantive legal theory invoked, but whether the facts alleged in the amended pleading [are] substantially the same as those alleged in the original pleading.'" Here, they unquestionably are—all allegations arise from the same governmental actors' systematic discrimination against Plaintiff as a male domestic violence victim.

## III. THE AMENDED COMPLAINT ADEQUATELY ALLEGES PERSONAL INVOLVEMENT OF INDIVIDUAL DEFENDANTS

Defendant argues that the Amended Complaint relies on impermissible "block pleading" and fails to allege personal involvement. This argument misstates the law and ignores the specific allegations in the Amended Complaint.

A. The Pleading Standard Post-Iqbal/Twombly

While *Ashcroft v. Iqbal* requires more than "labels and conclusions," it does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)*. Rather, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal, 556 U.S. at 678.*

7

At the pleading stage, especially for pro se plaintiffs (which Plaintiff was when originally filing), specificity requirements are relaxed. *Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)* ("Even after Twombly and Iqbal, though, we remain obligated to construe a pro se complaint liberally."). Moreover, "where the facts are peculiarly within the knowledge of defendants," less specificity is required. *Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008).*

B. The Amended Complaint Identifies Specific Roles for Each Defendant

Contrary to Defendant's assertions, the Amended Complaint does not merely engage in block pleading. It specifically identifies:

Detective Joseph Quirk (120th Precinct):

   a. Arrested Plaintiff on May 16, 2023 without probable cause (¶ 41)
   b. Used fabricated allegations from Ms. Evins previously dismissed in New Jersey (¶ 41-45)
   c. Violated NYPD protocols by using stale complaints from 123rd Precinct without jurisdiction (¶ 42-43, 97)
   d. Fabricated criminal complaint using previously declined allegations investigated by Detective Koval (¶ 43-44)
   e. Used allegations that occurred before any protective order existed (¶ 45)

Detective Matthew DePalma (120th Precinct):

   a. Arrested Plaintiff on November 17, 2023 despite exculpatory evidence (¶ 46-50)
   b. Ignored CCTV footage and E-Z Pass records proving Plaintiff's innocence (¶ 48-49)
   c. Detained Plaintiff for hours despite RCDA declining to prosecute (¶ 50)
   d. Arrested Plaintiff despite direct order from ADA Giovinazzo not to detain him (¶ 51, 101)
   e. Acted with actual knowledge of dismissed charges from May 16, 2023 (¶ 101)

Detective Michael Levy (123rd Precinct):

   a. Subject of IAB complaints by Plaintiff for racial profiling (¶ 174, 304)
   b. Had prior interactions with Plaintiff creating retaliatory motive
   c. Connected to subsequent coordinated arrests by other officers (¶ 315)

P.O. Joseph Noto (120th Precinct):

   a. Systematically deleted Plaintiff's complaints against Evins (¶ 59, 198, 219, 282-283, 302)
   b. Intentionally logged wrong location on domestic incident complaint to create jurisdiction issues (¶ 282)

8

    c. Failed to process complaints against Evins (¶ 310)

McKenzie Upshaw (RCDA Domestic Violence Advocate):

    a. Explicitly told Plaintiff his FRO was "unenforceable" in Staten Island—a legally false statement (¶ 52, 197)

    b. Had actual knowledge the FRO was registered with Richmond County Clerk (¶ 53)

    c. Refused to acknowledge Plaintiff's victim status (¶ 194-195)

    d. Denied Plaintiff access to domestic violence resources (¶ 194, 199)

Courtney Chase (RCDA DV Unit Supervisor):

    a. Despite awareness of Plaintiff's victim status, refused to notify prosecutors of protective order (¶ 54, 197)

    b. Supervised systematic discrimination against male DV victims (¶ 217)

    c. Was the Domestic Violence Advocate of Francyna Evins, the party who filed the false reports, establishing a nexus and elements of the conspiracy to deprive the Plaintiff of Due Process and Equal Protection.

