*** Filed ***
11:06 AM, 07 Dec, 2025
U.S.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

CLAYTON HOWARD,

                *Plaintiff*,

   v.

CITY OF NEW YORK, et al.,

                *Defendants*.

CIVIL ACTION: 24-8316

---

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT CITY OF NEW YORK'S OPPOSITION TO
PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND COMPLAINT

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT................................................................1

II.   STATEMENT OF FACTS................................................................3

III.  LEGAL STANDARD................................................................8

    A. Liberal Amendment Standard Controls Under FRCP 15(a)(2)...........................8

    B. Enhanced Deference for Pro Se Civil Rights Litigants.......................................9

    C. Futility Requires Clear Legal Insufficiency.........................................................10

    D. The Burden Rests on the Party Opposing Amendment......................................11

IV.  ARGUMENT................................................................12

    A. Amendment Is Not Futile: Personal Involvement Is Adequately

    Alleged................................................................12

    1. The Flexible Personal Involvement Standard....................................................12

    2. Plaintiff Alleges Specific Conduct by Individual Defendants.........................13

    3. Discovery Will Reveal Additional Details........................................................18

    4. Supervisory Liability Is Adequately Pleaded....................................................19

    B. Probable Cause Did Not Exist—Defendant's Argument Fails...........................21

1. The Panetta Exception Applies: Circumstances Raised Doubt....................21

2. Complainant Was Adjudicated Offender Under Active FRO............................22

3. Stale, Previously-Declined Complaints Defeat Probable Cause..................23

4. Violation of Direct Prosecutorial Order Negates Probable
Cause........................................................................................................24

5. Readily Available Exculpatory Evidence (November 17, 2023).................25

C. This Is Not a "Failure to Investigate" Case...........................................26

1. Affirmative Constitutional Violations Are Alleged............................................26

2. Active Evidence Fabrication and Destruction.....................................................27

3. Discriminatory Enforcement, Not Mere Non-Enforcement.............................28

D. Equal Protection Claims Survive Any Futility Challenge.....................................29

1. Direct Comparative Evidence of Gender Discrimination................................29

2. Systematic Pattern Across Five Years (2020-2025)...........................................31

3. Official Statements Revealing Gender Bias.........................................................33

4. DOJ Investigation Corroborates Systemic Discrimination............................34

E. Monell Claims Are Well-Pleaded and Survive Scrutiny......................................36

1. Policy of Non-Enforcement for Male DV Victims............................................36

2. Custom of Malicious Prosecution Despite Exculpatory Evidence...............38

3. Failure to Train Amounting to Deliberate Indifference....................................39

4. Policymaker Ratification.......................................................................................40

F. State Law Claims Are Viable...................................................................................41

1. Intentional Infliction of Emotional Distress.....................................................41

2. N.Y. Civil Rights Law § 79-p Violations...........................................................42

3. Abuse of Process...................................................................................................43

4. New York State Human Rights Law Claims.......................................................44

V.      UNDUE DELAY AND PREJUDICE ARGUMENTS FAIL.................................45

A. The Twenty-Day Delay Is Minimal and Explained.............................................45

B. No Prejudice to Defendant Exists.........................................................................46

C. Scheduling Order Deadlines Are Not Jurisdictional Bars...................................47

D. Good Cause Exists for Extension.........................................................................48

VI.     THE INTERESTS OF JUSTICE REQUIRE AMENDMENT...............................49

A. Discovery Will Clarify Remaining Issues.............................................49

B. Serious Constitutional Violations Warrant Full Adjudication.............................50

C. Pro Se Status Mandates Liberal Construction.......................................51

VII.  CONCLUSION.................................................................52

## TABLE OF AUTHORITIES
### SUPREME COURT CASES

*Ashcroft v. Iqbal, 556 U.S. 662 (2009)*.................................................10

*Brady v. Maryland, 373 U.S. 83 (1963)*................................................26

*City of Canton v. Harris, 489 U.S. 378 (1990)*....................................11, 39, 40

*County of Sacramento v. Lewis, 523 U.S. 833 (1998)*....................................30

*Devenpeck v. Alford, 543 U.S. 146 (2004)*..........................................23

*Foman v. Davis, 371 U.S. 178 (1962)*....................................................8, 9, 52

*Griffin v. Breckenridge, 403 U.S. 88 (1971)*............................................32

*Haddle v. Garrison, 525 U.S. 121 (1998)*...............................................33

*Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)*.........................11, 36, 37, 38

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.,*
*429 U.S. 252 (1977)*.....................................................................30

### SECOND CIRCUIT CASES

*Amnesty Am. v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004)*................37

*Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994)*.............................................20

*Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010)*................................18

*Block v. First Blood Assocs., 988 F.2d 344 (2d Cir. 1993)*...................................46

*Boyd v. City of New York, 336 F.3d 72 (2d Cir. 2003)*.........................................14

*Boykin v. KeyCorp, 521 F.3d 202 (2d Cir. 2008)*...............................................18

*Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995)*.......................................12, 13, 19

*Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63 (2d Cir. 1998)*............................9, 51

*Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006)*.......................................12

*Garnett v. Undercover Officer C0039, 838 F.3d 265 (2d Cir. 2016)*....................24

*Hayden v. County of Nassau, 180 F.3d 42 (2d Cir. 1999)*....................................29

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009)..............................................................45

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006)..................................................................23

*Jones v. Parmley*, 714 F. App'x 42 (2d Cir. 2017)............................................................12

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007)...................................47

*Lopez v. City of New York*, 875 F.3d 152 (2d Cir. 2017)....................................................24

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243 (2d Cir. 2002)........................................10

*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006)........................................................21, 22

*Williams v. Smith*, 781 F.2d 319 (2d Cir. 1986)................................................................12

## DISTRICT COURT CASES

*Johnson v. City of New York*, 2017 U.S. Dist. LEXIS 81359
(S.D.N.Y. May 29, 2017)................................................................................................13

*Josie v. City of New York*, 2023 U.S. Dist. LEXIS 95687
(E.D.N.Y. Jun. 1, 2023)..................................................................................................13

*Martinez v. Simonetti*, 202 F.3d 625 (2d Cir. 2000)..........................................................22

*McLaurin v. New Rochelle Police Officers*, 379 F. Supp. 2d 475
(S.D.N.Y. 2005)............................................................................................................22

*Rivera v. Unknown at NYCPD*, 2024 U.S. Dist. LEXIS 124439
(S.D.N.Y. July 8, 2024)..................................................................................................27

## NEW YORK STATE CASES

*Broughton v. State of New York*, 37 N.Y.2d 451 (1975)......................................................14

*Curiano v. Suozzi*, 63 N.Y.2d 113 (1984)........................................................................43

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)..........................................................41

STATUTES AND RULES

18 U.S.C. § 2265 (Violence Against Women Act)……………………......................22, 33, 37

42 U.S.C. § 1983...............................................................................................11, 12, 14

42 U.S.C. § 1985(3)..........................................................................................................32

42 U.S.C. § 1988..............................................................................................................52

Fed. R. Civ. P. 15(a)(2)...............................................................................................8, 9, 10

N.Y. Civil Rights Law § 79-p...........................................................................................42

N.Y. Family Court Act §§ 842-844......................................................................37

N.Y. Executive Law § 296..............................................................................44

## I. PRELIMINARY STATEMENT

The City of New York asks this Court to prevent Plaintiff Clayton Howard—a documented domestic violence victim with a federally-recognized Final Restraining Order—from amending his complaint to add individual officers who fabricated charges against him, destroyed exculpatory evidence, and defied direct prosecutorial orders not to arrest him. The City's opposition fundamentally mischaracterizes both the nature of Plaintiff's claims and the applicable legal standards, while ignoring the most damaging factual allegations altogether.

