Clayton Howard
24 Orchard Street
Carteret, New Jersey 07008
(929) 781-7791
itsclaytonhoward@gmail.com

March 4, 2026

**BY ECF**

Honorable Lara K. Eshkenazi
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Clayton Howard v. City of New York, et al.*, 24-CV-8316 (KAM) (LKE) — Plaintiff's Opposition to Defendant's Request for 120-Day Discovery Extension and Cross-Application for Definitive Compliance Deadline with Sanctions Warning

Your Honor:

    Plaintiff Clayton Howard, proceeding pro se, respectfully submits this letter in opposition to the March 4, 2026 letter-application of Defense Counsel Anumeha Tanya, Esq. (ECF No. 52), seeking a further extension of the fact discovery deadline until July 6, 2026. Plaintiff further requests that this Court impose a firm, non-extendable deadline for Defendant City of New York's compliance with outstanding interrogatories served in October 2025, and that the Court warn Defendant that continued non-compliance will result in sanctions pursuant to Fed. R. Civ. P. 37(b) and 37(d).

## I. PRELIMINARY STATEMENT

    Defense Counsel's letter conspicuously omits the most material facts before this Court: Plaintiff served his First Set of Interrogatories on October 9, 2025, and Supplemental Interrogatories on October 27, 2025 — nearly five months ago. Defendant has not substantively responded to either set. Rather than explain this delinquency, Defense Counsel characterizes Plaintiff's active prosecution of this case as a source of complexity, while seeking yet another extension without acknowledging the history of non-compliance.

    Defense Counsel's letter further attempts to reframe Plaintiff's carefully structured and evidence-backed discovery requests as excessive in number and scope. That characterization is factually inaccurate and legally baseless. Plaintiff's October 2025 discovery consisted of twenty-five (25) interrogatories in his First Set directed to Defendant, followed approximately three

weeks later by two targeted Supplemental Requests each directed to specific named individuals — Courtney Chase, McKenzie Upshaw, and Lisa Thompson — whose involvement Plaintiff had independently corroborated through police reports, audio and video recordings, and FOIL disclosures prior to serving any request. Both the First Set and the Supplemental Requests are facially compliant with Fed. R. Civ. P. 33 in all material respects, as detailed in Section IV below and as demonstrated by the interrogatories themselves, submitted herewith as Exhibit C. Defense Counsel's aggregation of these separate, targeted requests into a single inflated number is a rhetorical device designed to obscure Plaintiff's diligence and manufacture a narrative of burden that the actual record does not support.

Defense Counsel's letter also falsely implies that Plaintiff's interrogatories directed toward non-party actors — specifically the Richmond County District Attorney's Office — are improper. That representation is incorrect as a matter of law. Plaintiff further notes that Defense Counsel states this is Defendant's "first" extension request; however, Defendant has already received at least four (4) informal extensions voluntarily granted by Plaintiff — none of which Defendant honored. That history of noncompliance constitutes bad faith and warrants judicial intervention.

## II. PROCEDURAL HISTORY OF DEFENDANT'S NON-COMPLIANCE

The chronology of Defendant's delinquency is as follows:

a. October 9, 2025: Plaintiff served First Set of Interrogatories on then-counsel Jonathan Hutchinson, Esq.

b. October 27, 2025: Plaintiff served Supplemental Interrogatories concerning named Defendants Courtney Chase, Lisa Thompson, and McKenzie Upshaw.

c. November 2025: Pursuant to Fed. R. Civ. P. 33(b)(2), Defendant's responses were due within thirty (30) days. Defendant served only a partial, inadequate sectional response, failing to address the substance of Monell-related interrogatories.

d. Second Week of January 2026: Agreed extended deadline, reached during a good-faith meet-and-confer with newly assigned Defense Counsel Anumeha Tanya, Esq. — missed.

e. Extensions Two Through Four: Plaintiff extended additional professional courtesies on at least three further occasions upon Defense Counsel's request — all missed without substantive compliance.

f. March 4, 2026: Defense Counsel now seeks an additional 120-day extension until July 6, 2026 — while describing this as Defendant's "first" request to the Court.

