*** Filed ***
02:44 PM, 21 Sep, 2026
U.S.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CLAYTON HOWARD, No. 1:24-cv-08316 (KAM)(LKE)
Plaintiff,

- against -

THE CITY OF NEW YORK;
JOSEPH QUIRK;
CHRISTOPHER ROBLEY;
MATTHEW DePALMA; and
JOHN and JANE DOE 1-10,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DECLARATION OF CLAYTON HOWARD IN SUPPORT OF AN ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER**

I, Clayton Howard, declare under penalty of perjury under 28 U.S.C. § 1746:

1. I am the plaintiff. I appear pro se. What I say here I know myself, or I take from records the City produced, from records produced to me in criminal discovery in People v. Howard, Docket No. CR-016768-26BX (Bronx County Criminal Court), from letters I sent and received, and from recordings I made of my own telephone calls with members of the Department. The exhibits are true copies.

2. This application is made on notice. On September 21, 2026, I served these papers by electronic mail on Anumeha Tanya, Esq., counsel for the City, and on the Corporation Counsel at 100 Church Street. Fed. R. Civ. P. 65(b)(1)(B); Local Civil Rule 6.1(d). I have not asked any other judge for this relief.

3. I ask for one thing. Before the Department arrests me again on a complaint by Francyna Evins or Dimonic Smith, I ask that it check the registry, confirm whether any order was served on me, have a supervisor review it in writing, and prepare the domestic incident

report the statute already requires. I am not asking the Court to stop either woman from calling the police or filing a petition. They have that right and I do not contest it.

**What the Department's own records show**

4. Ms. Evins and Ms. Smith have made at least twelve complaints or domestic incident reports against me since March 2022, at the 52nd, 75th, 78th, 120th and 123rd Precincts. Four of them ended with me in custody. None ended in a conviction.

5. In June and July 2022, the NYPD Legal Bureau told the 123rd Precinct in writing that my social-media posts were not violations of an order of protection. Both complaints were reclassified UNFOUNDED. I-card I2022034907 was cancelled with the words "NO LONGER WANTED / NO PROBABLE CAUSE TO ARREST." About eighty-five minutes after that advice, the same precinct activated a probable-cause I-card, I2022036076, for the same kind of conduct. Exhibit G.

6. On December 1, 2022, a New Jersey judge dismissed Ms. Evins’s domestic violence complaint, finding that her allegation of domestic violence "has not been substantiated." Four days later she walked into the 120th Precinct. The Department classified her complaint as a false report, Penal Law § 240.50, and recorded that no order of protection was in effect. That complaint generated I-card I2022063718, which the records describe as "SYSTEM GENERATED," charged as felony criminal contempt. It produced my May 16, 2023 arrest. Those charges were dismissed and sealed. Exhibits B and G.

7. My May 18, 2023 arrests came from two I-cards, I2023025176 and I2023025180, that the records also describe as "SYSTEM GENERATED," with no investigating officer named and narratives that read "N/A; N/A; N/A."

**What the District Attorney's office knew before the November 17, 2023 arrest**

8. On September 8, 2023, at 2:25 p.m., Darren Albanese, Executive Assistant District Attorney for Criminal Court Operations and Professional Development at the Office of the Richmond County District Attorney, 130 Stuyvesant Place, Staten Island, wrote by electronic mail to my then-counsel John J. Rapawy, Esq., under the subject line "People v. Clayton Howard." Mr. Rapawy forwarded that email to me the next morning, September 9, 2023, at 10:31 a.m. Exhibit S.

9. Mr. Albanese wrote that he had "received word from Courtney Chase and ADA Gabriella Giovinazzo of a request for my office to review more closely the case against your client, Mr. Clayton Howard." He described the matter as "allegations of Aggravated Harassment involving a former intimate partner, Francyna Evins." He then wrote:

a. "My understanding is that there have been prior allegations and prior arrests where Ms. Evins was arrested."

b. "It was also brought to my attention that Mr. Howard currently has a family court order of protection issued in Essex County, NJ, against Ms. Evins, and that Ms. Evins is currently facing felony charges of Burglary pertaining to an incident where Mr. Howard is the complainant."

c. "ADA Giovinazzo and I are going to be personally looking into these allegations, including reaching out to the appropriate individuals from Essex County."

10. He closed by asking my counsel for anything from the Essex County proceedings that would help his office "make a decision consistent with our efforts to pursue fairness, justice, and equity." Exhibit S.