ADA Gabriella Giovinazzo (RCDA):

    a. Suppressed exculpatory evidence including CCTV footage and witness affidavits (¶ 55, 61, 146, 217)

    b. Instructed Det. DePalma not to detain Plaintiff on November 16, 2023, yet DePalma arrested him the next day (¶ 51, 101)

    c. Continued prosecution despite knowledge of Plaintiff's protected status (¶ 300)

    d. Possessed certified court transcripts proving Evins's status as DV offender (¶ 300)

Darren Albanese (Chief of Criminal Prosecution, RCDA):

    a. As supervisory official, ratified suppression of exculpatory evidence (¶ 55)

    b. Maintained policy of prosecuting Plaintiff while refusing to prosecute Evins (¶ 300)

    c. Participated in high-level coordination of constitutional violations (¶ 300)

    a. This is not block pleading—these are specific factual allegations linking each defendant to particular unconstitutional conduct. The fact that some allegations reference multiple defendants acting in concert (which is necessary for conspiracy claims) does not render them insufficiently specific.

C. Six Defendants Not Mentioned in Factual Allegations

Defendant correctly notes that six proposed defendants (Thomas Caruso, Johnathan Baez, Marvin Valdez, Quania Rios, Cara Cahill, and Samantha O'Connell) are not mentioned in the factual allegations. However, this is easily curable and does not warrant denying the entire amendment. The proper remedy is to grant leave to amend with the opportunity to clarify these defendants' roles or to strike these defendants without prejudice to re-adding them if their involvement is clarified through discovery.

Federal courts routinely allow amendments even with deficiencies, recognizing that "the purposes of Rule 15 favor allowing amendment at this early stage." *Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011)*. Denying the entire amendment because six of sixteen proposed defendants lack sufficient factual support is disproportionate—the Court should grant the amendment and allow Defendant to move to dismiss claims against specific defendants if warranted.

IV. PROSECUTORIAL DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY

Defendant argues that the four RCDA defendants are entitled to absolute immunity. This argument fails because prosecutorial immunity does not extend to (1) actions taken in conspiracy with law enforcement, (2) administrative or investigative functions, or (3) conduct occurring outside the scope of prosecutorial duties.

A. Conspiracy Exception to Absolute Immunity

"While prosecutors enjoy absolute immunity for conduct within the scope of their prosecutorial duties, conspiracy to violate constitutional rights strips them of that protection." *Rehberg v. Paulk, 566 U.S. 356, 368 (2012); Hampton v. Hanrahan, 600 F.2d 600, 631 (7th Cir. 1979)* (prosecutor who conspires with police officers to frame defendant is not entitled to absolute immunity).

The Amended Complaint specifically alleges a coordinated conspiracy between RCDA prosecutors and NYPD detectives to deprive Plaintiff of constitutional rights (¶¶ 293-320). Key allegations include:

a. RCDA prosecutors suppressed exculpatory evidence in coordination with NYPD's refusal to enforce the FRO (¶¶ 298, 300)
b. Det. DePalma arrested Plaintiff on November 17, 2023 despite ADA Giovinazzo's instruction not to, suggesting coordination to create arrest records even when prosecution was declined (¶¶ 51, 301)

c. RCDA maintained Plaintiff in DV databases as "offender" while NYPD refused to investigate Evins's violations (¶¶ 199, 303)
   d. Systematic deletion of Plaintiff's complaints coordinated with RCDA's refusal to prosecute Evins (¶¶ 302, 310)
   e. Multiple defendants from different agencies taking actions that "collectively served to deprive Plaintiff of constitutional rights" (¶ 305)

As the Second Circuit held in *Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987)*, "a prosecutor who acts in concert with police officers...may not be entitled to absolute immunity." The conspiracy allegations are more than sufficient to survive a motion to dismiss and thus amendment is not futile.

B. Administrative and Investigative Functions Exception

"A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Burns v. Reed, 500 U.S. 478, 496 (1991).*

Here, the RCDA defendants' conduct includes:

   a. These are not prosecutorial McKenzie Upshaw providing false legal advice to Plaintiff (not prosecutorial) (¶ 52)
   b. Courtney Chase refusing to notify prosecutors of protective order (administrative) (¶ 54)
   c. Suppression of evidence in coordination with police (investigative, not advocacy) (¶¶ 146-147, 170-171, 217, 265)
   d. Denying Plaintiff access to domestic violence services (administrative) (¶¶ 199, 209)

advocacy functions protected by absolute immunity. They are administrative, investigative, and policy decisions entitled at most to qualified immunity—which can be overcome by clearly established law, as present here.