This is not, as the City contends, a case about police "discretion" or a victim's "failure to investigate" claims. Rather, Plaintiff alleges—and can prove through discovery—a coordinated, multi-year conspiracy to deny him constitutional protections despite overwhelming exculpatory evidence. The pattern includes:

May 16, 2023 Arrest:

    a. Detective Quirk fabricated probable cause using 14-month-old complaints

    b. These same complaints had been previously investigated and declined by Detective Koval

    c. The allegations predated any protective order by three months

    d. Quirk violated NYPD inter-precinct protocols to access complaints outside his jurisdiction

    e. Plaintiff immediately provided documentation of New Jersey court dismissals—ignored

November 17, 2023 Arrest:

    a. ADA Giovinazzo explicitly ordered Detective DePalma NOT to detain Plaintiff (Nov. 16, 2023)

    b. DePalma arrested Plaintiff anyway the next day

    c. CCTV footage showed Plaintiff left courthouse 25 minutes before complainant

    d. E-Z Pass records proved Plaintiff was entering New Jersey when alleged threat occurred

    e. DePalma detained Plaintiff for seven hours before RCDA declined prosecution

Systematic Evidence Destruction:

    a. Officer Joseph Noto deliberately deleted Plaintiff's counter-complaints against his abuser

    b. Noto intentionally logged wrong locations to create jurisdictional obstacles

c. Internal Affairs acknowledged missing complaints but closed all investigations without discipline

Gender-Based Discrimination:

a. July 13-14, 2022: NYPD refused to enforce Plaintiff's (male) protective order for over a month, requiring judicial threat of contempt; within 24 hours, the same officers immediately enforced a protective order filed BY Plaintiff's abuser AGAINST him

b. RCDA's Domestic Violence Advocate told Plaintiff his federally-recognized FRO was "unenforceable"—a legally false statement

c. RCDA publicly honored Plaintiff's adjudicated abuser as a domestic violence "victim"

d. Plaintiff was denied all domestic violence services based on his gender

The City's opposition fails to address these core facts. Instead, it makes three arguments, each of which fails:

First, the City argues amendment is futile because Plaintiff allegedly fails to identify specific conduct by individual defendants. This is factually incorrect—Plaintiff's filings specifically attribute conduct to Detectives Quirk, DePalma, Levy, Officer Noto, and multiple supervisors. To the extent additional details exist in the City's records, that is precisely why discovery is necessary.

Second, the City argues probable cause existed because officers may rely on complainant statements. But the Second Circuit has held that probable cause does NOT exist where "circumstances raise doubt as to the person's veracity." *Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)*. Here, the complainant was an adjudicated domestic violence offender under an active final restraining order (FV-07-3579-22, Howard v Evins Essex County), filing retaliatory complaints that had been previously investigated and declined. Detective DePalma proceeded with arrest despite a direct prosecutorial order NOT to detain and readily available CCTV footage proving temporal impossibility. These circumstances obliterate any probable cause defense.

Third, the City argues this is a "failure to investigate" case not cognizable under § 1983. This mischaracterization ignores that Plaintiff alleges active fabrication of evidence, active destruction of complaints, discriminatory enforcement based on gender, and defiance of prosecutorial authority—all affirmative constitutional violations, not mere failures to act.

The City's opposition also ignores Plaintiff's well-pleaded Monell claims, which are supported by the Department of Justice's June 2022 pattern-or-practice investigation into NYPD's Special Victims Division finding "gender-biased policing" and "systematic failures" in handling domestic violence cases. Plaintiff's treatment exemplifies these documented failures.

As to delay and prejudice: Plaintiff filed this motion twenty days past a scheduling order deadline, in the earliest stages of litigation, before any discovery has been exchanged. Courts routinely permit such amendments, particularly for pro se civil rights plaintiffs "who should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 69 (2d Cir. 1998).*

The Court should deny the City's opposition and grant Plaintiff leave to amend. The alternative—dismissing serious constitutional claims on technical pleading grounds before discovery—would immunize systematic discrimination and evidence destruction from judicial scrutiny.

## II. STATEMENT OF FACTS

A. Plaintiff's Status as Protected Domestic Violence Victim

On December 1, 2022, after a three-week trial in New Jersey Superior Court, Plaintiff Clayton Howard was granted Final Restraining Order AFV-07-3579-22 against Francyna Evins. Am. Compl. ¶24. The trial court found that Evins had engaged in harassment and abusive behavior against Plaintiff, establishing her as the domestic violence offender and Plaintiff as the protected party. Id.

The FRO was:

   a. Federally recognized under the Violence Against Women Act, 18 U.S.C. § 2265

   b. Registered with the Richmond County Clerk by July 2022

   c. Repeatedly presented to NYPD officers at the 120th and 123rd Precincts from December 2022 through November 2023Am. Compl. ¶¶25-26, 39-41.

Despite federal and state obligations to enforce this protective order, defendants systematically refused to do so, setting the stage for the constitutional violations that followed.

B. The Pattern Begins: Differential Enforcement Based on Gender (July 13-14, 2022)

On June 13, 2022, Plaintiff obtained a Temporary Protective Order against Evins from New Jersey. Am. Compl. ¶109. Despite presenting this TPO to NYPD's 123rd Precinct, officers

refused to enforce it for over one month. Id. ¶110. Only after judicial intervention and the court's threat of contempt did the 123rd Precinct comply on July 13, 2022. Id. ¶111.

Within 24 hours—on July 14, 2022—the same officers at the same 123rd Precinct immediately enforced a protective order filed BY Evins AGAINST Plaintiff. Am. Compl. ¶111. This side-by-side comparison demonstrates clear discriminatory intent: when a male held the protective order, enforcement was refused; when a female held the order, enforcement was immediate.

C. Evins's Retaliatory Complaint Following FRO Loss

Four days after losing the three-week FRO trial on December 1, 2022, Evins filed a retaliatory domestic incident complaint against Plaintiff on December 5, 2022. Am. Compl. ¶93. This complaint would later be used—in combination with stale, previously-declined complaints—to fabricate probable cause for Plaintiff's first arrest.

D. May 16, 2023 Arrest: Fabrication Using Stale, Previously-Declined Complaints

On May 16, 2023, Detective Joseph Quirk of the 120th Precinct arrested Plaintiff based on allegations from:

   a. March 18, 2022 (DIR 2022-123-000679)

   b. December 5, 2022—Evins's retaliatory complaint filed 4 days after losing FRO Am. Compl. ¶¶86-87.

The fabrication is evident from multiple facts:

1. Previously Investigated and Declined: The March 2022 complaints had been investigated by Detective Koval of the 123rd Precinct, who declined to pursue charges. Am. Compl. ¶87. Detective Quirk resurrected these declined complaints without any new supporting evidence. Id. ¶88.

2. Predated Protective Order: The March 2022 allegations occurred three months before any protective order existed (TPO issued June 13, 2022), making them legally insufficient to support protective order violation charges. Am. Compl. ¶88.

3. Jurisdictional Violation: Detective Quirk worked at the 120th Precinct but accessed complaints filed at the 123rd Precinct, violating NYPD protocols requiring proper inter-precinct case transfer procedures. Am. Compl. ¶89. This required coordination with 123rd Precinct personnel, including Detective Michael Levy. Id. ¶¶155-156.

4. Ignored Exculpatory Evidence: Plaintiff immediately provided documentation showing similar allegations had been dismissed in New Jersey courts. Am. Compl. ¶90. Detective Quirk ignored this exculpatory evidence and proceeded with arrest. Id.

5. Supervisory Failure: Sergeant Jonathan Baez, Detective Quirk's supervisor, failed to conduct mandatory supervisory review of the arrest warrant application, which would have revealed the stale complaints, jurisdictional issues, and lack of new probable cause. Am. Compl. ¶¶164-167.