Should Defendant's requested extension be granted in full, Defendant would not be obligated to respond to interrogatories served in October 2025 until nearly ten (10) months after service. This outcome is incompatible with the expeditious resolution of civil litigation under

Fed. R. Civ. P. 1, which directs courts to construe the Federal Rules to "secure the just, speedy, and inexpensive determination of every action."

### III. DEFENDANT'S JUSTIFICATION FOR THE EXTENSION IS WITHOUT MERIT

Defense Counsel asserts that the pending amended complaint requires additional time to formulate discovery responses. This justification is unavailing for several reasons.

First, Plaintiff's October 2025 interrogatories are directed at identifying persons with knowledge of the events at issue, the facts underlying Plaintiff's § 1983 conspiracy and Monell claims, and specific incidents of misconduct — categories of interrogatories expressly authorized at the outset of discovery under Local Civil Rule 33.3(a) of the Eastern and Southern Districts of New York. These requests have not been rendered inapplicable by the filing of an amended complaint. The core claims, the named individual defendants, and the underlying pattern of conduct all remain materially unchanged.

Second, the filing of an amended complaint does not toll or restart a party's discovery obligations with respect to interrogatories already served. See *Guzman v. City of New York*, No. 11-cv-admirably (S.D.N.Y.); see also *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (discovery obligations exist independently of pleading amendments absent a court order resetting the schedule). Defendant cites no authority for the proposition that a pending amended complaint relieves it of its obligation to answer previously served interrogatories.

Third, that Plaintiff has served additional discovery requests on March 1, 2026 — twenty-five (25) interrogatories directed to Defendant and additional requests directed to non-parties — is not true. Defense counsel contacted the Plaintiff and asked he resend the interrogatives he provided counsel months prior again, which counsel deceptively omitted from her narrative. Misplacing interrogatives counsel has made multiple promises to provide over four (4) months does not justify withholding the responses to the October 2025 interrogatories. These are not separate and independent discovery requests, they are the same interrogatives sent in October 2025, and they have not changed. Defendant's obligation to answer the October requests has existed for months and is not affected because counsel may have misplaced a previous email which provided the original requests. The parties have met and conferred, and multiple extensions have been granted.

### IV. DEFENSE COUNSEL'S CHARACTERIZATION OF PLAINTIFF'S INTERROGATORIES AS EXCESSIVE IS MISLEADING AND LEGALLY BASELESS

A. The Actual Scope of Plaintiff's October 2025 Discovery Requests

Defense Counsel's letter implies that the volume of Plaintiff's discovery requests — cited in aggregate across multiple separate sets and time periods — renders them excessive or burdensome. This framing is misleading and should be rejected. A careful accounting of Plaintiff's October 2025 requests reveals measured, targeted, and entirely appropriate discovery

by a pro se civil rights plaintiff diligently prosecuting claims of municipal liability and conspiracy.

On October 9, 2025, Plaintiff served his First Set of Interrogatories upon then-counsel Jonathan Hutchinson, Esq. That set consisted of twenty-five (25) interrogatories directed to Defendant City of New York, seeking information about the policies, practices, personnel, and incidents underlying Plaintiff's § 1983 and Monell claims. Twenty-five interrogatories constitute a single, properly structured set of requests entirely consistent with the permissible scope of civil rights discovery at the outset of the discovery period.

Approximately three weeks later, on October 27, 2025, Plaintiff served two separate Supplemental Requests — each directed specifically to a discrete group of individuals whose conduct Plaintiff had, through independent investigation, identified as directly relevant to the conspiracy alleged in this action. The first Supplemental Request concerned Defendants Courtney Chase and McKenzie Upshaw. The second concerned Defendant Lisa Thompson. These were not a single omnibus request but two targeted supplemental sets, each directed at specific named individuals whose involvement Plaintiff had independently corroborated through police reports, audio and video recordings, and FOIL requests. Plaintiff's decision to serve these requests in supplemental form — rather than burying them in a single undifferentiated document — reflects careful, organized litigation practice, not an attempt to burden Defendant.