11. So as of September 8, 2023 the prosecutor's office had in writing, from its own executive, the three things that bear on Ms. Evins's credibility: that she had made prior allegations and had been arrested; that I held a Family Court order of protection against her, issued in Essex County, New Jersey; and that she was facing felony burglary charges in a case in which I was the complainant.

12. The charges then pending against me were dismissed on October 30, 2023.

13. On November 16, 2023, an Assistant District Attorney told the 120th Precinct to "hold off from picking up the subject due to further investigation and video for the case." I was arrested the next day, November 17, 2023, inside the Staten Island Family Court, by Detective Matthew DePalma, on a complaint by Ms. Evins. The Department's own entry for that arrest reads "DP RELEASED." No accusatory instrument was ever filed. I was released that evening at about 5:30 p.m.

14. The arrest came after the Executive Assistant District Attorney wrote that he was personally looking into Ms. Evins's allegations, after the charges arising from her earlier allegations were dismissed, and the day after an Assistant District Attorney told the precinct not to pick me up. It happened anyway.

15. On March 28, 2024, I reported to the 75th Precinct that Ms. Smith had admitted filing false reports against me. The Department recorded it as DIR 2024-075-03367 with "Associated Complaint: 0." No complaint was generated. Nothing was investigated. Exhibit O.

What members of the Department said to me on recorded calls

16. In December 2023 I recorded three of my own telephone calls with members of the Department. I was a party to each call. The recordings were transcribed by Rev.com and the

transcripts were exported on September 20, 2026. The transcripts are true and accurate copies of what was said. Exhibits T, U and V.

17. **December 6, 2023, 12:45 p.m. — Lieutenant Delbado, 120th Precinct.** I told him what I was asking for: "I just want the respect that I'm supposed to get as the victim with this order of protection, which your precinct will not give me." I told him I had "never actually been interviewed by one officer from the DV unit," and that I had "had multiple violations against this woman." Exhibit T.

18. I told Lieutenant Delbado that my complaints were disappearing. I said I had filed a complaint weeks earlier after Ms. Evins had me falsely arrested; that I returned to the precinct for the report number and "there's no record of the report number"; that I gave the desk sergeant the pink copy to prove I had been there; and that "they cannot find the complaint number, which probably means it disappeared like all the other ones I filed against her." He answered: "Well that's definitely, I, I don't think it disappeared. I'm sure because, I mean if it did, that would be a problem." I told him, "This isn't the first time sir. It happened a couple of times." Exhibit T.

19. I described the November 17, 2023 arrest to him. I said: "I literally got picked up in family court because this woman said that I threatened her outside the family court and despite the fact that the family court has, has 22 cameras around the building, uh, Detective DePalma arrested me anyway and never checked the camera footage." I told him that two of my attorneys had called the detective squad and asked how the arrest was made with no proof and no footage, and that the answer was: "she made a complaint. We had to arrest him." Exhibit T.

20. I described the asymmetry to him: "they're locking me up. So I don't under — and they lock me up with no proof. They should lock her up if I have proof and they will not lock her up. They literally ignore it until I call IAB or do something like this, then something happens. I

shouldn't have to do all of that." He answered, "I agree with you." Earlier in the call he had said: "If you have an order of protection and she violates that order of protection, she should be, she should be arrested." He said he was investigating and that he or his sergeant would call me "sometime by next week." No one called. Exhibit T.

21. **December 18, 2023, 10:00 a.m. — Officer Thompson, Domestic Violence Unit.** This call concerned Ms. Smith. I told Officer Thompson that I had been arrested twice by that precinct on Ms. Smith's reports that I had gone to her home, kicked the door and demanded to beat my child; that the charges had since been dismissed; and that I had obtained the camera footage from 893 Schenck Avenue in East New York, which "definitively proved to the court I never went to the house any of these days." I told her I had the footage for an hour before and two hours after each time she alleged, on every date charged — "so a three hour time period, you never see me go." Exhibit U.

22. I told Officer Thompson that I brought that footage to the precinct to file a report for false reporting, "which they actually refused to take." Exhibit U.

23. On that same call, in December 2023, I described the un-served order — the same defect the Department's own domestic incident report would record again on April 29, 2025. I told her that Ms. Smith "filed an order of protection I was never served with," and then "filed a police report to have me arrested"; that the violation was dismissed in February because I had never been served; and that the reason was simple: "you can't arrest me if I haven't been served with an order I don't know about." I then told her what happened next: "I go back in March. What she does is she refiles the exact same police report the day that the judge tells her that we're served, which is March 3rd, she refiles the report." And: "you re-put an iCard on me, even

though the last report was dismissed because I hadn't been served. They were exactly the same. They put another iCard on me, they arrested me." Exhibit U.