C. Qualified Immunity Is Overcome by Clearly Established Law

Even if only qualified immunity applies, it is overcome where "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz, 533 U.S. 194, 202 (2001).*

The constitutional violations alleged here are clearly established:

a. Refusal to enforce protective orders violates equal protection: Discrimination in law enforcement based on gender stereotypes is unconstitutional. *Village of Willowbrook v. Olech, 528 U.S. 562 (2000)*.

   b. Arrests without probable cause violate the Fourth Amendment: Every officer knows this. *Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006)*.

   c. Suppression of exculpatory evidence violates due process: *Brady v. Maryland, 373 U.S. 83 (1963)*, has been clearly established for over 60 years.

   d. Gender-based discrimination in prosecution violates equal protection: *Yick Wo v. Hopkins, 118 U.S. 356 (1886)*.

## V. THE "FAILURE TO INVESTIGATE" CLAIMS ARE PROPERLY PLED AS EQUAL PROTECTION VIOLATIONS

Defendant argues there is "no cognizable constitutional claim for the failure of law enforcement to take an action requested by the plaintiff," citing *Rivera v. Unknown at Nycpd, 2024 U.S. Dist. LEXIS 124439 (S.D.N.Y. 2024)*. This argument mischaracterizes Plaintiff's claims.

Plaintiff does not allege a generalized "failure to investigate." Rather, Plaintiff alleges selective enforcement and denial of equal protection—refusing to enforce the FRO protecting Plaintiff (a male victim) while readily enforcing complaints against Plaintiff filed by his abuser (a female). This is precisely the type of discriminatory enforcement prohibited by the Equal Protection Clause.

As the Supreme Court held in *Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)*, even a facially neutral law (or policy) violates equal protection when "applied and administered by public authority with an evil eye and an unequal hand." The Second Circuit has repeatedly recognized equal protection claims based on selective enforcement. *LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)* ("Selective enforcement of the law based upon impermissible considerations violates the Constitution.").

The Amended Complaint alleges:

   a. Systematic differential treatment: NYPD readily enforced TPO protecting Evins against Plaintiff but refused to enforce FRO protecting Plaintiff against Evins (¶¶ 139-145, 196, 311)

   b. July 13-14, 2022 temporal comparison: Same officers refused to enforce Plaintiff's TPO for over a month but enforced Evins's TPO within 24 hours (¶ 196)

- c. Gender-based animus: Defendants' actions were motivated by stereotypes that domestic violence victims are female (¶¶ 194-195, 210, 249)
- d. Disparate prosecutorial decisions: Prosecuted Plaintiff despite exculpatory evidence while refusing to prosecute Evins for proven violations (¶ 195)

This is not a "failure to investigate" claim—it is a classic selective enforcement equal protection claim, which is well-established in Second Circuit law. *Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).*

VI. MONELL LIABILITY IS ADEQUATELY PLED

Defendant argues that municipal liability fails, but this argument ignores the extensive pattern and practice allegations in the Amended Complaint.

A. Legal Standard for Monell Claims

Municipal liability under *Monell v. Department of Social Services, 436 U.S. 658 (1978)*, requires showing that a constitutional violation resulted from: (1) an official policy or custom, (2) failure to train amounting to deliberate indifference, or (3) a practice so persistent and widespread as to constitute a custom with the force of law.