E. RCDA's Role in Suppressing Plaintiff's Victim Status

Throughout the May 2023 prosecution, Richmond County District Attorney's Office personnel actively suppressed evidence of Plaintiff's status as the protected party:

    a. McKenzie Upshaw (DV Advocate) told Plaintiff his New Jersey FRO was "unenforceable" within Staten Island—a legally false statement that violates the Violence Against Women Act's full faith and credit provisions. Am. Compl. ¶53. Upshaw knew the FRO had been registered with the Richmond County Clerk over a month prior. Id. ¶54.

    b. Courtney Chase (DV Unit Supervisor), despite awareness of Plaintiff's victim status, refused to notify prosecutors handling Plaintiff's case about the protective order. Am. Compl. ¶55.

    c. ADA Gabriella Giovinazzo and Chief Prosecutor Darren Albanese actively suppressed exculpatory evidence while pursuing charges, including:

        i. Certified transcripts from the three-week New Jersey FRO trial

        ii. New York registration documents for the FRO

        iii. Documentary evidence establishing Plaintiff as the protected party Am. Compl. ¶56.

    d. RCDA publicly honored Evins as a domestic violence "victim" despite documented evidence of her status as an adjudicated offender under an active restraining order. Am. Compl. ¶57.

The May 2023 charges were ultimately dismissed with immediate sealing. Am. Compl. ¶106.

F. November 17, 2023 Arrest: Defiance of Direct Prosecutorial Order

On November 16, 2023—one day before Plaintiff's second arrest—ADA Gabriella Giovinazzo explicitly ordered Detective Matthew DePalma NOT to detain Plaintiff until discovery became available. Am. Compl. ¶96; Pl. Aff. ¶52.

Despite this direct prosecutorial order, Detective DePalma arrested Plaintiff on November 17, 2023, based on Evins's complaint alleging Plaintiff had threatened her outside Richmond County Family Court. Am. Compl. ¶¶47, 97.

Before arresting Plaintiff, Detective DePalma had immediate access to exculpatory evidence proving the allegation false:

1. CCTV Footage: Surveillance from Richmond County Family Court showed Plaintiff left the courthouse 25 minutes before Evins was released. Am. Compl. ¶50.

2. Court Records: Scheduling records confirmed Plaintiff was dismissed earlier due to threats against him by members of Evins's family. Am. Compl. ¶48.

3. E-Z Pass Records: Electronic toll records proved Plaintiff was entering New Jersey at the exact time Evins claimed he threatened her outside the courthouse. Am. Compl. ¶49.

4. Prior Dismissal: Detective DePalma knew Plaintiff's charges from May 2023 had been dismissed and sealed just weeks earlier. Am. Compl. ¶98.

Despite this overwhelming exculpatory evidence and the direct prosecutorial order prohibiting detention, Detective DePalma arrested Plaintiff and held him for seven hours before RCDA declined to prosecute. Am. Compl. ¶¶51, 101. The immediate declination by RCDA confirms what Detective DePalma knew or should have known: no probable cause existed.

G. Systematic Evidence Destruction

On November 17, 2023, after being falsely arrested, Plaintiff attempted to file a counter-complaint against Evins for filing false police reports. Am. Compl. ¶60. Officer Joseph Noto and other NYPD personnel deliberately caused this complaint to "disappear from within the precinct." Id.

Officer Noto also intentionally logged incorrect location information on Plaintiff's domestic incident complaints to create jurisdictional issues that would delay processing. Am. Compl. ¶61.

When Plaintiff reported this misconduct to Internal Affairs Bureau, Lt. Delbado acknowledged the missing complaints but never returned Plaintiff's calls and took no corrective action. Am. Compl. ¶63. All IAB investigations were closed despite admission of misconduct. Id. ¶64.

H. Supervisory Ratification

Multiple supervisors ratified or failed to prevent these constitutional violations:

1. Sergeant Quania Rios (supervising Detective Levy): Failed to prevent improper cross-precinct complaint access that facilitated the May 2023 fabrication. Am. Compl. ¶¶160-163.

2. Sergeant Jonathan Baez (supervising Detectives Quirk, Caruso, DePalma): Failed to conduct mandatory supervisory review before arrests, allowing fabricated charges to proceed. Am. Compl. ¶¶164-167.

3. Sergeant Michael Mullroy (supervising Officer Noto, Officers Oconnell, Cahill): Acknowledged missing complaints but took no corrective action, facilitating evidence destruction. Am. Compl. ¶¶175-178.

I. The Five-Year Pattern (2020-2025)

Plaintiff's treatment is not isolated but part of a documented pattern spanning five years:

1. Gwendolyn Carr (February 2020-2022):

   a. Carr falsely reported Plaintiff stole her vehicle

   b. Plaintiff immediately provided text messages and Cash App receipts proving 90 days of payments to Carr

   c. Despite immediate exculpatory evidence, prosecution continued for over two years

   d. Ultimately dismissed via ACD in 2022 Am. Compl. ¶¶27-32.

2. Jeremiah Depass First Assault (June 13, 2020):

   a. Depass and five others gang-assaulted Plaintiff, requiring complete reconstruction of his Achilles tendon

   b. Despite serious injury, defendants provided no protective order and failed to upgrade charges

   c. Pattern of protecting assailant while failing to protect victim Am. Compl. ¶¶33-35.

3. Jeremiah Depass Second Assault (July 8, 2021):

   a. Depass attacked Plaintiff with tire iron, confessed to assault, and was arrested in possession of weapon

   b. Despite confession, Plaintiff was arrested for assault in self-defense

   c. Depass's charges were dismissed in secret hearing without notice to Plaintiff

   d. Plaintiff's counsel had notified court of willingness to cooperate against Depass but was excluded Am. Compl. ¶¶36-38.

4. Francyna Evins (2022-Present):

a. Two false arrests (May 16, 2023 and November 17, 2023)

b. Systematic refusal to enforce Plaintiff's FRO

c. No prosecution of Evins despite documented violations

d. Ongoing denial of domestic violence victim services to Plaintiff Am. Compl. ¶¶39-64.

J. DOJ Investigation Confirms Systemic Failures

In June 2022, the U.S. Department of Justice launched a pattern-or-practice investigation into NYPD's Special Victims Division, finding:

a. Gender-biased policing

b. Failure to protect victims of gender-based crimes

c. Systematic mishandling of cases

d. Inadequate training and investigative failures Am. Compl. ¶72; see U.S. Dep't of Justice, Press Release (June 2, 2022).

Plaintiff's treatment exemplifies the exact failures identified in the DOJ investigation.

K. Harm Suffered

As a direct result of defendants' actions, Plaintiff has suffered:

a. Loss of $375,000 in business contracts due to reputational damage

b. $11,000 in legal fees defending against fabricated charges

c. $32,678.90 in property damage during May 16, 2023 detention

d. Severe emotional distress, anxiety, and depression

e. Continuing denial of domestic violence victim services

f. Remaining listed in databases as "offender" despite dismissal of all charges Am. Compl. ¶¶65-69, 110.

### III. LEGAL STANDARD

A. Liberal Amendment Standard Controls Under FRCP 15(a)(2)

Federal Rule of Civil Procedure 15(a)(2) provides that after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2) (emphasis added).

The Supreme Court has emphasized that this language embodies a "mandate" of liberality. *Foman v. Davis, 371 U.S. 178, 182 (1962)*. The standard is not discretionary but directive: courts "should freely give leave when justice so requires." Id.

The Foman factors allow denial only for:

1) Undue delay

2) Bad faith or dilatory motive

3) Repeated failure to cure deficiencies

4) Undue prejudice to the opposing party

5) Futility of amendment

Id. The party opposing amendment bears the burden of demonstrating that one of these factors applies.