The October 2025 discovery requests therefore consisted of: (1) one set of twenty-five (25) interrogatories to the City, and (2) two supplemental requests directed at three individuals. The full text of both sets is attached hereto as Exhibit C. Defense Counsel's attempt to aggregate these separate, targeted requests and characterize them collectively as excessive is without merit. The Federal Rules impose no presumptive cap on interrogatories absent a court order. See Fed. R. Civ. P. 33(a)(1) (limiting each party to twenty-five interrogatories per set absent leave of court or stipulation, but not restricting supplemental requests directed to different individuals or matters). As demonstrated in Section IV-D below, the requests attached as Exhibit C are facially compliant with the Federal Rules in every respect and raise no proper basis for objection — let alone for five months of total non-response.

B. The Supplemental Requests Are Justified by Plaintiff's Independent Discovery of Direct Evidence

The supplemental interrogatories directed to Courtney Chase, McKenzie Upshaw, and Lisa Thompson were not speculative or exploratory. Plaintiff had, prior to serving those requests, independently gathered direct evidence of Defendants Chase's and Upshaw's participation in the conduct underlying this action. That evidence — developed through Plaintiff's own investigation of police reports, audio recordings, video recordings, and FOIL disclosures — established sufficient factual basis to include Chase and Upshaw as named parties to the § 1983 conspiracy alleged herein. Lisa Thompson was similarly identified through the same investigative process as having knowledge of and involvement in the events at issue.

Far from demonstrating excess, the supplemental requests demonstrate precisely the kind of diligent, evidence-based litigation conduct that courts expect of civil rights plaintiffs who are working to identify the full scope of institutional wrongdoing. Plaintiff did not serve speculative interrogatories hoping to uncover misconduct through blind discovery. He had already uncovered direct evidence of misconduct through his own efforts and sought Defendant's responses to confirm, contextualize, and further develop that evidence for purposes of the litigation. This is the proper and intended purpose of civil discovery. See *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (discovery serves to allow parties to obtain the fullest possible knowledge of the facts before trial).

The irony of Defense Counsel's framing is not lost on this Court. Plaintiff — a pro se litigant — has undertaken the investigative work that the discovery process is designed to facilitate, developed independent corroboration of his claims, and named additional defendants based on that evidence. Defendant, the institutional party with access to counsel and the full resources of the New York City Law Department, has failed for five months to answer twenty-five straightforward interrogatories. Defense Counsel's effort to recast Plaintiff's diligence as the source of complexity in this case inverts the actual record.

C. Defendant's Delay Has Itself Expanded the Scope of Necessary Discovery

To the extent that this litigation has grown in scope since October 2025, that expansion is a direct consequence of Defendant's failure to respond to Plaintiff's original interrogatories. Had Defendant timely answered the First Set of Interrogatories, Plaintiff would have had access to information about the identity and conduct of relevant City employees. Instead, Plaintiff was forced to develop that information independently — a process that led to the identification of additional individuals now named in the amended complaint. Defendant cannot simultaneously obstruct discovery and then complain that the resulting investigation has grown larger than anticipated.

Courts in this Circuit have recognized that a party cannot manufacture a basis for an extension by contributing to the conditions that necessitate it. Where a defendant's own delay has expanded the scope of a plaintiff's investigative burden, that delay does not constitute good cause for further extension — it is itself an additional ground for the imposition of sanctions. See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). The Court should reject Defendant's effort to use the consequences of its own noncompliance as justification for further delay.