24. I described the practice to her in plain terms: "You guys get a report, you lock them up." She answered: "It's not supposed to work like that." Exhibit U.

25. Officer Thompson also described the check the Department runs before an arrest. She said: "we have to run you. Once we run you, we see all your priors. Okay. All your prior reports. So we know what you, and as it's, and if it's domestic, we'll see that you have a prior history with this young lady." That is substantially the step I am asking the Court to require. Exhibit U.

26. She also identified the exact risk this application addresses. She told me I would not be arrested again for the same thing, "But if she makes another false report, then that —". I answered that they would not look, that Ms. Smith had already done it twice and I had been arrested anyway. Ms. Smith made further reports. I was arrested on June 8, 2026. Exhibit U.

27. I told Officer Thompson that I had tried to speak with Detective Robley, who told me to go to the Domestic Violence Unit, and that the Domestic Violence Unit was now telling me to speak to a detective. I told her that on my last visit an officer at the front window "tried to fight me," and that about six officers came out, when the only thing I had asked for was a domestic violence officer. When I said that this was happening to me as a Black man, she answered: "this has nothing to do with race." The Internal Affairs Bureau classified the top allegation in my Log No. 2022-18160 as "PROFILING — RACE/COLOR/ETHNICITY/NATIONAL — BLACK." Exhibit U.

28. **December 19, 2023, 1:56 p.m. — Detective Matthew DePalma**, a defendant in this action and the detective who arrested me on November 17, 2023. I told him that two of my attorneys had told me that "you guys now know I did not threaten her from the footage outside

the courthouse." He did not dispute it. He said: "Mr. Howard, you have to take this up with the, the district attorney's office." Exhibit V.

29. I told Detective DePalma that I had filed a false-report complaint "the day you released me," and what became of it: "That report disappeared. They can't find it. I got the pink copy, but no one can find the report. This is the fifth time it's happened in the precinct." He asked whether I had a report number. I told him none was ever issued. He said it "should be on the pink copy," at "the top on section A ... the top right. Incident number?" I pulled over, looked, and told him: "Nothing there. It's blank." He gave me his address, Matthew.DePalma@nypd.org, and I sent him a copy of the form. Exhibit V.

30. Detective DePalma then described how the matter had reached him: "they take the report downstairs and I get generated off to us." That is the Department's own account, from the detective assigned to my arrest, of cases being generated out of front-desk reports. The investigation cards that produced my arrests are recorded in the Department's files as "SYSTEM GENERATED," with no investigating officer named and narratives reading "N/A; N/A; N/A." Exhibits G and V.

31. I told him why I was calling him instead of filing another complaint: "He's telling me to keep complaining on you guys. I'm going to be honest, DePalma, I don't want to do that. ... But something has to be done if my reports are disappearing." Exhibit V.

What I told the City, and when

32. I filed at least fourteen complaints with the Internal Affairs Bureau between 2022 and 2024: Log Nos. 2022-18045, 2022-18160, 2022-19616, 2023-22720, 2023-23778, 2023-24063, 2023-24365, 2023-33137, 2023-35484, 2023-37436, 2023-37927, 2023-38004, 2024-83 and 2024-791. Exhibit H.

33. The Department classified the top allegation in Log No. 2022-18160 as "PROFILING — RACE/COLOR/ETHNICITY/NATIONAL — BLACK."

34. Log No. 2022-18045 alleged that an officer failed to prepare a complaint report and a domestic incident report. It was closed "Exonerated," and the entry reads "EXONERATED — DISPOSITION SAME AS PREVIOUS LOG."

35. The Bureau counted the pattern itself. Log No. 2023-24063, August 7, 2023: a query "revealed 12 prior logs for the above C/V with similar complaint and allegation." Log Nos. 2023-37927 and 2024-83, December 26, 2023: a query "revealed (27) prior logs."

36. Log No. 2023-23778 was my complaint that a sergeant was not investigating an earlier complaint against two detectives. The Bureau closed my complaint as unfounded. The same log records the sergeant telling me that "a female made an allegation against C/V and therefore an arrest was made."

37. Log No. 2023-35484 records that I was "held in the pct for over 5 hours," lists the Staten Island District Attorney as a subject, and produced a spin-off, Log No. 2023-36156, as a referral to the Department of Investigation.

38. I filed complaints with the Civilian Complaint Review Board that the Board referred into the Department: Nos. 202204601, 202205103, 202306336, 202306674 and 202400074. Exhibit N.