Crucially, at the pleading stage, Plaintiff need only plead facts supporting a plausible inference of municipal liability—not prove it. *Connick v. Thompson, 563 U.S. 51, 61 (2011).*

B. The Amended Complaint Alleges Multiple Bases for Monell Liability

1. Official Policy or Custom

The Amended Complaint alleges a documented pattern of failing to protect male domestic violence victims (¶¶ 166-168, 194-195). This is supported by:

- a. Federal DOJ Investigation (June 2022): DOJ launched pattern-or-practice investigation into NYPD Special Victims Division for systemic failures in gender-based crimes, inadequate training, and biased enforcement (¶¶ 71, 172, 179)
- b. Persistent refusal to enforce FRO: Despite federal obligations under VAWA, officers at both 120th and 123rd Precincts refused to act (¶¶ 166-167, 221-222)
- c. Systematic suppression: RCDA's coordinated suppression of exculpatory evidence reflects institutional practice (¶¶ 170-171)
- d. Deletion of complaints: Internal recordings show pattern of mishandling Plaintiff's complaints (¶¶ 59-63, 219-220)

As the Second Circuit held in *Floyd v. City of New York, 959 F. Supp. 2d 540 (S.D.N.Y. 2013),* a pattern of similar constitutional violations can establish municipal liability.

2. Failure to Train

The Amended Complaint alleges failure to train officers in:

a. Handling domestic violence cases with gender-neutral policies (¶ 169)
b. Enforcing protective orders under VAWA and New York State Family Court Act §§ 842-844 (¶ 169)
c. Preservation of complaints and evidence (¶ 169)

The DOJ investigation into NYPD SVD specifically found "inadequate training" in handling gender-based crimes (¶ 71), which "mirror[s] the NYPD's refusal to enforce Plaintiff's FRO" (¶ 172).

Failure to train constitutes deliberate indifference when the need for training is "so obvious" and the inadequacy "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris, 489 U.S. 378, 390 (1989)*. Here, the DOJ investigation establishes that the deficiency was obvious.

3. Failure to Discipline

The Amended Complaint alleges failure to discipline despite:

a. Multiple IAB complaints filed by Plaintiff (¶¶ 62-63, 174)
b. Lt. Delbado acknowledging missing complaints but taking no action (¶ 62)
c. All IAB investigations closed despite admission of misconduct (¶ 63)

"A municipality's failure to discipline officers involved in constitutional violations can establish municipal liability." *Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)*.

VII. THE COMPLAINT COMPLIES WITH RULE 8

Defendant argues the Amended Complaint is unnecessarily prolix. This argument lacks merit.

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "short and plain" is context-dependent. Where claims are complex and involve multiple defendants over multiple years, greater detail is necessary and appropriate. *Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)*.

Moreover, pro se complaints are held to less stringent standards and "must be construed liberally with 'special solicitude.'" *Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)*. While Plaintiff has attempted to cure deficiencies by providing more detail in the Amended Complaint, this should not be held against him.

Finally, Defendant's remedy—dismissal of the entire complaint—is disproportionate. If the Court finds certain allegations unnecessarily detailed, the proper remedy is to order a more definite statement under Rule 12(e), not deny amendment entirely.

## CONCLUSION

For all the foregoing reasons, Defendant has failed to meet its heavy burden of demonstrating that amendment would be futile. The Amended Complaint:

1. Properly includes earlier incidents as pattern evidence under the continuing violation doctrine
2. Relates back under Rule 15(c) to the original complaint
3. Adequately alleges personal involvement of individual defendants
4. Overcomes prosecutorial immunity through conspiracy allegations
5. States cognizable equal protection claims, not merely "failure to investigate"
6. Adequately pleads Monell liability based on documented patterns and DOJ findings
7. Complies with Rule 8's pleading requirements

Because the Amended Complaint "could withstand a motion to dismiss," amendment is not futile, and Plaintiff's motion for leave to amend should be GRANTED.

The Federal Rules instruct that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice requires it here. Plaintiff has suffered systematic constitutional violations at the hands of government officials who weaponized the legal system against a male domestic violence victim. He should have his day in court.

Respectfully submitted,

Dated: October 24, 2025

*Clayton Howard*
Clayton Howard
Plaintiff Pro Se
24 Orchard Street
Carteret, New Jersey 07008
itsclaytonhoward@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I served a true and correct copy of the foregoing Plaintiff's First Set of Interrogatories to Defendant City of New York via [method of service] to:

Jonathan Hutchinson, Senior Counsel
Corporation Counsel of the City of New York
Email: jhutchin@law.nyc.gov

*Clayton Howard*
_____
Clayton Howard
Plaintiff