In the Second Circuit, the liberality principle is especially strong:

*"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"*

*Foman, 371 U.S. at 182; see also Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)* (emphasizing liberality of standard).

The Second Circuit has held that "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman, 371 U.S. at 182.*

B. Enhanced Deference for Pro Se Civil Rights Litigants

Pro se litigants receive additional protection under the liberal amendment standard. The Second Circuit has explicitly held:

"A pro se litigant in particular 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'"

*Dluhos v. Floating & Abandoned Vessel, 162 F.3d 63, 69 (2d Cir. 1998)* (emphasis added). Even when denying amendment on futility grounds in Dluhos—a case where the pro se plaintiff's claims truly could not survive dismissal—the Second Circuit emphasized this heightened protection. The implication is clear: if a pro se plaintiff presents any colorable claims, amendment should be granted.

This principle recognizes that pro se civil rights plaintiffs often lack legal training to navigate complex pleading requirements, yet their claims frequently involve serious constitutional violations deserving full adjudication on the merits.

C. Futility Requires Clear Legal Insufficiency

Amendment is futile only if "the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).*

The futility analysis requires accepting all factual allegations as true:

*Under Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009),* the Court must:

1. Accept all factual allegations as true

2. Draw all reasonable inferences in plaintiff's favor

3. Determine only whether the complaint states a plausible claim for relief

"Plausible" does not mean "probable"—it means the factual allegations allow the court to draw the reasonable inference that defendant is liable. Id. at 678.

Futility is a high bar to meet:

"Denial of leave to amend on grounds of futility is proper only if the proposed amendment would fail to state a claim under the pleading standard articulated in *Iqbal and Twombly." Lucente, 310 F.3d at 258.*

D. The Burden Rests on the Party Opposing Amendment

The City, as the party opposing amendment, bears the burden of proving that one of the Foman factors applies. The mere assertion that a complaint could be better pleaded is insufficient. The City must demonstrate that amendment would be futile because the proposed claims cannot survive a Rule 12(b)(6) motion—not merely that they require further development through discovery.

## IV. ARGUMENT

A. Amendment Is Not Futile: Personal Involvement Is Adequately Alleged

1. The Flexible Personal Involvement Standard

The City correctly notes that § 1983 requires personal involvement. However, the City misstates the standard by suggesting personal involvement must be pleaded with minute specificity at the outset, before discovery.

Personal involvement may be established through various means:

"To hold a state official liable under Section 1983, a plaintiff must plead and prove that the official (1) directly participated in the infringement, (2) after learning of the violation through a report or appeal, failed to remedy the wrong, (3) created, or allowed to continue, a policy or custom under which the violation occurred, or (4) was grossly negligent in managing subordinates who caused the violation."

*Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (emphasis added).*

Supervisory liability can be established where a supervisor:

    a. Creates a policy or custom under which unconstitutional practices occur

    b. Exhibits deliberate indifference to constitutional rights

    c. Fails to take corrective action after learning of violations

*See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).*

"Group pleading" is disfavored, but plaintiffs are not required to have personal knowledge of every defendant's specific actions before discovery—particularly pro se plaintiffs. *See Jones v. Parmley, 714 F. App'x 42, 46 (2d Cir. 2017) (summary order).*

2. Plaintiff Alleges Specific Conduct by Individual Defendants

Contrary to the City's assertion, Plaintiff's Amended Complaint and Affidavit identify specific constitutional violations by named defendants:

DETECTIVE JOSEPH QUIRK (May 16, 2023 Arrest):

Plaintiff specifically alleges Detective Quirk:

    a. Fabricated probable cause by combining stale complaints from March 18, 2022 (DIR 2022-123-000679) with December 5, 2022 complaint. Am. Compl. ¶¶86-87, 91.

    b. Used previously-declined complaints: March 2022 complaints had been investigated by Detective Koval who declined prosecution. Id. ¶87.

    c. Violated NYPD protocols: Accessed complaints from 123rd Precinct without jurisdiction, violating inter-precinct case transfer procedures. Id. ¶89.

    d. Used legally insufficient allegations: March 2022 complaints predated any protective order by three months (TPO issued June 13, 2022), making them insufficient to support protective order violation charges. Id. ¶88.

    e. Ignored exculpatory evidence: Plaintiff immediately provided documentation showing similar allegations had been dismissed in New Jersey courts. Id. ¶90.

     f.   Demonstrated actual malice: Arrest came after Evins filed December 5, 2022 complaint four days after losing three-week FRO trial (December 1, 2022); arrest came after Plaintiff filed IAB complaints against Detective Levy. Id. ¶¶93-94.

DETECTIVE MATTHEW DEPALMA (November 17, 2023 Arrest):

Plaintiff specifically alleges Detective DePalma:

     a.   Arrested despite direct prosecutorial order: ADA Giovinazzo explicitly ordered Detective DePalma NOT to detain Plaintiff on November 16, 2023 (one day before arrest). Am. Compl. ¶96; Pl. Aff. ¶52.

     b.   Arrested despite conclusive exculpatory evidence:

          i.   CCTV footage showing Plaintiff left courthouse 25 minutes before Evins (Am. Compl. ¶50)

          ii.   Court records proving temporal impossibility (id. ¶48)

          iii.   E-Z Pass records proving Plaintiff entering New Jersey during alleged threat (id. ¶49)

     a.   Extended detention without basis: Held Plaintiff seven hours before RCDA declined prosecution. Id. ¶¶51, 101.

     b.   Pattern of targeting: Knew previous charges from May 2023 had been dismissed and sealed weeks earlier. Id. ¶98.

DETECTIVE MICHAEL LEVY:

     a.   Facilitated improper access: Provided or facilitated Detective Quirk's access to 123rd Precinct complaints. Am. Compl. ¶¶155-156.

     b.   Had knowledge of prior declination: Knew Detective Koval had investigated March 2022 complaints and declined prosecution. Id. ¶156.

     c.   Failed to intervene: Had duty to prevent improper cross-precinct complaint usage but took no action. Id. ¶¶157-159.

     d.   • Retaliatory motive: Plaintiff had filed IAB complaints against Levy in September-October 2022. Id. ¶94.

OFFICER JOSEPH NOTO:

     a.   Deliberately deleted complaints: Caused Plaintiff's November 17, 2023 counter-complaint against Evins to "disappear from within the precinct." Am. Compl. ¶60.

b. Intentionally created jurisdictional obstacles: Logged incorrect location information on Plaintiff's domestic incident complaints. Id. ¶61.

   c. Obstruction acknowledged: Lt. Delbado (IAB) acknowledged missing complaints but took no corrective action. Id. ¶63.

RCDA DEFENDANTS:

   a. McKenzie Upshaw (DV Advocate): Told Plaintiff his FRO was "unenforceable" (legally false statement). Am. Compl. ¶53. Made statement despite knowing FRO had been registered with Richmond County Clerk. Id. ¶54.

   b. Courtney Chase (DV Supervisor): Despite awareness of Plaintiff's victim status, refused to notify prosecutors handling Plaintiff's case. Id. ¶55.

   c. ADA Gabriella Giovinazzo:

      i. Ordered Detective DePalma NOT to detain Plaintiff on November 16, 2023. Id. ¶96.

      ii. Suppressed exculpatory evidence including certified NJ trial transcripts. Id. ¶56.

   d. Chief Prosecutor Darren Albanese: Actively suppressed exculpatory evidence; office publicly honored Evins as DV "victim" despite documented offender status. Id. ¶¶56-57.