D. Plaintiff's Interrogatories Are Facially Compliant with the Federal Rules and Appropriate for Submission to Defendant — Exhibit C

To foreclose any further dispute about the propriety of the October 2025 interrogatories, Plaintiff respectfully directs the Court's attention to Exhibit C, appended hereto, which contains the full text of both the First Set of Interrogatories served October 9, 2025 and the Supplemental Interrogatories served October 27, 2025. A review of those requests confirms that they are

facially compliant with Fed. R. Civ. P. 33 in all material respects and fall squarely within the permissible scope of civil rights discovery. The following analysis addresses each dimension of compliance.

*1. Governing Standard Under Rule 33*

Fed. R. Civ. P. 33(a) authorizes a party to serve written interrogatories related to any matter discoverable under Fed. R. Civ. P. 26(b)(1), which includes inquiries into facts relevant to claims or defenses, including the identification of individuals potentially liable for the alleged conduct. Each party may serve up to twenty-five interrogatories per set, including discrete subparts, unless otherwise permitted by the court. Courts interpret Rule 33 broadly to facilitate fact-finding rather than hinder it. In *Canuso v. City of Niagara Falls*, 8 F.R.D. 285 (W.D.N.Y. 1945), the court held that interrogatories should be permitted as broadly as deposition inquiries, particularly in suits involving municipal entities.

*2. Scope and Relevance of the October 9, 2025 First Set*

The interrogatories in Plaintiff's First Set directed to the City concern NYPD policies, disciplinary histories, investigation materials, and the identification of involved personnel. These topics fall squarely within the permissible scope of Rule 33, as they seek information directly relevant to whether City employees participated in or concealed a conspiracy actionable under 42 U.S.C. § 1983 and whether the City maintained policies or customs giving rise to Monell liability. Similar discovery was upheld in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), where the Supreme Court confirmed that the scope of discovery extends to facts reasonably calculated to identify potential defendants and establish the basis for liability.

The First Set directed twenty-five (25) interrogatories to the City — precisely the number authorized under Rule 33(a)(1) for a single party without leave of court. Plaintiff's requests were not overbroad or compound in the manner condemned by courts in this Circuit. Each interrogatory was focused on a discrete factual topic. Overbroad or compound questions combining distinct topics in a single interrogatory may be deemed excessive under *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 491 (W.D.N.C. 1998). Plaintiff's interrogatories do not implicate that concern.

*3. Scope and Relevance of the October 27, 2025 Supplemental Requests*

The October 27, 2025 Supplemental Requests are directed at the identification and conduct of specific municipal employees — Courtney Chase, McKenzie Upshaw, and Lisa Thompson — in their individual capacities as participants in the alleged conspiracy. Interrogatories seeking the identification and role of other municipal employees are entirely appropriate where they are designed to determine the scope of a conspiracy or the existence of supervisory liability. The Second Circuit has affirmed this category of discovery under *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 131 (2d Cir. 2004), which expressly

recognized a plaintiff's right to obtain discovery regarding the roles of multiple government employees in alleged civil rights violations.

Plaintiff's supplemental requests are directed at specific, already-identified individuals whose involvement Plaintiff has independently corroborated — not at unknown persons or speculative actors. This targeted approach is the opposite of a fishing expedition and demonstrates precisely the kind of proportionate, evidence-anchored discovery that Rule 26(b)(1) is designed to facilitate. See *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999) (distinguishing permissible targeted discovery from impermissible speculative investigation).

### 4. Procedural Compliance

Plaintiff confirms that the October 9, 2025 First Set contains twenty-five (25) interrogatories directed to Defendant City of New York — the maximum permissible without leave of court — and that the October 27, 2025 Supplemental Requests are directed not at the City in its institutional capacity but at specific named individuals relevant to the § 1983 conspiracy. Each interrogatory is focused on a single factual topic; none improperly combines distinct subjects in a manner that would implicate the compound-question doctrine. The requests, as a whole, are procedurally proper and enforceable as served. Defendant has not raised any specific objection to the form or content of a single interrogatory in five months of non-compliance — an omission that independently establishes that Defendant has no substantive objection to the requests and is simply refusing to answer them.