39. By letter dated February 21, 2024, under OIG-NYPD #24-01787, the Inspector General for the NYPD wrote that the office had "determined not to investigate the matter specifically at this time, although we will keep a record of it for information as it relates to the operation, policies, programs, and practices of the NYPD and CCRB." Exhibit I.

40. On October 19, 2025, I wrote to counsel for the City in this action. I said Ms. Smith had filed a new petition in the Bronx Family Court, that her pattern is to file the petition and then the domestic incident complaint, and that I would be arrested. I wrote: "If they are successful, every new false arrest increases liability for the City of New York." I wrote again on October 23, 2025, and again between December 2025 and February 2026. I received no answer to any of it. Exhibit J.

What happened after I gave that notice

41. On April 29, 2025, Ms. Smith made a report to the 52nd Precinct. The domestic incident report records "Order of Protection in effect? NO," records that the Registry and the DIR Repository were not checked, and records her statement that she had an order "but it was not served." The complaint records "Will Prosecute: NO." Exhibit B.

42. On May 2, 2025, Detective Baca called the complainant once, at about 16:00. No one answered. At about 16:15 he ran a database query on me. At about 16:20 he requested a probable-cause I-card, I2025027287. That is twenty minutes after one unanswered call, and before he read the domestic incident report, the 911 record, or the body-worn camera footage, and before he spoke to the complainant. Exhibit C.

43. He did those things six days later, on May 8, 2025. The body-worn camera footage he watched that day shows the complainant saying she had an order "that has not been served." His own interview notes say the same.

44. At about 12:15 that day he called me and asked me to surrender. His entry records that I "threatened to sue me and the NYPD for rights violations." At about 12:20 he issued a wanted flyer. Five minutes. The flyer was renewed on July 30, 2025, September 29, 2025,

November 29, 2025, February 6, 2026 and April 9, 2026. Between May 8, 2025 and June 8, 2026 no investigative step was taken. Exhibit C.

45. On June 8, 2026 — more than seven months after my October 2025 letter to the City's counsel — I walked into the 83rd Precinct to file a report and was arrested on that standing I-card. I was held about three days.

46. The accusatory instrument sworn on June 9, 2026 states the date of the incident as April 29, 2026. The conduct it describes happened, if it happened at all, on April 29, 2025. The order it relies on issued in September 2025. Exhibit D.

47. On September 18, 2026, the criminal court dismissed that case in its entirety, after I produced about thirty public profiles showing that the complainant had published the same images herself. Exhibit A.

What I cannot find out on my own

48. The Department recorded a second arrest number for June 8, 2026: B26630243, "CRIM CONT-1ST ORDER/PROTECTION," status "DP-PENDING." It rests on Complaint No. 2026-052-00870 and I-card I2026005898, from a January 23, 2026 call by Ms. Smith. That complaint records an occurrence date of January 9, 2023, while its domestic incident report is dated January 9, 2026. The 911 record lists the subject as "HOWARD, GRAY." Exhibit E.

49. None of that file has been produced to me. I asked the Bronx County District Attorney in writing to tell me whether the matter was dismissed with the docket, declined, or is still open. I have no answer yet. I do not know today whether an investigation card naming me is active. The City knows. I do not.

Why I need this now

50. Whether I am arrested again has nothing to do with what I do. It depends on whether Ms. Evins or Ms. Smith makes another report, and on what the Department does with it. They have both done it repeatedly, the last time in January 2026, and the Bronx Family Court found reason on August 12, 2026 to order Ms. Smith to stop posting about me. Exhibit K.

51. I gave this notice early, and I gave it to the people who could act on it. In September 2023 the Richmond County District Attorney's own executive wrote that he was personally looking into Ms. Evins's allegations. In December 2023 I said all of it out loud to a lieutenant, to a domestic violence officer and to the detective who had arrested me a month before. The lieutenant said a vanished complaint "would be a problem" and that he would call me back. The domestic violence officer said "it's not supposed to work like that." The detective told me to take it up with the District Attorney. After that I wrote to the Internal Affairs Bureau fourteen times, to the Civilian Complaint Review Board five times, to the Inspector General once, and to the City's own counsel in this case in October 2025. I was arrested again on June 8, 2026.

52. Each arrest took days of my liberty, my work, and time with my daughter. No award of money returns those days. I am asking the Court to require nothing more than the steps New York law already requires before the next arrest.

Executed on September 21, 2026, at Carteret, New Jersey.

Clayton Howard

CLAYTON HOWARD
24 Orchard Street
Carteret, New Jersey 07008
(929) 781-7791
itsclaytonhoward@gmail.com