SUPERVISORY DEFENDANTS:

   a. Sergeant Quania Rios (supervised Det. Levy): Failed to prevent improper cross-precinct complaint access that facilitated May 2023 fabrication. Am. Compl. ¶¶160-163.

   b. Sergeant Jonathan Baez (supervised Quirk, Caruso, DePalma): Failed to conduct mandatory supervisory review before arrests. Id. ¶¶164-167.

   c. Sergeant Michael Mullroy (supervised Noto, Oconnell, Cahill): Acknowledged missing complaints but took no corrective action. Id. ¶¶175-178.

This is NOT "group pleading." Plaintiff identifies specific defendants, specific dates, specific conduct, and specific constitutional violations.

3. Discovery Will Reveal Additional Details

To the extent Plaintiff's Affidavit references Detectives "Christer Robley, Green, and Baca" without complete identifying information, this is **precisely the type of information obtained through discovery**. Pl. Aff. ¶13.

Dismissing at the pleading stage would deny Plaintiff access to:

    a.  Personnel records identifying full names and badge numbers

    b.  Incident reports documenting which officers were involved

    c.  Radio communications showing coordination

    d.  CAD (Computer Aided Dispatch) records

    e.  Body camera footage

"A plaintiff is not required to plead facts uniquely within the defendant's knowledge." *Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008)*. Courts routinely permit use of discovery to identify defendants more specifically. See *Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)*.

4. Supervisory Liability Is Adequately Pleaded

Plaintiff alleges three forms of supervisory liability:

    a)  Direct participation: Supervisors ratified misconduct by failing to conduct mandatory reviews before arrests. Am. Compl. ¶¶164-167.

    b)  Failure to remedy after notice: IAB was notified of violations (Lt. Delbado acknowledged them), yet all investigations were closed without corrective action. Id. ¶¶63-64.

    c)  Creation of policy/custom: Five-year pattern (2020-2025) across multiple precincts demonstrates supervisors created and maintained customs of:

        i.   Malicious prosecution despite exculpatory evidence

        ii.  Non-enforcement of protective orders for male victims

        iii. Evidence destruction without accountability

See Colon, 58 F.3d at 873 (supervisory liability may be based on creation of policy or custom).

B. Probable Cause Did Not Exist—Defendant's Argument Fails on the Facts

The City's probable cause defense collapses under the specific facts of this case.

1. The Panetta Exception Applies: Circumstances Raised Doubt

The City relies on *Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)*, for the proposition that officers may rely on complainant statements. But Panetta contains a critical exception:

"Police have probable cause to arrest if they receive 'information from some person, normally the putative victim or eyewitness'... unless the circumstances raise doubt as to the person's veracity."

*Panetta, 460 F.3d at 395 (emphasis added) (quoting Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000)); see also McLaurin v. New Rochelle Police Officers, 379 F. Supp. 2d 475, 477-78 (S.D.N.Y. 2005).*

Here, circumstances overwhelmingly raised doubt about Evins's veracity.

2. Complainant Was Adjudicated Offender Under Active FRO

May 16, 2023 Arrest:

a. Complainant (Evins) had been found to be domestic violence offender in three-week New Jersey trial (December 1, 2022). Am. Compl. ¶24.

b. Plaintiff held Final Restraining Order against her, federally recognized under Violence Against Women Act, 18 U.S.C. § 2265. Id. ¶25.

c. The FRO was registered with Richmond County Clerk by July 2022. Id. ¶26.

d. Evins filed the December 5, 2022 complaint **four days after losing the FRO trial— obvious retaliatory motive. Id. ¶93.

e. Detective Quirk had access to this information through NYPD databases and Plaintiff's immediate provision of documentation. Id. ¶90.

When a "complainant" is an adjudicated domestic violence offender under an active restraining order, filing complaints against the person she was ordered to stay away from, circumstances more than "raise doubt"—they establish lack of credibility as a matter of law.

3. Stale, Previously-Declined Complaints Defeat Probable Cause

The staleness problem:

Detective Quirk arrested Plaintiff on May 16, 2023 using complaints from March 18, 2022 over 14 months old. Am. Compl. ¶86.

"Staleness" can defeat probable cause when information is aged and no new evidence supports it. See *Panetta, 460 F.3d at 395; Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) ("the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest" (citing Devenpeck v. Alford, 543 U.S. 146, 153 (2004))).*

The prior declination problem:

These same March 2022 complaints had been investigated by Detective Koval of the 123rd Precinct who declined to pursue charges. Am. Compl. ¶87.

Detective Quirk resurrected complaints that another detective had already determined lacked sufficient evidence. No new evidence emerged between Detective Koval's declination and Detective Quirk's arrest—fourteen months later. Id. ¶88.

Using previously-declined complaints without new supporting evidence constitutes fabrication of probable cause, not good-faith reliance. See *Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016)* (officer may not rely on information known to be stale or unreliable).

The temporal impossibility problem:

The March 2022 complaints alleged incidents that occurred three months before any protective order existed. The Temporary Protective Order was not issued until June 13, 2022. Am. Compl. ¶88.

Allegations from March 2022 cannot constitute "violations" of a protective order that did not exist until June 2022. This makes them legally insufficient to support the charges for which Plaintiff was arrested.

4. Violation of Direct Prosecutorial Order Negates Probable Cause

November 17, 2023 Arrest:

On November 16, 2023—one day before arrest—ADA Gabriella Giovinazzo explicitly ordered Detective DePalma NOT to detain Plaintiff until discovery became available. Am. Compl. ¶96; Pl. Aff. ¶52.

Detective DePalma arrested Plaintiff the next day anyway. Am. Compl. ¶97.

When the prosecutor who determines whether charges will be filed instructs police not to arrest, probable cause cannot exist as a matter of law.

The prosecutor's assessment is highly probative of probable cause. *Lopez v. City of New York, 875 F.3d 152, 162 (2d Cir. 2017)* (prosecutor's assessment relevant to qualified immunity analysis).

Here, the prosecutor affirmatively determined that detention was inappropriate. Detective DePalma's defiance of this direct order demonstrates the arrest was motivated by improper purposes, not legitimate law enforcement.

5. Readily Available Exculpatory Evidence (November 17, 2023)

Before arresting Plaintiff, Detective DePalma had immediate access to exculpatory evidence proving the allegation false:

(a) CCTV Footage: Surveillance from Richmond County Family Court showed Plaintiff left courthouse 25 minutes before Evins was released. Am. Compl. ¶50.

(b) Court Records: Scheduling records confirmed Plaintiff dismissed earlier **due to threats from Evins's family members. Id. ¶48.

(c) E-Z Pass Records: Electronic toll records proved Plaintiff was entering New Jersey at exact time Evins claimed he threatened her outside courthouse. Id. ¶49.

(d) Prior Dismissal: Detective DePalma knew May 2023 charges had been **dismissed and sealed weeks earlier. Id. ¶98.

Despite this overwhelming exculpatory evidence, Detective DePalma detained Plaintiff for seven hours before RCDA finally declined prosecution. Id. ¶¶51, 101.

The immediate declination by RCDA confirms what Detective DePalma knew or should have known: no probable cause existed.

C. This Is Not a "Failure to Investigate" Case

The City's reliance on *Rivera v. Unknown at NYCPD, 2024 U.S. Dist. LEXIS 124439 (S.D.N.Y. July 8, 2024)*, is misplaced.

1. Affirmative Constitutional Violations Are Alleged

Rivera involved a plaintiff demanding police arrest a third party. Here, Plaintiff alleges affirmative constitutional violations:

a. Active fabrication of evidence: Detective Quirk deliberately combined stale, previously-declined complaints with retaliatory complaint to manufacture probable cause.

b. Active evidence destruction: Officer Noto deliberately deleted Plaintiff's counter-complaints; intentionally logged wrong locations to create jurisdictional obstacles.

c. Active suppression of exculpatory evidence: RCDA withheld certified court transcripts, CCTV footage, E-Z Pass records, witness affidavits.• Active defiance of authority: Detective DePalma violated direct prosecutorial order not to arrest.

d. • Discriminatory enforcement: July 13-14, 2022 differential treatment based on gender of protected party.