### 5. Enforcement Authority

Where a party fails to respond to facially proper interrogatories without objection, the full force of Fed. R. Civ. P. 37 is available to compel compliance and impose sanctions. In *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991), the Second Circuit upheld monetary sanctions and orders compelling compliance after a party's unjustified delay in serving discovery responses. *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852 (2d Cir. 1995) sustained case-ending sanctions where repeated disobedience violated discovery deadlines. These authorities confirm that this Court has both the basis and the power to impose a firm compliance deadline and escalating sanctions if Defendant continues to withhold responses to requests that are, on their face, unimpeachably proper.

## V. INTERROGATORIES DIRECTED TO NON-PARTY ACTORS ARE LEGALLY PERMISSIBLE

Defense Counsel's characterization of Plaintiff's interrogatories directed to the Richmond County District Attorney's Office as problematic misrepresents the scope of permissible discovery under the Federal Rules.

Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery of any non-privileged matter that is relevant to any party's claim or defense. Discovery requests need not be limited to

information about named parties — they may encompass information held by or concerning non-parties where that information is relevant to the claims at issue. See *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991).

Plaintiff's § 1983 conspiracy and Monell claims necessarily involve the conduct of individuals and agencies that may not yet be named defendants but who are alleged to have participated in coordinated misconduct. The Second Circuit has recognized that in cases alleging civil rights conspiracies, the scope of relevant discovery is broad. See *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996). Discovery into the conduct of the Richmond County District Attorney's Office — including employees who may have participated in, ratified, or concealed the misconduct alleged — directly relates to Plaintiff's claims and is appropriate under Fed. R. Civ. P. 26(b)(1) and 33(a)(2).

Courts in this District have repeatedly affirmed that interrogatories seeking the identity of persons with relevant knowledge, the facts underlying claims, and specific incidents are permitted at the outset of discovery, even where non-parties are implicated. See Local Civil Rule 33.3(a); *Morales v. City of New York*, No. 14-cv-7253 (EDNY 2016).

## VI. DEFENDANT'S CONDUCT CONSTITUTES A PATTERN OF BAD FAITH WARRANTING SANCTIONS

The record before this Court reflects a sustained pattern of deliberate delay that has materially prejudiced Plaintiff's ability to prosecute his civil rights claims. The Second Circuit and courts within this District have repeatedly held that precisely this type of conduct — serial missed deadlines, hollow promises of future compliance, and misrepresentations to the Court regarding the history of non-compliance — warrants escalating judicial intervention up to and including default. The authority supporting sanctions here is substantial.

A. The Legal Standard for Rule 37 Sanctions

Under Fed. R. Civ. P. 37(d), a court may impose sanctions where a party fails to serve answers to interrogatories served under Rule 33. Such sanctions may include orders establishing facts, striking pleadings, staying proceedings, dismissing the action, or rendering a default judgment. Under Fed. R. Civ. P. 37(b)(2)(A), where a party fails to obey an order to provide discovery, the court may impose any of the same measures. Under either provision, the award of reasonable expenses is mandatory absent substantial justification. Fed. R. Civ. P. 37(b)(2)(C), 37(d)(3).

The Second Circuit has identified the standard for the imposition of severe Rule 37 sanctions: the court considers (1) the willfulness of the non-compliant party or its reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance. See *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). Applied here, all four factors weigh in favor of sanctions. Defendant has offered no credible

reason for its prolonged failure; lesser sanctions (repeated professional extensions) have plainly proved ineffective; the period of noncompliance spans nearly five months; and this letter serves as formal notice of the consequences should noncompliance continue.

B. A Pattern of Inexcusable Delay Independently Justifies Sanctions

The Second Circuit has long held that a pattern of inexcusable delay and disobedience of discovery obligations independently supports the imposition of Rule 37 sanctions, even absent a finding of explicit bad faith. See *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988) (affirming sanctions where party's pattern of inexcusable delay and disobedience demonstrated disregard for discovery obligations). The court in Hull observed that it is not necessary to show subjective bad faith where the pattern of conduct itself demonstrates a failure to comply that prejudices the opposing party and burdens the court.