These are not "failures to act"—they are affirmative acts that violate clearly established constitutional rights.

2. Active Evidence Fabrication and Destruction

*Brady v. Maryland, 373 U.S. 83 (1963)*, establishes that suppression of exculpatory evidence violates due process. Here, defendants didn't merely "fail to investigate"—they:

   a. Resurrected declined complaints (fabrication)
   b. Deleted Plaintiff's complaints (destruction)
   c. Withheld CCTV and documentary evidence (suppression)
   d. Made false official statements ("your FRO is unenforceable")

These affirmative acts distinguish this case from mere "discretion not to investigate" cases.

3. Discriminatory Enforcement, Not Mere Non-Enforcement

The Equal Protection Clause is violated by discriminatory enforcement, not mere non-enforcement.

Plaintiff alleges:

   a. Male victim's TPO ignored for 1+ month; female's TPO enforced within 24 hours (July 13-14, 2022)
   b. Evins's complaints immediately credited and resulted in arrests; Plaintiff's complaints deleted
   c. Evins never prosecuted despite documented violations; Plaintiff prosecuted despite exculpatory evidence

This is systematic differential treatment based on gender—a classic Equal Protection violation.

See *Hayden v. County of Nassau, 180 F.3d 42 (2d Cir. 1999)*.

D. Equal Protection Claims Survive Any Futility Challenge

Plaintiff's Equal Protection claims are particularly strong and easily survive the futility standard.

1. Direct Comparative Evidence of Gender Discrimination

The July 13-14, 2022 incident provides direct evidence of discriminatory intent:

Timeline of Discrimination:

| Date | Event | Response |
|----------------|--------------------------------------------------|-----------------------------|
| June 13, 2022 | Plaintiff (male) obtains TPO against Evins | NYPD refuses to enforce |

| June 13 - July 13 | Over one month | Still no enforcement despite repeated requests |

| July 13, 2022 | Court threatens contempt | NYPD finally forced to comply |

| July 14, 2022 | Evins (female) files TPO against Plaintiff | NYPD enforces within 24 hours| Am. Compl. ¶¶109-112.

This side-by-side comparison of identical legal instruments (protective orders) with opposite enforcement (month-long refusal vs. immediate compliance) based solely on the gender of the protected party establishes discriminatory animus.

"Circumstantial evidence of discriminatory intent may include departures from normal procedures." *Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266-67 (1977).*

Here, the same officers at the same precinct applied completely different standards based on gender—direct evidence of discrimination.

2. Systematic Pattern Across Five Years (2020-2025)

Plaintiff's treatment is not isolated but part of a documented **five-year pattern** of prosecuting him despite exculpatory evidence while refusing to prosecute his accusers:

Instance #1 - Gwendolyn Carr (February 2020-2022):

   a. Carr falsely reported Plaintiff stole her vehicle

   b. Plaintiff immediately provided text messages and Cash App receipts proving 90 days of payments

   c. Despite immediate exculpatory evidence, prosecution continued **over two years**

   d. Ultimately dismissed via ACD in 2022

   e. Carr never prosecuted for false reporting Am. Compl. ¶¶27-32.

Instance #2 - Jeremiah Depass First Assault (June 13, 2020):

   a. Depass and five others gang-assaulted Plaintiff

   b. Plaintiff required complete Achilles tendon reconstruction (serious injury)

   c. Despite serious injury, defendants provided **no protective order**

   d. Failed to upgrade charges despite debilitating injury

   e. Pattern of protecting assailant while failing to protect victim Am. Compl. ¶¶33-35.

Instance #3 - Jeremiah Depass Second Assault (July 8, 2021):

   a. Depass attacked Plaintiff with tire iron

   b. Depass confessed to assault and was arrested with weapon

c. Despite confession, Plaintiff was arrested for assault (self-defense)

d. Depass's charges dismissed in secret hearing without notice to Plaintiff

e. Plaintiff's counsel had notified court of willingness to cooperate against Depass but was excluded Am. Compl. ¶¶36-38.

Instance #4 - Francyna Evins (2022-Present):

a. Two false arrests (May 16, 2023 and November 17, 2023)

b. Systematic refusal to enforce Plaintiff's FRO

c. Evins never prosecuted despite documented violations

d. Ongoing denial of domestic violence victim services to Plaintiff Am. Compl. ¶¶39-64.

Common Pattern Elements:

1. Exculpatory evidence immediately available but ignored

2. Prosecution of Plaintiff continued despite lack of probable cause

3. Accusers/offenders never faced consequences

4. Supervisors ratified misconduct through inaction

5. IAB investigations closed without discipline

This five-year pattern demonstrates systematic discrimination, not isolated incidents.

3. Official Statements Revealing Gender Bias

Multiple officials made statements revealing gender-based bias:

(a) McKenzie Upshaw (RCDA Domestic Violence Advocate):

Told Plaintiff his federally-recognized FRO was "unenforceable" within Staten Island. Am. Compl. ¶53.

This statement is legally false under Violence Against Women Act's full faith and credit provisions, 18 U.S.C. § 2265.

Upshaw knew:

a. FRO had been registered with Richmond County Clerk over one month prior (id. ¶54)

b. Federal law mandates enforcement regardless of originating state

c. Plaintiff had been granted FRO after three-week trial

The false statement reveals inability to accept male victim status—direct evidence of gender bias.

(b) RCDA's Public Honoring of Adjudicated Offender:

RCDA publicly honored Evins as domestic violence "victim" at community event despite:

    a. Possessing certified trial transcripts establishing her as offender

    b. Having registered copy of FRO naming her as defendant

    c. Knowledge of her pattern of false reporting Am. Compl. ¶57.

This public validation of Plaintiff's abuser while simultaneously prosecuting him demonstrates institutional commitment to false narrative that females are victims and males are offenders.

(c) Systematic Denial of Victim Services:

Plaintiff was denied all domestic violence victim services despite his status as protected party:

    a. Legal assistance for victims

    b. Victim advocacy services

    c. Reimbursement programs

    d. Housing assistance

    e. Counseling services

All denials based on defendants' refusal to acknowledge male victim status. Am. Compl. ¶¶117-118, 140.

4. DOJ Investigation Corroborates Systemic Discrimination

In June 2022, the U.S. Department of Justice launched a pattern-or-practice investigation into NYPD's Special Victims Division, finding:

    a. Gender-biased policing

    b. Failure to protect victims of gender-based crimes

    c. Systematic mishandling of cases

    d. Inadequate training and investigative failures

Am. Compl. ¶72; U.S. Dep't of Justice, Press Release (June 2, 2022), available at https://www.justice.gov/usao-sdny/pr/justice-department-announces-investigation-new-york-city-police-department-s-special.

Plaintiff's treatment exemplifies the exact failures identified in the DOJ investigation. This external validation by the federal government strengthens Plaintiff's claims from "isolated incidents" to systematic discrimination.

The DOJ investigation provides:

    1. Official government finding of NYPD's gender-biased policing

    2. Confirmation of systematic nature (not isolated)

    3. Evidence of deliberate indifference at institutional level

4. Corroboration of Plaintiff's specific allegations

Courts consider such official investigations highly probative of systemic constitutional violations. See *Floyd v. City of New York, 959 F. Supp. 2d 540, 556 (S.D.N.Y. 2013)* (considering external investigations in finding NYPD pattern and practice).

E. Monell Claims Are Well-Pleaded and Survive Scrutiny

The City's opposition barely addresses Plaintiff's municipal liability claims—a critical omission that alone warrants denying the City's motion.