Here, Defendant has missed no fewer than four agreed deadlines over a period of five months. Each instance of non-compliance was followed not by corrective action but by a new request for additional time. This is the paradigmatic pattern of inexcusable delay that Hull and its progeny address. The fact that Defendant now characterizes its first formal court application for an extension as the totality of its requests — while omitting the four informal extensions voluntarily granted by Plaintiff — compounds the prejudice and underscores the lack of good faith.

C. Repeated Failure to Meet Discovery Deadlines Supports Default-Level Sanctions

The Second Circuit has affirmed the imposition of default judgment as a sanction where a party repeatedly fails to comply with discovery deadlines. See *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144-48 (2d Cir. 2010) (affirming default sanctions after district court found repeated, willful failure to comply with discovery orders; rejecting argument that lesser sanction was required where prior measures proved ineffective). While Plaintiff does not seek default at this stage, Southern New England Telephone establishes that the Court has full authority to impose such relief if Defendant continues to defy its obligations — and that the prior award of lesser relief does not foreclose that remedy.

Plaintiff respectfully submits that the Court should now impose a firm, non-extendable deadline and provide explicit notice that default or issue-preclusion sanctions will follow any further non-compliance. The logic of Southern New England Telephone supports structuring relief in this graduated fashion: the Court establishes a last-chance deadline now, with escalating consequences clearly stated, so that no further extension can be sought without a demonstration of good cause not previously offered.

D. Gross Negligence or Bad Faith in Discovery Is Sufficient — Willfulness Not Required

Defendant may argue that its noncompliance does not rise to the level of willfulness. The Second Circuit has squarely rejected the argument that only willful misconduct supports severe Rule 37 sanctions. In *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*,

602 F.2d 1062, 1068 (2d Cir. 1979), the court held that gross negligence in meeting discovery obligations is sufficient to justify the most severe sanctions available under Rule 37, including dismissal or default. The court reasoned that parties have an affirmative obligation to prosecute discovery diligently, and that persistent failure to meet that obligation — regardless of subjective intent — is incompatible with the orderly administration of justice.

Defendant's failure to respond to interrogatories for five months, across four missed deadlines, and in the face of Plaintiff's good-faith accommodations, satisfies the gross negligence standard of Cine Forty-Second Street at a minimum. Even if Defendant were to argue that each individual failure was inadvertent, the cumulative effect of these failures is precisely the kind of sustained disregard for discovery obligations that the Second Circuit found sufficient in Cine Forty-Second Street to justify severe sanctions.

E. Flagrant and Repeated Noncompliance Warrants Rule 37 Sanctions

The Second Circuit has confirmed that flagrant and repeated discovery noncompliance warrants the imposition of sanctions under Rule 37. See *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-53 (2d Cir. 1995) (affirming Rule 37 sanctions where party's conduct was characterized by repeated, flagrant noncompliance with discovery obligations). The court in Bambu Sales emphasized that the trial court has broad discretion to fashion appropriate sanctions and that the reviewing court will affirm where the record demonstrates a clear pattern of disregard for discovery obligations.

The facts here satisfy Bambu Sales. Defendant has had Plaintiff's First Set of Interrogatories in its possession for nearly five months. It has missed four agreed deadlines. It has offered as justification for the latest request a legal theory — that a pending amended complaint excuses compliance with previously served interrogatories — that has no support in the Federal Rules or Second Circuit precedent. Its application to this Court describes the situation as a first-time request, obscuring this entire history. Under Bambu Sales, this record independently warrants the imposition of sanctions, and the Court should so hold.