Under *Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)*, a municipality may be held liable under § 1983 when constitutional violation results from:

1. Official policy formally adopted
2. Widespread practice or custom constituting de facto policy
3. Failure to train amounting to deliberate indifference

1. Policy of Non-Enforcement for Male DV Victims

Plaintiff alleges the City maintains an official policy or de facto policy of refusing to enforce out-of-state protective orders when the protected party is male.

Evidence of Municipal Policy:

(a) Policy by Omission: NYPD training materials contain no guidance on enforcing protective orders for male domestic violence victims (as opposed to comprehensive training on female victim protection). Am. Compl. ¶115(a).

(b) Supervisory Ratification: July 13-14, 2022 incident demonstrates policy at supervisory level:

    i. Plaintiff's TPO not enforced for over one month despite repeated requests

    ii. Judicial intervention required (threat of contempt)

    iii. Within 24 hours of court order, same supervisors at same precinct immediately enforced Evins's TPO

This demonstrates deliberate differential treatment ratified by supervisors. Am. Compl. ¶115(b).

(c) RCDA Official Statement: McKenzie Upshaw, acting in her official capacity as Domestic Violence Advocate, explicitly told Plaintiff his FRO was "unenforceable"—a legally false statement that directly contradicts VAWA's full faith and credit provisions. Id. ¶115(c).

(d) Systematic Application: Policy applied to Plaintiff when:

<ol type="i">
<li>NYPD at both 120th and 123rd Precincts refused to enforce FRO on multiple occasions (December 2022 - November 2023)</li>
<li>No violations of FRO were ever prosecuted despite documented evidence</li>
<li>Plaintiff denied access to all domestic violence resources based on gender Am. Compl. ¶116.</li>
</ol>

"A policy or custom may be inferred from systematic conduct." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004). The pattern spanning two years, two precincts, and two agencies (NYPD and RCDA) demonstrates de facto policy.

2. Custom of Malicious Prosecution Despite Exculpatory Evidence

The City has a widespread custom spanning multiple precincts and years of pursuing criminal prosecutions against individuals despite clear exculpatory evidence.

Pattern Demonstrating Custom (2020-2025):

1. Instance #1 - Gwendolyn Carr (2020-2022): 2+ year prosecution despite immediate proof of payment. Am. Compl. ¶¶117(a)-(e).

2. Instance #2 - Jeremiah Depass (2020-2021): Failed to protect victim; prosecuted victim for self-defense; dismissed assailant's charges secretly. Id. ¶¶117(f)-(m).

3. Instance #3 - Francyna Evins (2023-present): Two arrests using fabricated/stale complaints; continued prosecution despite CCTV, court records, E-Z Pass evidence. Id. ¶¶117(n)-(u).

Custom Exists at Supervisory Level:

a. Sgt. Quania Rios (supervising Det. Levy) - failed to intervene

b. Sgt. Jonathan Baez (supervising Quirk, Caruso, DePalma) - ratified through inaction

c. Sgt. Michael Mullroy (supervising Noto, Oconnell, Cahill) - acknowledged violations but failed to act

d. • Lt. Delbado (IAB) - acknowledged violations but never returned contact

e. • All IAB investigations closed despite admitted misconduct Am. Compl. ¶118.

This supervisory ratification demonstrates the custom exists at institutional level, not just among line officers. See *Monell, 436 U.S. at 694* (custom can be established through systematic practices).

3. Failure to Train Amounting to Deliberate Indifference

The City failed to train NYPD officers on enforcing protective orders for male domestic violence victims despite obvious need.

Under *City of Canton v. Harris, 489 U.S. 378, 390 (1990)*, failure to train constitutes deliberate indifference when:

1) Training inadequacy is obvious
2) Inadequacy likely to result in constitutional violations
3) City failed to act despite obvious need

All three elements are satisfied:

(a) Need for Training Was Obvious:

i. Federal law (VAWA, 18 U.S.C. § 2265) mandates full faith and credit for all protective orders regardless of victim gender

ii. DOJ Investigation (June 2022) specifically identified "gender-biased policing" and "systemic failures"

iii. Multiple officers across two precincts made identical errors regarding enforcement

iv. RCDA official made legally false statement about enforceability Am. Compl. ¶120.

(b) Failure Directly Caused Constitutional Violations:

i. Officers refused to enforce valid FRO based on erroneous belief it was "unenforceable"

ii. Officers used stale, previously-declined complaints without understanding jurisdictional requirements

iii. Officers deleted complaints without understanding evidence preservation obligations Id. ¶121.

(c) City's Deliberate Indifference:

Despite DOJ investigation findings in June 2022, the City took no corrective action. Plaintiff's arrests occurred after the DOJ announced its investigation, demonstrating the City's deliberate indifference to known systemic failures.

4. Policymaker Involvement and Final Authority

These policies and customs were implemented and ratified by officials with final policymaking authority:

<ol type="a">
<li>NYPD Police Commissioner: Final authority over department policies and training</li>
<li>DA Darren Albanese: Chief of Criminal Prosecution with final authority over prosecutorial decisions and office policies; his office publicly honored Evins as "victim" despite certified documentation</li>
<li>Supervisor Courtney Chase: Final authority over Domestic Violence unit policies; refused to notify prosecutors of Plaintiff's FRO Am. Compl. ¶¶122-123.</li>
</ol>

No disciplinary action was taken against any officer or prosecutor despite multiple IAB complaints and documented violations—demonstrating policymaker ratification. Id. ¶123(c).

## F. State Law Claims Are Viable

Plaintiff's state law claims also survive any futility challenge.

### 1. Intentional Infliction of Emotional Distress

Under New York law, IIED requires: (1) extreme and outrageous conduct; (2) intent to cause or reckless disregard for causing emotional distress; (3) causal connection; and (4) severe emotional distress. *Howell v. New York Post Co., 81 N.Y.2d 115 (1993).*

Plaintiff's allegations satisfy all elements:

<ol type="a">
<li>Extreme and outrageous conduct: Arresting domestic violence victim based on fabricated charges from his adjudicated abuser; deleting victim's complaints; defying prosecutorial orders; publicly honoring abuser as "victim."</li>
<li>Intent/reckless disregard: Using stale, previously-declined complaints shows deliberate fabrication; arresting despite direct order not to detain shows intent to harm; seven-hour detention despite overwhelming exculpatory evidence shows reckless disregard.</li>
<li>Causation: Defendant's conduct directly caused Plaintiff's distress.</li>
<li>Severe distress: $375,000 business losses, ongoing anxiety, public humiliation, continuing denial of victim services. Am. Compl. ¶¶192-218.</li>
</ol>

### 2. N.Y. Civil Rights Law § 79-p Violations

Section 79-p protects the right to petition government for redress. Violations occur when governmental actors obstruct access to legal remedies.

Plaintiff alleges systematic obstruction:

<ol type="a">
<li>Refusal to enforce valid FRO (depriving primary legal remedy)</li>
</ol>

b. Deletion of complaints (preventing documentation of violations)

c. Suppression of exculpatory evidence (preventing effective defense)

d. Denial of DV victim services (preventing access to mandated protections) Am. Compl. ¶¶220-244.

These affirmative acts of obstruction violate § 79-p and are independently actionable.

3. Abuse of Process

Abuse of process requires: (1) regularly issued legal process; (2) use with intent to achieve objective outside legitimate scope; and (3) resulting harm. *Curiano v. Suozzi, 63 N.Y.2d 113 (1984).*

Plaintiff alleges defendants used arrest process for improper purposes:

a. Retaliation for winning FRO (Evins filed complaint 4 days after losing trial)

b. Retaliation for IAB complaints (arrest used complaints from Levy's precinct)

c. Punishment for asserting rights (November arrest came after May dismissal)

d. Denial of protective order protections (recasting victim as offender) Am. Compl. ¶¶275-302.