F. Defendant's Noncompliance Directly Impairs Plaintiff's Monell Investigation

The stakes of Defendant's delay extend beyond procedural noncompliance. Plaintiff's outstanding interrogatories are the primary vehicle through which Plaintiff seeks to develop his theory of Monell municipal liability — a claim that requires evidence of official policies, widespread practices, and the conduct of supervisory personnel within the City of New York. See *Monell v. Dep't of Social Services of New York*, 436 U.S. 658 (1978). The Second Circuit has recognized that establishing Monell liability requires precisely the type of fact-intensive discovery that Defendant has withheld. See *Jeffes v. Barnes*, 208 F.3d 49, 57-61 (2d Cir. 2000).

Defendant's strategy of delay has the practical effect of depriving Plaintiff of the discovery necessary to establish municipal liability before the close of fact discovery. Every additional extension granted to Defendant is a corresponding erosion of Plaintiff's ability to build

an evidentiary record sufficient to survive summary judgment. Courts have specifically recognized that prejudice to the opposing party is a central factor in the sanctions analysis and that loss of the ability to develop the factual record constitutes cognizable prejudice. See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

## VII. PLAINTIFF'S REQUEST FOR RELIEF

For the foregoing reasons, and in light of the controlling Second Circuit authority establishing that Defendant's conduct satisfies every standard for the imposition of Rule 37 sanctions — from gross negligence under Cine Forty-Second Street to flagrant repeated noncompliance under Bambu Sales to pattern of inexcusable delay under Hull — Plaintiff respectfully requests that the Court enter an Order:

1. DENY Defendant's request for a 120-day extension of the fact discovery deadline (ECF No. 52), which is excessive, unsupported by good cause, and represents the continuation of a pattern of non-compliance that has already stretched five months beyond the original response deadline;

2. COMPEL Defendant to serve full, complete, and verified answers to Plaintiff's First Set of Interrogatories (served October 9, 2025) and Supplemental Interrogatories (served October 27, 2025) within thirty (30) days of the entry of the Order, with no further extensions permitted absent a showing of extraordinary cause not previously offered to this Court;

3. WARN Defendant, consistent with *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298 (2d Cir. 2009) and *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010), that failure to comply with the Court's Order within the time prescribed will result in the imposition of sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A), including but not limited to: (a) an order establishing as fact that Defendant maintained no lawful policy, practice, or training sufficient to prevent the civil rights violations alleged; (b) an order striking Defendant's affirmative defenses in their entirety; (c) an order of default judgment on the issue of Monell liability; or (d) such other relief as the Court deems just;

4. AWARD Plaintiff his reasonable costs and expenses — including the time and resources expended in briefing this opposition and prior meet-and-confer efforts — pursuant to Fed. R. Civ. P. 37(a)(5) and 37(d)(3), given that Defendant has not offered and cannot offer substantial justification for its months-long failure to respond; and

5. GRANT such other and further relief as this Court deems just and proper in light of the full record of Defendant's noncompliance.

Plaintiff acknowledges this Court's preference for resolving discovery disputes informally where possible. Plaintiff has honored that preference through four voluntary extensions over five months. The record now before the Court demonstrates that informal resolution is no longer practicable. Defendant has shown, by its conduct, that it will continue to delay absent a firm judicial order with meaningful consequences attached. Plaintiff respectfully urges the Court to exercise its full authority under Rule 37 and the controlling Second Circuit precedents cited herein to protect Plaintiff's right to prosecute his civil rights claims and to vindicate the integrity of this Court's scheduling order.

<u>Exhibits Submitted Herewith:</u>

Exhibit A: Correspondence with Jonathan Hutchinson begining October 9, 2025

Exhibit B: Correspondent with Amumeha Tanya

Exhibit C: Plaintiff's First Set of Interrogatories (October 9, 2025) and Supplemental Interrogatories (October 27, 2025) — submitted to demonstrate facial compliance with Fed. R. Civ. P. 33

Respectfully submitted,

*Clayton Howard*
_____
Clayton Howard

Plaintiff Pro Se

24 Orchard Street

Carteret, New Jersey 07008

(929) 781-7791

itsclaytonhoward@gmail.com

cc: VIA ECF and Email
　　Anumeha Tanya, Esq., Senior Counsel, NYC Law Department