4. New York State Human Rights Law Claims

N.Y. Executive Law § 296 prohibits discrimination in public accommodations and services based on sex and domestic violence victim status.

Plaintiff alleges systematic denial of equal services:

a. Government agencies discriminated in service delivery based on gender

b. Systematic denial of DV victim protections based on male gender

c. Differential enforcement of identical protective orders based on gender Am. Compl. ¶¶129-152.

V. UNDUE DELAY AND PREJUDICE ARGUMENTS FAIL

A. The Twenty-Day Delay Is Minimal and Explained

The Case Management Plan set an October 3, 2025 deadline for amendments. ECF No. 15. Plaintiff filed this motion on October 23, 2025—twenty days late. ECF No. 25.

Courts routinely permit amendments beyond scheduling order deadlines absent prejudice:

"Scheduling orders are not meant to be a draconian process whereby a party who cannot meet a court-imposed deadline is subject to dismissal."

*Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).*

Twenty days is minimal delay, particularly given:

    a. Plaintiff's pro se status (represented to Court on Sept. 3, 2025 that he would proceed self-represented)

    b. Complexity of civil rights litigation with multiple defendants

    c. Early stage of litigation (discovery has not commenced)

    d. Good faith effort to comply (first amendment filed before deadline on Sept. 25, 2025)

B. No Prejudice to Defendant Exists

Prejudice requires showing amendment would:

    a. Require re-doing extensive discovery

    b. Significantly delay trial

    c. Prevent reliance on statute of limitations defense

    d. Require substantial additional preparation

*Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).*

None of these factors exist:

    a. No discovery completed: Parties have exchanged zero discovery

    b. No trial date: Case still in initial stages

    c. No statute of limitations: All claims arise from 2023 incidents (well within limitations periods)

    d. Minimal additional preparation: Individual defendants already on notice through IAB complaints and prior proceedings

The City's claimed "prejudice" is merely the inconvenience of defending against viable claims—not the type of harm justifying denial of amendment.

C. Scheduling Order Deadlines Are Not Jurisdictional Bars

The Case Management Plan deadline is a scheduling matter, not a jurisdictional bar.

"A district court may modify a scheduling order's deadline for 'good cause.'"

*Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) (quoting Fed. R. Civ. P. 16(b)).*

Courts balance:

    a. Length of delay → 20 days (minimal)

    b. Prejudice to non-moving party → None (no discovery completed)

    c.   Explanation for delay → Pro se status, complexity

    d.   Good faith → First amendment filed before deadline

All factors favor Plaintiff.

D. Good Cause Exists for Extension

Plaintiff's need to amend arose from:

    i.    Discovery of additional defendant names through ongoing investigation

    ii.   Receipt of documents clarifying individual officer involvement

    iii.  Development of legal theories through research

    iv.  Pro se status requiring additional time to understand pleading requirements

These constitute good cause for the minimal 20-day extension.

## VI. THE INTERESTS OF JUSTICE REQUIRE AMENDMENT

A. Discovery Will Clarify Remaining Issues

Many of the City's objections concern information uniquely within the City's possession:

    i.    Complete names and badge numbers of "Robley, Green, and Baca"

    ii.   Which specific supervisors approved arrest warrants

    iii.  Training materials (or lack thereof) on male DV victim protection

    iv.  IAB investigation files and findings

    v.   NYPD policies on inter-precinct complaint handling

    vi.  RCDA policies on DV victim services eligibility

Denying amendment would prevent Plaintiff from obtaining this information through discovery. The purpose of discovery is to develop facts supporting the claims. Plaintiff should not be required to know every detail before discovery commences.

B. Serious Constitutional Violations Warrant Full Adjudication

This case involves grave constitutional violations:

    i.    Multiple false arrests based on fabricated evidence

    ii.   Systematic denial of federal protective order rights (VAWA)

    iii.  Active evidence destruction to shield offenders

    iv.  Gender-based discrimination in domestic violence enforcement

    v.   Five-year pattern spanning multiple victims and incidents

    vi.  External validation through DOJ investigation

These allegations warrant full adjudication on the merits, not dismissal on technical pleading grounds before discovery.

The Supreme Court has emphasized that civil rights claims deserve searching examination: "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law."

*Mitchum v. Foster, 407 U.S. 225, 242 (1972).*

Dismissing these serious allegations before discovery would frustrate Congress's intent in enacting § 1983.

C. Pro Se Status Mandates Liberal Construction

*Dluhos* explicitly holds that pro se civil rights plaintiffs "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." *162 F.3d at 69.*

This Court should:

a. Construe Plaintiff's filings liberally

b. Allow amendment to cure any technical deficiencies

c. Permit discovery to develop facts uniquely within City's control

d. Evaluate claims on merits after full factual development

The alternative—dismissing on technical pleading grounds—would deny a documented domestic violence victim his day in court based on his inability to navigate complex federal procedure without a lawyer.

## VII. CONCLUSION

The City's opposition rests on three flawed arguments:

First, the City claims Plaintiff fails to identify specific conduct by individual defendants. This is factually incorrect. Plaintiff's Amended Complaint and Affidavit specifically attribute constitutional violations to Detectives Quirk, DePalma, Levy, Officer Noto, and multiple supervisors. To the extent additional details exist in City records, discovery will reveal them.

Second, the City claims probable cause existed based on complainant statements. This ignores that the "complainant" was an adjudicated domestic violence offender under an active restraining order, filing retaliatory complaints using stale, previously-declined allegations. Detective DePalma proceeded with arrest despite a direct prosecutorial order not to detain and

readily available CCTV footage proving temporal impossibility. Under Panetta, these circumstances "raise doubt" and defeat probable cause.

Third, the City claims this is a "failure to investigate" case. This mischaracterizes Plaintiff's allegations of active evidence fabrication, active evidence destruction, discriminatory enforcement based on gender, and defiance of prosecutorial authority—all affirmative constitutional violations.

The City's opposition also completely fails to address:

1. Monell claims supported by DOJ investigation
2. Equal Protection claims with direct comparative evidence
3. Five-year pattern spanning multiple victims
4. July 13-14, 2022 differential enforcement incident
5. State law claims that are independently viable

As to delay and prejudice: twenty days beyond a scheduling order deadline, in the earliest stages of litigation, before cpmpletion of discovery, causes no prejudice to the City. Courts routinely grant such amendments, particularly for pro se civil rights plaintiffs.

The interests of justice strongly favor amendment. A documented domestic violence victim alleges systematic denial of federal protections, multiple false arrests based on fabricated evidence, active evidence destruction, and gender-based discrimination validated by a DOJ investigation. These serious allegations deserve full adjudication on the merits, not dismissal on technical grounds before discovery.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. DENY Defendant City of New York's opposition to Plaintiff's motion for leave to amend;
2. GRANT Plaintiff leave to file Second Amended Complaint (or alternatively, grant leave to file Third Amended Complaint curing any remaining pleading deficiencies identified by the Court);
3. ALLOW DISCOVERY to proceed so Plaintiff may develop evidence within Defendant's exclusive possession;
4. ORDER that the Case Management Plan be modified to accommodate the amended pleading and subsequent discovery schedule;
5. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 7, 2025

*Clayton Howard*
Clayton Howard
Plaintiff Pro Se
24 Orchard Street
Carteret, New Jersey 07008
itsclaytonhoward@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, a true and correct copy of the foregoing Memorandum in Opposition to Defendant City of New York's Opposition to Plaintiff's Second Motion for Leave to Amend Complaint was filed electronically via the Court's ECF system and served via ECF on:

Anumeha Tanya, Senior Counsel
Office of the Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007
atanya@law.nyc.gov

*Clayton Howard*
Clayton Howard
Plaintiff Pro Se